**HILL, FARRER & BURRILL LLP**
Daniel J. McCarthy (Bar No. 101081)
One California Plaza, 37th Floor
300 South Grand Avenue
Los Angeles, CA 90071-3147
Telephone: (213) 620-0460
Fax: (213) 624-4840

Attorneys for Involuntary Chapter 11 Debtor
GEORGES MARCIANO

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION**

In re

GEORGES MARCIANO,

Debtor.

CASE NO. 2:09-bk-39630 VK

Chapter 11

**NOTICE OF MOTION AND MOTION TO DISMISS INVOLUNTARY CHAPTER 11 PETITION OR, ALTERNATIVELY, TO QUASH SERVICE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DANIEL J. McCARTHY AND GEORGES MARCIANO**

**DATE:** **December 17, 2009**
**TIME:** **1:30 p.m.**
**CTRM:** **1675**

**TO: THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES BANKRUPTCY JUDGE, AND TO THE PETITIONING CREDITORS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 17, 2009, at 1:30 p.m., in Courtroom 1675 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, California 90012, involuntary Chapter 11 debtor Georges Marciano will bring on for hearing his "Motion to Dismiss Involuntary Chapter 11 Petition or, Alternatively, to Quash Service" (the "Motion"). By the Motion, Mr. Marciano will ask that the Court dismiss the involuntary Chapter 11 petition filed against him on October 27, 2009, on grounds that (a) because Mr. Marciano has not resided in the

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

United States since September 2009, service of process was defective by attempted service upon Mr. Marciano by U.S. Mail at his former residence in Beverly Hills and at his attorney's office in Los Angeles, which further means that the Court lacks personal jurisdiction over Mr. Marciano; (b) the attempted service by mail on Mr. Marciano was constitutionally defective, thereby resulting in defective service of process and lack of personal jurisdiction; and (c) the prohibition against involuntary servitude in the Thirteenth Amendment and the provisions of the Equal Protection Clause and the Bankruptcy Clause in the United States Constitution render Chapter 11 unconstitutional as to an individual against whom an involuntary petition has been filed, thereby precluding entry of an order for relief in this involuntary Chapter 11 case. Alternatively, if for some reason the Court does not dismiss the involuntary petition, Mr. Marciano requests that the Court quash improper service of the summons and involuntary petition.

Opposition, if any, to the Motion is required to be filed and served at least 14 days prior to the hearing on the Motion in compliance with the Federal Rules of Bankruptcy Procedure and this Court's Local Bankruptcy Rules. The failure to properly file and serve an opposition may be deemed consent to the relief requested and as a waiver of the right to oppose the Motion.

DATED: November 20, 2009

HILL, FARRER & BURRILL LLP

By: /s/ Daniel J. McCarthy
DANIEL J. McCARTHY
Attorneys for Involuntary Chapter 11
Debtor GEORGES MARCIANO

# TABLE OF CONTENTS

Page


MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INVOLUNTARY CHAPTER 11 PETITION OR, ALTERNATIVELY, TO QUASH SERVICE ..... 1

I. INTRODUCTION ..... 1

A. Procedural Background ..... 1

1. The Defaults And Default Judgments ..... 1
2. The New Trial Motions ..... 4
3. The Motions For Stay Pending Appeal ..... 4
4. The Collection Efforts ..... 5
5. The Involuntary Chapter 11 Filing ..... 5

B. Summary Of Argument ..... 6

II. THE INVOLUNTARY PETITION MUST BE DISMISSED ..... 8

A. Service Was Insufficient ..... 8

1. Service Requirements ..... 8
2. Service Is Appropriately Challenged Under F.R.C.P. 12(b)(5) ..... 9
3. The Court Lacks Personal Jurisdiction Due To Improper Service ..... 10

B. Service By Mail Was Improper, Even If Mr. Marciano Lived In The United States ..... 10

C. An Order For Relief May Not Be Entered Because The Provisions Of Chapter 11 Are Unconstitutional As Against An Involuntary Chapter 11 Debtor, Who Does Not Consent To The Order For Relief ..... 11

III. CONCLUSION ..... 25

DECLARATION OF DANIEL J. MCCARTHY ..... 26

DECLARATION OF GEORGES MARCIANO ..... 29


HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

## TABLE OF AUTHORITIES

Page

**CASES**

***State:***

*David S. Karton, a Law Corp. v. Dougherty,* 171 Cal. App. 4th 133, 150 (2009) .......... 4

*Matera v. McLeod,* 145 Cal. App. 4th 44, 61 (2006) .......... 4

*Yeung v. Soos* 119 Cal.App.4th 576, 582 (2004) .......... 4

***Federal:***

*Bailey v. Alabama,* 219 U.S. 219, 242, 31 S. Ct. 145, 55 L. Ed. 191 (1911) .......... 13

*Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988) .......... 11

*Buhl v. Cooksey,* 233 F.3d 783, 789-90 (3d Cir. 2000) .......... 13

*Charter Communs., Inc. v. County of Santa Cruz,* 304 F.3d 927, 935 (9th Cir. 2002) .......... 21

*Clyatt v. United States,* 197 U.S. 207, 215 (1905) .......... 13, 16

*Fahey v. Mallonee,* 332 U.S. 245 (1947) .......... 21

*Ferm v. United States Trustee (In re Crawford),* 194 F.3d 954, 961 (9th Cir. 1999) .......... 19

*Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 488 (3rd Cir. 1993) .......... 10

*Haas v. Wisconsin,* 241 F. Supp. 2d 922 (E.D. Wis. 2003) .......... 23

*Hedquist v. Fokkena (In re Hedquist),* 342 B.R. 295, 299 (B.A.P. 8th Cir. 2006) .......... 19

*In re Angobaldo,* 160 B.R. 140 (Bankr. N.D. Cal. 1993) .......... 24, 25

*In re Carrow,* 315 B.R. 8, 16 (Bankr. N.D.N.Y. 2004) .......... 16

*In re Clemente,* 409 B.R. 288 (Bankr. D.N.J. 2009) .......... 11, 13, 14, 18, 20, 28

*In re Cooley,* 87 B.R. 432, 438 (Bankr. S.D. Tex. 1988) .......... 20

*In re Cox,* 393 B.R. 681, 690 (Bankr. W.D. Mo. 2008) .......... 19

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**TABLE OF AUTHORITIES**
**(continued)**


**Page**

*In re Diloreto*, 2008 Bankr. LEXIS 140 (Bankr. E.D. Pa. Jan. 11, 2008) ........ 10

*In re Duncan*, 201 B.R. 889, 901(Bankr. W.D. Pan. 1996) ........ 16

*In re Fitzsimmons*, 20 B.R. 237 (B.A.P. 9th Cir. 1982) ........ 19

*In re Fluharty*, 23 B.R. 426, 428 (Bank. N.D. Ohio 1982) ........ 16, 18

*In re Gaudet*, 132 B.R. 670, 674 (D.R.I. 1991) ........ 22

*In re Harp*, 166 B.R. 740, 753-754 (Bank. N.D. Ala. 1993) ........ 22

*In re Herberman*, 122 B.R. 273 (Bankr. W.D. Tex. 1999) ........ 22, 23

*In re Krohn*, 886 F.2d 123, 127 (6th Cir. Ohio 1989) ........ 21

*In re Molina Y Vedia*, 150 B.R. 393, 399 (Bankr. S.D. Tex. 1992) ........ 16, 20, 23

*In re Morrissey*, 996 F. Supp. 530, 536 (E.D. Va. 1998), *aff'd* 168 F.3d 134, *cert. denied* 527 U.S. 1036 ........ 21

*In re Nahat*, 315 B.R. 368, 374 (Bank. D. Tex. 2004) ........ 16

*In re Noonan*, 17 B.R. 793, 799-800 (Bankr. S.D.N.Y. 1982) ........ 12, 16

*In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 561 (Bankr. C.D. Cal. 2004) ........ 5

*In re Powell*, 187 B.R. 642, 647 (Bankr. D. Minn. 1995) ........ 23

*In re Spencer*, 137 B.R. 506, 513 (Bank. N.D. Okla. 1992) ........ 16

*In re Vincze*, 230 F.3d 297, 299 (7th Cir. 2000) ........ 10

*Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 456 (1988) ........ 21

*Kokozka v. Belford*, 417 U.S. 642 (1974) ........ 15

*Kovalesky v. A.M.C. Assoc. Merchandising Corp.*, 551 F. Supp. 544, 546 (S.D.N.Y. 1982) ........ 10

*Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) ........ 21, 22




HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007) ... 16

*Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2nd Cir. 1985) ... 10

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ... 10

*Norlock v. City of Garland*, 768 F.2d 654, 656 (5th Cir. 1985) ... 10

*Pollock v. Williams*, 322 U.S. 4, 7-13 (1944) ... 16

*Printed Media Servs. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993) ... 10

*Robertson v. Baldwin*, 165 U.S. 275, 17 S. Ct. 326, 41 L. Ed. 715 (1897) ... 13

*Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764 (9th Cir. 2008) ... 16

*Schell v. Witek*, 218 F.3d 1017, 1023-1024 (9th Cir. 2000) ... 21

*Schultz v. United States*, 529 F.3d 343, 352 (6th Cir. 2008), *cert denied*, 2008 U.S. LEXIS 8945 (Dec. 8, 2008) ... 19

*Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.)*, 346 F.3d 1, 8 (1st Cir. 2003) ... 19

*Stewart v. Lagrand*, 526 U.S. 115, 119 (1999) ... 21

*Stewart v. United States Trustee (In re Stewart)*, 175 F.3d 796, 813 (10th Cir. 1999) ... 19

*Storer v. French (In re Storer)*, 58 F.3d 1125, 1130 (6th Cir. 1995) ... 19

*Toibb v. Ratloff*, 501 U.S. 157, 165-166 (1991) ... 12, 20

*Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1988) ... 10

*United States v. Kozminski*, 487 U.S. 931, 934, 101 L. Ed. 2d 788, 108 S. Ct. 2751 (1988) ... 23

*United States v. Kras*, 409 U.S. 434, 446 (1973) ... 18, 21

*Wood v. United States (In re Wood)*, 866 F.2d 1367, 1372 (11th Cir. 1989) ... 19

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**TABLE OF AUTHORITIES**
**(continued)**

Page

**STATUTES AND RULES**


11 U.S.C. § 108(e) .... 22
11 U.S.C. § 109 .... 12
11 U.S.C. § 109(h) .... 19
11 U.S.C. § 303(a) .... 12, 16, 17
11 U.S.C. § 362(h) .... 19
11 U.S.C. § 522(b)(1) .... 19
11 U.S.C. § 541(a)(6) .... 24
11 U.S.C. § 541(a)(7) .... 22, 24
11 U.S.C. § 707(b) .... 18, 19, 22
11 U.S.C. § 1112 .... 13
11 U.S.C. § 1112(a) .... 17, 19
11 U.S.C. § 1112(a)(1) .... 13
11 U.S.C. § 1112(b)(1) .... 13, 23
11 U.S.C. § 1112(b)(4)(N) .... 23
11 U.S.C. § 1115(a)(2) .... 13, 14
11 U.S.C. § 1121(c) .... 17
11 U.S.C. § 1121(d) .... 17
11 U.S.C. § 1121(e) .... 17
11 U.S.C. § 1127(a) .... 17, 18
11 U.S.C. § 1127(e) .... 15, 16, 18
11 U.S.C. § 1127(e)(2) .... 17
11 U.S.C. § 1127(f) .... 18
11 U.S.C. § 1129(a)(15) .... 15, 17, 22
11 U.S.C. § 1129(a)(15)(B) .... 15, 18
11 U.S.C. § 1129(e)(2) .... 18
11 U.S.C. § 1141(d)(5) .... 14, 23
11 U.S.C. § 1208 .... 20
11 U.S.C. § 1306(a)(2) .... 19
11 U.S.C. § 1307 .... 20
11 U.S.C. § 1307(a) .... 12, 16
11 U.S.C. § 1307(b) .... 16
11 U.S.C. § 1321 .... 12, 16
11 U.S.C. § 1322(a)(1) .... 12


HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**TABLE OF AUTHORITIES**
**(continued)**


**Page**

11 U.S.C. § 1322(d) .......... 15, 16
11 U.S.C. § 1325(b)(1)(B) .......... 15
11 U.S.C. § 1325(b)(2) .......... 15
11 U.S.C. § 1325(b)(3) .......... 19
11 U.S.C. § 1325(b)(4) .......... 15, 16, 19
11 U.S.C. § 1329(a)(2) .......... 16
11 U.S.C. § 1329(c) .......... 15, 16
15 U.S.C. § 1601 .......... 15
C.C.P. § 585 .......... 2
C.C.P. § 917 .......... 4, 27
F.R.B.P. 1010(a) .......... 8
F.R.B.P. 1011(b) .......... 9
F.R.B.P. 1017(f)(1) .......... 17
F.R.B.P. 3019(b) .......... 15
F.R.B.P. 7004(a) .......... 8, 9
F.R.B.P. 7004(a)(1) .......... 8
F.R.B.P. 7004(a)(2) .......... 8
F.R.B.P. 7004(b) .......... 6, 8, 11
F.R.B.P. 7004(b)(1) .......... 8
F.R.B.P. 7004(e) .......... 8
F.R.B.P. 7012 .......... 9
F.R.C.P. 4(e)(1) .......... 9
F.R.C.P. 4(e)-(j) .......... 8
F.R.C.P. 4(f) .......... 6, 8
F.R.C.P. 4(i)(C)(1) .......... 9
F.R.C.P. 4(l) .......... 8
F.R.C.P. 12(b)(2) .......... 7, 10, 11
F.R.C.P. 12(b)(5) .......... 7, 9, 10, 11
F.R.C.P. 12(b)(6) .......... 11
Local Bankruptcy Rule 1017-1(a)(2) .......... 17


**OTHER AUTHORITIES**


6 Norton Bankr. L. & Prac. 3d § 112:32 (2009) .......... 18




HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**TABLE OF AUTHORITIES**
**(continued)**

Page

Chemerinsky, Erwin, *Constitutional Issues Posed in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 AM. BANK. L.J. 571, 590 (2005) .......... 12, 23

Chemerinsky, Erwin, *Filing Redux: Is the New Individual Chapter Eleven Unconstitutional?*, 13 AM. BANKR. INST. L. REV. 483 (2005) .......... 12, 23

Keach, Robert J., "*Dead Man Filing Redux: Is The New Individual Chapter 11 Unconstitutional?*," 13 AM. BANKR. INST. L. REV. 438, 500-502 (2005) .......... 12, 23

Margaret Howard, *Symposium: The Mystery of the Success of Delaware Law: Article: Bankruptcy Bondage*, 2009 U. ILL. L. REV. 191, 209-14 (2009) .......... 13

McCarthy, *The Shackles of an Individual Chapter 11 Debtor's Servitude—Where's the Key?*, Vol. 30 California Bankruptcy Journal, No. 2 (2009) .......... 11

Norton Annual Survey of Bankruptcy Law PT I, Grassgreen, Debra, *Individual Chapter 11 Cases After BAPCPA: What Happened to the "Fresh Start,"* at 326-327 (2006) .......... 18

Warner, G. Ray, "*Garnishment Restrictions and the Involuntary Chapter 11: Rethinking Kokozka in a Means Test World*," 13 AM. BANKR. INST. L. REV. 733 (2005) .......... 15

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INVOLUNTARY CHAPTER 11 PETITION OR, ALTERNATIVELY, TO QUASH SERVICE**

## I. INTRODUCTION.

### A. Procedural Background.

#### 1. The Defaults And Default Judgments.

Multiple judgments were awarded against Georges Marciano in case nos. BC375824 and BC384493 in the Los Angeles County Superior Court in late July and August 2009. Along with two other judgment creditors, petitioning creditors Steven Chapnick, Joseph Fahs and Elizabeth Tagle each had a judgment entered in their favor and against Mr. Marciano for (1) future economic loss, past mental suffering and physical pain, future mental suffering and physical pain relating to alleged severe emotional distress, where the awarded damages total $34.044 million; (2) general damages for injury to reputation and shame, mortification or hurt feelings relating to alleged defamation, where the awarded damages total $35 million (a total of $69.004 million in compensatory damages); and (3) punitive damages of $5 million, for a total $74.044 million. In contrast, in their respective statements of damages filed in case no. BC375824, Mr. Chapnick claimed $750,000 in economic damages and $20 million in non-economic damages; Mr. Fahs claimed $750,000 in economic damages and $50 million in non-economic damages; and Elizabeth Tagle claimed $250,000.00 in economic damages and $10.05 million in non-economic damages. [McCarthy Decl., ¶2.]

Georges Marciano never had his "day in court." For various reasons, including 24 hour telephonic notice of his deposition, the failure of his counsel to communicate, and the need for a French interpreter, Mr. Marciano did not appear for his deposition, as noticed in case no. BC375824. Defendant and cross-complainant Steven Chapnick brought a motion for terminating sanctions, which the other defendants and cross-complainants joined. That resulted in the Court dismissing the complaint of Mr. Marciano and Beverly Wilshire Properties, Inc., as against all defendants in case no. BC375824, including Mr. Chapnick, Mr. Fahs and Ms. Tagle, who are the petitioning creditors. [Exh. A (Chapnick Judgment), at 1:25-27.] When Mr. Marciano did not

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

appear for his Court-ordered deposition due to the fact that he was ill and ultimately hospitalized, the defendants and cross-complainants (including Mr. Chapnick, Mr. Fahs and Ms. Tagle) again brought motions for terminating sanctions under which they requested that the Court also strike Mr. Marciano's answer to their cross-complaints and enter his default. [*Id.*, at 1:28-2:1.] In the face of undisputed evidence of Mr. Marciano's illness, as supported by physicians' declarations, Judge Elizabeth White granted the motions. [*Id.*] Judge White also dismissed Mr. Marciano's complaint and struck his answer to the cross-complaint of Gary Iskowitz, Theresa Iskowitz and Carolyn Malkus in case no. BC384493, based upon motions of those cross-complainants.

The State Court scheduled the cross-complaints for prove-up trials on May 15 and 18, 2009, in case no. BC375824. [Exh. A hereto (Judgment), at 2:3-4.] It entered an order determining liability issues on Mr. Chapnick's cross-complaint on July 20, 2009. [*Id.*, at 2:5-6.] Similar orders were entered for Mr. Fahs and Ms. Tagle. The State Court then scheduled a jury trial in case no. BC375824 that commenced on July 20, 2009, and lasted until July 27, 2009. It resulted in the $74.044 million judgments in favor of Mr. Chapnick, Mr. Fahs and Ms. Tagle and against Mr. Marciano [*id.*, at 2:7-4:26], as well as two other separate identical $74.044 million judgments in favor of Miriam Choi and Camille Abat. The judgments in case no. BC375824 were entered on July 28, 29 and 30, 2009. Each of the judgments was based upon an award by an advisory jury that was empaneled under C.C.P. § 585. A judgment in the amount of $55 million case no. BC384493 was entered just after trial on August 26, 2009, in favor of Gary Iskowitz, Theresa Iskowitz and Carolyn Malkus. That trial occurred before Judge White only.

The judgments in favor of Mr. Chapnick, Mr. Fahs and Ms. Tagle typify the deficiencies in the other two judgments in case no. BC375824 and similar deficiencies in the judgment in case no. BC384493. First, they each were awarded $14.044 million for "future economic loss" for security and medical care, but the jury had no basis for determining what those items would reasonably cost. Indeed, the judgment creditors did not even pray for such damages in their cross-complaints, nor did they include them in their respective statements of damages. Second, they each were awarded $17.5 million for "shame, mortification and hurt feelings," but then they each duplicatively were awarded $5 million for "past mental suffering and physical pain." Third,



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

the $55 million awards to Mr. Chapnick, Mr. Fahs and Ms. Tagle for non-economic damages were grossly disproportionate to the alleged "injury to reputation" ($17.5 million awarded); the claimed "shame, mortification, and hurt feelings" (additional $17.5 million awarded); the alleged "past mental suffering and pain" ($5 million awarded); and the claimed "future mental suffering physical pain" ($15 million awarded). Fourth, it was apparent that the excessive awards were due to highly prejudicial evidence introduced by the cross-complainants at trial. For example, in case no. BC375824, the jury was told that Mr. Marciano "chose not to be [t]here," "chose not to come," "chose not to argue," "chose not to say anything to you," and "didn't have the nerve to show up"—notwithstanding that Mr. Marciano was precluded from defending himself before the jury. By way of further example, the jury heard evidence of a website and blogs (published after the cross-complaints were filed) that supposedly were defamatory, even though none of the cross-complainants alleged that Mr. Marciano made any false or threatening statements on any website or blog. Fifth, in violation of applicable law, the compensatory awards exceeded the amounts and types of damages sought by Mr. Chapnick, Mr. Fahs and Ms. Tagle in their respective statements of damages. Indeed, the $69.044 million judgment for compensatory damages exceeded Mr. Chapnick's inflated Statement of Damages by $49.044 million; Mr. Fahs' inflated statement of damages by $19.044 million; and Ms. Tagle's inflated statement of damages by $58.744 million. Sixth, all the damages were attributed to Mr. Marciano even though Mr. Chapnick alleged that Beverly Wilshire Properties, Inc., also caused the damages. Seventh, in awarding the same amount of $74.044 million to each of the five cross-complainants in case no. BC375824, the jury ignored the instruction that each of the cross-complainants' claims be decided separately. Eighth, the awards of $5 million each to Mr. Chapnick, Mr. Fahs and Ms. Tagle, as well as the other judgment creditors, for punitive damages was excessive given the lack of evidence of Mr. Marciano's financial condition.

Mr. Marciano appealed from all of the judgments against him. The foregoing represents a brief summary of a portion of the many issues to be resolved by the California Court of Appeal. The mistakes by the State Court were numerous and prejudicial. The State Court had shown significant bias against Mr. Marciano, which resulted in a motion to disqualify the State Court



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

judge, that was denied by her. Among other things, the State Court judge called Mr. Marciano an "eel," she questioned whether he was mentally fit, and she said he was paranoid. Not surprisingly, when it came time to enter the judgments in case no. BC375824 based upon the jury's awards, the State Court ignored the fundamental rule that default judgments may not exceed the amount requested in a complaint or statement of damages. That rendered the original judgments void, as a matter of law.[1]

**2. The New Trial Motions.**

Mr. Marciano brought motions for new trial on all of the judgments in case nos. BC375824 and BC384493. The motions in case no. BC375824 were heard on October 2, 2009. The State Court found that Mr. Marciano still was "out of court" because his default had been entered, but it finally acknowledged that it lacked jurisdiction to award default judgments in excess of the amounts requested in the cross-complainants' statements of damages. Thus, the Court reduced the judgments for Mr. Chapnick to $25 million, for Mr. Fahs to $55 million, and for Ms. Tagle to $15.3 million. The judgments for Miriam Choi and Camille Abat were reduced to $55 million each. Amended judgments were subsequently entered by the Court interlineating the original judgments. [McCarthy Decl., ¶4.]

**3. The Motions For Stay Pending Appeal.**

The five original judgments in case no. BC375824 each were for $74.044 million, for a total of $370.22 million. Because Mr. Marciano did not have the ability to post bonds from an admitted insurer under C.C.P. § 917.1 in the amount of 1-1/2 times the judgments (*i.e.*, $555 million) in order to obtain a stay pending appeal, he sought a stay from the State Court by ex parte application. The State Court denied that application at hearing on August 3, 2009. Mr. Marciano filed a petition for a writ with the Court of Appeal by which he asked that the Court of Appeal order the stay of collection pending appeal, but it denied the petition. [McCarthy Decl.,

[1] *See, e.g., David S. Karton, a Law Corp. v. Dougherty, 171* Cal. App. 4th 133, 150 (2009) ["Because that ceiling is jurisdictional, 'a default judgment is void when the damages are in excess of the damages specified in the complaint or the statement of damages.' (*Yeung v. Soos* (2004) 119 Cal.App.4th 576, 582 [14 Cal. Rptr. 3d 502].) 'A void judgment may be challenged at any time.' (*Ibid.*)."]; *Matera v. McLeod*, 145 Cal. App. 4th 44, 61 (2006) ["The California Supreme Court has consistently stated that a default judgment awarding damages greater than the amount demanded in violation of section 580 is beyond the court's jurisdiction."]



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

¶5.]

Had Mr. Marciano chosen to file a voluntary Chapter 11 petition, he undoubtedly would have been met with the argument that it was a bad faith filing because it was for the purpose of avoiding the posting of bonds pending appeal.[2] In an odd twist of events, the judgment creditors have placed Mr. Marciano in an involuntary Chapter 11. The reason appears obvious. They want to interfere with Mr. Marciano's appeals from their excessive judgments. The bad faith nature of the involuntary filing will be raised in connection with a trial on the involuntary petition should the Court deny this Motion.[3]

**4. The Collection Efforts.**

The efforts of the judgment creditors to collect were aggressive and extensive. They obtained orders for Mr. Marciano to appear for his judgment debtor exam. They obtained orders for numerous third persons to appear for exams, and they subpoenaed documents from those persons. One judgment creditor served post-judgment interrogatories and requests for documents. They levied writs of execution against numerous financial institutions, including Bank of America, City National Bank, UBS Financial Services, Inc., Wells Fargo Bank, Morgan Stanley Smith Barney, Merrill Lynch, Union Bank, and others. They recorded abstracts of judgment. They obtained charging orders against Mr. Marciano's interests in certain limited liability companies, assignment orders against entities owing any monies to Mr. Marciano, and ex parte turnover orders requiring Mr. Marciano to deliver various assets to the sheriff. One creditor even went so far as to obtain an ex parte private place seizure order without prior notice to Mr. Marciano, which allowed the sheriff to break into Mr. Marciano's house to take possession of identified assets, although the order was never executed. [McCarthy Decl., ¶6.]

**5. The Involuntary Chapter 11 Filing.**

In the midst of the judgment creditors' barrage of collection efforts, the involuntary Chapter 11 was filed on October 27, 2009, thereby staying all pending collection efforts,

---

[2] *See, e.g., In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 561 (Bankr. C.D. Cal. 2004).

[3] Other issues remain to be addressed should this case not be dismissed, including whether Mr. Marciano is a suitable candidate for bankruptcy and whether the petitioning creditors are qualified to file the involuntary Chapter 11 given the nature of the grounds for appeal from their amended judgments.



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

including bank levies, judgment debtor exams, and third person exams.

The Court promptly issued summonses to the three petitioning creditors. According to the proof of service filed with the Court, the involuntary petition and the summons were served by mail on Mr. Marciano on October 31, 2009, thereby necessitating an answer or other responsive motion within 20 days. [Dkt. no. 7, filed 11/2/09, Exh. D hereto.] It states that the summons, involuntary petition and other documents were served at the following addresses:

Georges Marciano
1000 N. Crescent Drive
Beverly Hills, CA 90210

Georges Marciano
2121 Avenue of the Stars, 24th Floor
Los Angeles, CA 90067

These addresses, however, were not proper addresses at which to accomplish service. Mr. Marciano has not resided at the Crescent residence since early August. [Marciano Decl., ¶1.] The address on Avenue of Stars is the office address of his counsel in the State Court action, which is Browne, Woods & George. It is not Mr. Marciano's office address, and he never has maintained offices, conducted business, or engaged in a profession there. [*Id.*, ¶2.] Mr. Marciano did not receive a copy of the summons and petition, nor has he seen it, so service by mail at those addresses did not impart notice to him. [*Id.*, ¶3.]

**B. <u>Summary Of Argument.</u>**

If the Court does not dismiss the involuntary petition at this time, Mr. Marciano will be filing an answer and asking that the Court schedule the contested petition for trial. However, that should not be necessary because the involuntary petition should be dismissed at this time for three reasons.

First, service was ineffective. Mr. Marciano has resided outside of the United States for more than two months since early September 2009. Federal Rule of Bankruptcy Procedure 7004(b) allows service by mail upon parties in the United States, but if they are not residing in the United States, the provisions of Federal Rule of Bankruptcy Procedure 4(f) apply, and they require personal service. That has not occurred. As such, the involuntary petition should be



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

dismissed under F.R.C.P. 12(b)(5) due to defective service of process and under F.R.C.P. 12(b)(2) due to lack of personal jurisdiction.

Second, even if Mr. Marciano resided in the United States, it would violate notions of due process to require him to appear and defend himself as a result of service of an involuntary petition by mail at his prior residential address and at his lawyer's office. Mr. Marciano can appreciate that practicalities dictate that the jurisdiction of Bankruptcy Courts over creditors and parties to adversary proceedings can be effectuated by service by mail, but an involuntary petition is very different because it subjects the putative debtor and his or her assets to the Court's jurisdiction. Service by mail upon creditors, defendants and other interested parties does not result in both *in rem* and *in personum* jurisdiction.

Third, the provisions of Chapter 11 are unconstitutional, as imposed upon individuals. Since the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), an individual Chapter 11 debtor's assets are assets of the bankruptcy estate, and such a debtor may only use the assets to live on, if he or she obtains Court permission. If that debtor gets a plan confirmed, he or she must commit all disposable income to paying creditors, and then creditors are entitled to seek an order extending the payment terms. There is no automatic right to conversion or dismissal. These provisions violate the Thirteenth Amendment to the United States Constitution, as well as the Equal Protection Clause and the Bankruptcy Clause in the Constitution. As explained below, Chapter 13 debtors have various mechanisms available to them that save similar Chapter 13 provisions from constitutional challenge, but those mechanisms are unavailable to Chapter 11 individual debtors. Courts sometimes waive off the constitutional challenge in a Chapter 11 context with the simplistic argument that the debtor has consented to the provisions of Chapter 11 by voluntarily filing Chapter 11. While incorrect, even that argument is inapplicable here because the bankruptcy was not filed by Mr. Marciano. It was filed against him, and he does not consent to it. As such, an order for relief cannot be entered against Mr. Marciano because it would violate his Thirteenth Amendment rights against involuntary servitude. The petition must be dismissed with prejudice on these grounds.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

## II. THE INVOLUNTARY PETITION MUST BE DISMISSED.

### A. Service Was Insufficient.

#### 1. Service Requirements.

F.R.B.P. 1010(a) establishes the requirements for service of an involuntary petition upon an involuntary debtor by referencing F.R.B.P. 7004. It states:

> "On the filing of an involuntary petition or a petition for recognition of a foreign nonmain proceeding, the clerk shall forthwith issue a summons for service. When an involuntary petition is filed, service shall be made on the debtor. When a petition for recognition of a foreign nonmain proceeding is filed, service shall be made on the debtor, any entity against whom provisional relief is sought under § 1519 of the Code, and on any other party as the court may direct. The summons shall be served with a copy of the petition in the manner provided for service of a summons and complaint by Rule 7004(a) or (b). If service cannot be so made, the court may order that the summons and petition be served by mailing copies to the party's last known address, and by at least one publication in a manner and form directed by the court. The summons and petition may be served on the party anywhere. Rule 7004(e) and Rule 4(l) F.R.Civ.P. apply when service is made or attempted under this rule." [Emphasis added.]

F.R.B.P. 7004(a)(1) generally states:

> "Except as provided in Rule 7004(a)(2), Rule 4(a), (b), (c)(1), (d)(1), (e)-(j), (l), and (m) F.R.Civ.P. applies in adversary proceedings. Personal service under Rule 4(e)-(j) F.R.Civ.P. may be made by any person at least 18 years of age who is not a party, and the summons may be delivered by the clerk to any such person." [Emphasis added.]

F.R.B.P. 7004(b) allows service by mail "within the United States." Regarding individuals, Rule 7004(b)(1) states:

> "Except as provided in subdivision (h), in addition to the methods of service authorized by Rule 4(e) -(j) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:
>
> "(1) Upon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession." [Emphasis added.]

Where the individual does not have a dwelling house, usual place of abode, or place where the individual regularly conducts business or a profession in the United States, service may not be made by mail because it is not service "within the United States" under F.R.B.P. 7004(b).

F.R.C.P. 4(f), which is made applicable through F.R.B.P. 7004(a), governs service outside

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

of the United States.[4] It provides:

> "**Serving an Individual in a Foreign Country**.
>
> Unless federal law provides otherwise, an individual - other than a minor, an incompetent person, or a person whose waiver has been filed - may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> (C) unless prohibited by the foreign country's law, by:
>
> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>
> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders." [Emphasis added.]

Mailing a copy of the involuntary petition by first class mail to Mr. Marciano's former residence in Beverly Hills and to the Los Angeles office of his attorney in the State Court actions clearly does not satisfy any of these requirements. Because he has resided outside of the United States since early September 2009, Mr. Marciano must be served in compliance with F.R.C.P. 4(i)(C)(1), which requires personal service, but the petitioning creditors have failed to do so.

**2. Service Is Appropriately Challenged Under F.R.C.P. 12(b)(5).**

Mr. Marciano is entitled to challenge service under F.R.C.P. 12(b), as made applicable by F.R.B.P. 7012. F.R.B.P. 1011(b) states:

---

[4] F.R.C.P. 4(e)(1), which is made applicable by F.R.B.P. 7004(a), allows for service in the manner permitted by the law of the state in which the district court is located, but that is inapplicable in this case because F.R.C.P. 4(e) is entitled: "serving an individual within a judicial district of the United States." Mr. Marciano is not now nor has he been within a judicial district of the United States since early September 2009.



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

"Defenses and objections to the petition shall be presented in the manner prescribed by Rule 12 F.R.Civ.P. and shall be filed and served within 20 days after service of the summons, except that if service is made by publication on a party or partner not residing or found within the state in which the court sits, the court shall prescribe the time for filing and serving the response."

In relevant part, F.R.C.P. 12(b) states:

"Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

"(5) insufficient service of process; . . . ."

When the validity of service is contested under Rule 12(b)(5), the burden is on the plaintiff to establish that service was valid.[5] The petitioning creditors cannot meet that burden because they only served Mr. Marciano by mail at a residential address at which he no longer resides and at his lawyer's office address, where he does not conduct business. Improper service warrants dismissal of the involuntary petition.[6] Alternatively, the Court should quash service of the summons and involuntary petition.[7]

**3. The Court Lacks Personal Jurisdiction Due To Improper Service.**

Lack of personal jurisdiction is grounds for dismissal under F.R.C.P 12(b)(2). The Court does not acquire jurisdiction if the person is improperly served. *Printed Media Servs. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993) ["If a defendant is improperly served, a federal court lacks jurisdiction over the defendant."] Service was improper, as shown above.

**B. <u>Service By Mail Was Improper, Even If Mr. Marciano Lived In The United States.</u>**

Due process requires notice reasonably calculated to inform. *See, e.g., Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1988); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15, 70 S. Ct. 652, 94 L. Ed. 865 (1950); *In re Vincze*, 230 F.3d 297, 299 (7th Cir. 2000). The fact that Mr. Marciano did not

---

[5] *Norlock v. City of Garland*, 768 F.2d 654, 656 (5th Cir. 1985); *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3rd Cir. 1993).

[6] *Kovalesky v. A.M.C. Assoc. Merchandising Corp.*, 551 F. Supp. 544, 546 (S.D.N.Y. 1982). See also, *In re Diloreto*, 2008 Bankr. LEXIS 140 (Bankr. E.D. Pa. Jan. 11, 2008) [dismissing involuntary petition when debtor defectively served by Federal Express rather than first class mail].

[7] *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2nd Cir. 1985)



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

receive and has not seen the summons and involuntary petition suggests that service by mail at a residence where he no longer lives and at his State Court litigation lawyer's office was not reasonably calculated to inform Mr. Marciano. [Marciano Decl., ¶3.] As such, service by mail under F.R.C.P. 7004(b) was constitutionally defective because it violated Mr. Marciano's due process rights by failing to provide adequate notice. For this reason, dismissal also is proper based upon lack of personal jurisdiction and insufficient service of process under F.R.C.P. 12(b)(2) and (5).

### C. An Order For Relief May Not Be Entered Because The Provisions Of Chapter 11 Are Unconstitutional As Against An Involuntary Chapter 11 Debtor, Who Does Not Consent To The Order For Relief.

A court may properly dismiss a complaint under Rule 12(b)(6) where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."[8] The petitioning creditors cannot state a claim for an order for relief to be entered on the involuntary petition because it would be unconstitutional to do so.

Even though consent could not confer constitutionality upon the provisions of Chapter 11 applicable to individuals, Mr. Marciano does not consent to the Chapter 11 order for relief being entered against him. Forcing him into Chapter 11 would violate his Thirteenth Amendment rights against involuntary servitude. Contrasting Chapter 13 with Chapter 11 makes that obvious, as explained in the attached article. [Exh. B.][9]

Before referring to the analysis in the attached article, it is important to note that one Court recently addressed this issue in June 2009 and, in citing many of the same cases cited in the attached article and in providing the same analysis, came to the conclusion that the changes to Chapter 11 under the BAPCPA renders it in violation of the Thirteenth Amendment. In *In re Clemente*, 409 B.R. 288 (Bankr. D.N.J. 2009) [Exh. C hereto], an individual debtor operated his business as a debtor-in-possession under Chapter 11 until a trustee was appointed for cause, which precluded the debtor from seeking conversion to Chapter 7 or dismissal. The debtor

[8] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

[9] McCarthy, *The Shackles of an Individual Chapter 11 Debtor's Servitude—Where's the Key?*, Vol. 30 California Bankruptcy Journal, No. 2 (2009)



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

nonetheless moved to convert his case to Chapter 7, contending that forcing him to continue in Chapter 11 violated the constitutional prohibition against involuntary servitude. The Court explained that the BAPCPA amendments made the provisions of Chapter 11 more like those under Chapter 13, but without the "safety valves" that render the Chapter 13 provisions constitutional. After discussing the Thirteenth Amendment, the Court explained:

> "In fact, Congress was cognizant of such involuntary servitude implications raised by requiring a debtor to work for the benefit of creditors. See H. Rep. No. 95-595, at 120 (1977), reprinted in 1978 U.S.C.C.A.N. 6080, 6081. See S. Rep. No. 95-989, at 32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5818. See generally Robert J. Keach, *Dead Man Filing Redux: Is the New Individual Chapter Eleven Unconstitutional?*, 13 AM. BANKR. INST. L. REV. 483 (2005) (raising credible constitutional concerns regarding BAPCPA's changes to Chapter 11). To address these concerns and alleviate potential constitutional violations, Congress included certain 'safety valves' for Chapter 13 debtors. For example, Chapter 13 is strictly voluntary and a debtor, with minor exception, has an absolute right to convert or dismiss the case whenever desired. 11 U.S.C. §§ 303(a), 1307(a). Moreover, no creditor may convert a debtor's ongoing bankruptcy case into Chapter 13, nor may a Creditor file a Chapter 13 plan on behalf of a debtor. 11 U.S.C. § 1321. These safety valves presumably save the Chapter 13 reorganization scheme from violating the Thirteenth Amendment. *See In re Noonan*, 17 B.R. 793, 799-800 (Bankr. S.D.N.Y. 1982); Erwin Chemerinsky, *Constitutional Issues Posed in the Bankruptcy Abuse and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 571, 586-88 (2005).
>
> "Prior to BAPCPA, Chapter 13 was the only chapter in the Bankruptcy Code to include a debtor's post-petition earnings as property of the estate. Chapter 11 did not require a debtor to use future income to fund the plan of reorganization. Both involuntary Chapter 11 and 13 filings also were not permitted by the Bankruptcy Code pre-BAPCPA. Although a debtor's future earnings were not a component for Chapter 11, reorganization under this chapter was available to individuals. 11 U.S.C. § 109; *Toibb v. Radloff*, 501 U.S. 157, 111 S. Ct. 2197, 115 L. Ed. 2d 145 (1991).
>
> "In *Toibb*, the Supreme Court of the United States held that an individual debtor not engaged in business was eligible to reorganize under Chapter 11 of the Code. The Supreme Court reached this holding by way of the plain language of the Code. In *dicta*, though, the Supreme Court addressed an argument concerning the fear of having creditors force debtors into Chapter 11 against a debtor's will, contrary to the intent of Congress, and perhaps in contravention of the Thirteenth Amendment. *Id.* at 165. By comparing the Chapter 13 process to that of an individual Chapter 11, the Supreme Court rejected the argument that its holding might run contrary to the constitutional ban on involuntary servitude, stating:
>
> > [T]he argument overlooks Congress' primary concern about a debtor's being forced into bankruptcy under Chapter 13: that such a debtor, whose future wages are not exempt from the bankruptcy estate, § 1322(a)(1), would be compelled to toil for the benefit of creditors in violation of the Thirteenth Amendment's involuntary servitude prohibition. *Because there is no comparable provision in Chapter 11 requiring a debtor to pay future wages to a creditor, Congress' concern about imposing involuntary*



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

> *servitude on a Chapter 13 debtor is not relevant to a Chapter 11 reorganization.*

*Id.* at 165-66 (emphasis added). BAPCPA now includes § 1115(a)(2), which serves as the 'comparable provision' to § 1322. Section 1115(a)(2) includes, as property of the estate, a Chapter 11 debtor's future wages. Under BAPCPA, an individual Chapter 11 bankruptcy is more akin to that of Chapter 13, but, significantly, without the precautionary safety valves.

"Tension between Sections 1112(a)(1) and 1115(a)(2)

"The earnings requirement of § 1115(a)(2) normally would not be a problem. A Chapter 11 debtor's earnings would be used to fund the plan, and, should the debtor's situation change, she could elect to convert or dismiss the case pursuant to § 1112. In that sense, there is no element of compulsion and thus no constitutional implication. When placed in conjunction with § 1112, however, the Code prohibits a debtor from converting the case when, among other things, a Chapter 11 trustee has been appointed previously. Furthermore, dismissal is not always an absolute right as it is in Chapter 13. In this regard, § 1112 will not allow a bankruptcy court to grant the dismissal of a Chapter 11 case when circumstances establish that dismissal is not in the best interests of creditors or the estate. 11 U.S.C. § 1112(b)(1). All the while, a debtor's future earnings remain property of the estate and to be employed for the repayment of creditors. These tensions are at play in the present case." *Id.*, at 291-293 [underlining added, italics in original].

The *Clemente* Court went on to note that, if the debtor could not convert his voluntary Chapter 11 case to Chapter 7, he would be subject to unconstitutional burdens: "Chapter 11 is his only option, and if unable to convert to a liquidation proceeding under Chapter 7, he would be forced to work for his creditors in breach of his freedoms guaranteed by the Thirteenth Amendment." *Id.*, at 293.

The *Clemente* Court further explained that the voluntary filing of a Chapter 11 case should not be deemed consent to violations of constitutional rights:

"Before espousing its reasons for granting the motion, the Court notes that simply filing for voluntary bankruptcy does not waive a debtor's Thirteenth Amendment right against involuntary servitude. A debtor must not be forced with the choice of either gaining a 'fresh start' through bankruptcy relief or becoming an indentured servant to creditors. *See Robertson v. Baldwin*, 165 U.S. 275, 17 S. Ct. 326, 41 L. Ed. 715 (1897); *Clyatt v. United States*, 197 U.S. 207, 25 S. Ct. 429, 49 L. Ed. 726, (1905); *Bailey v. Alabama*, 219 U.S. 219, 242, 31 S. Ct. 145, 55 L. Ed. 191 (1911). See also Margaret Howard, *Symposium: The Mystery of the Success of Delaware Law: Article: Bankruptcy Bondage*, 2009 U. ILL. L. REV. 191, 209-14 (2009). In addition, the changes BAPCPA made to the Code eliminate the availability of choices under which bankruptcy chapters a debtor may file. Indeed, as the case at bar shows, the Debtor's only 'choice' is Chapter 11, which forces him to submit post-petition earnings to funding of plan. Additionally, constitutional rights are not easily deemed waived. *Buhl v. Cooksey*, 233 F.3d 783, 789-90 (3d Cir. 2000) (stating in Sixth Amendment contexts that the 'waiver of a constitutional right must be voluntary, knowing and intelligent' and that courts



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

should 'indulge every reasonable presumption against a waiver' of constitutional rights). Therefore, Dr. Clemente did not waive his constitutional rights in voluntarily choosing to file for bankruptcy relief." *Id.*, at 293.

Under the doctrine of "constitutional avoidance," however, the *Clemente* Court ultimately sidestepped the Thirteenth Amendment issue by treating the debtor's motion to convert as a motion to terminate the trustee, thereby restoring the debtor in possession status of the debtor, and by then immediately converting the case to one under Chapter 7. *Id.*, at 294-296.

The *Clemente* Court's clever solution is inapplicable in this case. Mr. Marciano has not voluntarily filed a Chapter 11 petition. Instead, an involuntary Chapter 11 has been filed against him. Under the *Clemente* Court's analysis that found the Chapter 11 is unconstitutional, it would be unconstitutional to enter an order for relief against Mr. Marciano in this involuntary Chapter 11 case.

Attached hereto as Exhibit B is an article published in the Spring edition of the 2009 California Bankruptcy Journal, prior to the *Clemente* decision. That article is extensively cited below in double space format, without indentation and quotations marks. It more completely describes how the "safety valves" available in Chapter 13 are not available in Chapter 11, and it explains in considerable detail why BAPCPA amendments to Chapter 11 rendered it in violation of the Thirteenth Amendment.

Under BAPCPA, the provisions of Chapter 11 applying to the cases of individual debtors were amended in several important respects regarding a debtor's post-petition earnings:

(1) Post-petition earnings were made assets of the individual's Chapter 11 estate,[10] whereas prior to the amendments such post-petition earnings belonged to the debtor, and those earnings continue to be estate assets until the "completion of all payments under the plan" given that a discharge is not granted until all plan payments are made, unless specifically authorized by the court.[11]

(2) By requiring that the value of the property to be distributed under the plan not be less than the projected disposable income of the debtor during "the 5-year period beginning on the

[10] 11 U.S.C. § 1115(a)(2).
[11] 11 U.S.C. § 1141(d)(5).



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

date that the first payment is due under the plan, or during the period for which the plan provides payments," the amendments effectively require that all of the debtor's projected post-petition disposable income be used to make plan payments unless or until unsecured claims are fully paid.[12]

(3) Whether or not a plan has been substantially consummated, the trustee, the U.S. Trustee or an unsecured creditor may seek modification of the plan to increase payments or extend the time for payments,[13] which means that the 5-year period described above could be extended, thereby subjecting the individual debtor's continuing disposable income to the requirement that it be used to pay creditors.

The above-described modifications under BAPCPA made the provisions applicable to an individual Chapter 11 debtor's post-petition earnings similar to the provisions governing a Chapter 13 debtor. Post-petition earnings are assets of the estate in Chapter 13 until the case "is closed, dismissed, or converted to a case under chapter 7, 11, or 12."[14] If the trustee or a single creditor objects to confirmation of a Chapter 13 plan, the court may not approve the plan unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."[15] The "applicable commitment period" is three to five years unless creditors are paid in full before then.[16] Depending upon the combined income of the debtor and his spouse, plan payments may not be longer than three to five years,[17] which contrasts with the BAPCPA amendments to Chapter 11.[18]

[12] 11 U.S.C. § 1129(a)(15)(B). The disposable income formula is set forth in § 1325(b)(2), which incorporates the section 707 "means test" calculation used to determine eligibility for Chapter 7 relief. One commentator has noted that this formula is different than the federal consumer protection restrictions on wage garnishment under 15 U.S.C. § 1601 *et seq.*, and that the inapplicability of those restrictions to Chapter 11 debtors, as concluded in *Kokozka v. Belford,* 417 U.S. 642 (1974), perhaps should apply now that post-petition income is considered an asset of the estate of an individual chapter 11 debtor. Warner, G. Ray, "*Garnishment Restrictions and the Involuntary Chapter 11: Rethinking Kokozka in a Means Test World*," 13 AM. BANKR. INST. L. REV. 733 (2005)

[13] 11 U.S.C. § 1127(e); F.R.B.P. 3019(b).

[14] 11 U.S.C. § 1306(a)(2).

[15] 11 U.S.C. § 1325(b)(1)(B).

[16] 11 U.S.C. § 1325(b)(4).

[17] 11 U.S.C. § 1322(d). The debtor, the trustee or an unsecured creditor may seek to extend the time for payments, but not longer than the applicable commitment period. 11 U.S.C. §§ 1325(b)(1), 1329(c).



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

The provisions of Chapter 13 applicable to post-petition earnings have been challenged as violating the prohibition of the Thirteenth Amendment against involuntary servitude, and more particularly, against peonage,[19]which is a form of involuntary servitude that involves the additional requirement of being compelled to work in order to obtain a discharge.[20] Unfortunately, the same "keys" that permit Chapter 13 debtors to escape potential peonage are unavailable to Chapter 11 individual debtors under the BAPCPA amendments applicable in individual Chapter 11 cases, which calls into question the constitutionality of those amendments.

There are at least six reasons why courts have held that the Chapter 13 provisions governing post-petition earnings are constitutional: (1) involuntary cases may not be filed under Chapter 13, which means that an individual debtor cannot be forced to subject his or her income to the requirement of paying creditors to receive a discharge in Chapter 13;[21] (2) a Chapter 13 debtor has the right to dismiss his or her Chapter 13 case or to convert it to Chapter 7, if the case has not been previously converted, thereby enabling the debtor to avoid the post-petition earnings restrictions in Chapter 13;[22] (3) only a Chapter 13 debtor can file a plan;[23] (4) only a Chapter 13 debtor may modify a Chapter 13 plan prior to confirmation, whereas creditors only may object to confirmation;[24] (5) a Chapter 13 plan may not last longer than 5 years;[25] and (6) at one time, a creditor or a trustee could not force a Chapter 13 debtor to extend plan payments,[26] although that is no longer the case.[27]

---

[18] 11 U.S.C. § 1127(e).

[19] For a history of the peonage statutes, see *Pollock v. Williams*, 322 U.S. 4, 7-13 (1944).

[20] *Id.*; *Clyatt v. United States*, 197 U.S. 207, 215 (1905).

[21] 11 U.S.C. § 303(a); *In re Carrow*, 315 B.R. 8, 16 (Bankr. N.D.N.Y. 2004); *In re Molina Y Vedia*, 150 B.R. 393, 399 (Bankr. S.D. Tex. 1992); *In re Noonan*, 17 B.R. 793, 799-800 (Bankr. S.D.N.Y. 1982).

[22] 11 U.S.C. § 1307(a) and (b); *In re Spencer*, 137 B.R. 506, 513 (Bank. N.D. Okla. 1992); *In re Duncan*, 201 B.R. 889, 901(Bankr. W.D. Pan. 1996). However, one recent decision suggests that the Chapter 13 debtor's right to dismiss a Chapter 13 case is not absolute, if there has been bad faith conduct or abuse of the bankruptcy process, which raises implications for the constitutionality of Chapter 13 provisions forcing Chapter 13 debtors to dedicate projected disposable income to payment of creditors. See, *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764 (9th Cir. 2008), citing *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007).

[23] 11 U.S.C. § 1321; *In re Fluharty*, 23 B.R. 426, 428 (Bank. N.D. Ohio 1982).

[24] *Id.*, at 428-29.

[25] 11 U.S.C. §§ 1322(d), 1325(b)(4), 1329(c); *In re Nahat*, 315 B.R. 368, 374 (Bank. D. Tex. 2004).

[26] *Fluharty*, 23 B.R. at 429.

[27] 11 U.S.C. § 1329(a)(2).



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

These six aspects of Chapter 13 that saved (or at least previously saved) the provisions applicable to post-petition earnings from constitutional challenge under the Thirteenth Amendment cannot be found under the post-BAPCPA provisions of Chapter 11, as follows:

(1) An individual debtor may be subjected to an involuntary Chapter 11 petition.[28]

(2) A Chapter 11 individual debtor has no absolute right of conversion or dismissal. Federal Rule of Bankruptcy Procedure 1017(f)(1) presupposes that a conversion of a Chapter 11 case to one under chapter 7 pursuant to § 1112(a) will occur by motion, and it only provides that a debtor "may convert a case under this chapter to a case under chapter 7 of this title" if one of the limitations do not apply.[29] Conversion or dismissal only may occur if it is in the best interests of creditors and the estate.[30] As such, there are limitations on the debtor's right to convert or dismiss.

(3) In a Chapter 11 case, a creditor or a trustee may file a plan after the debtor's 120-day exclusivity period ends, although even that period may be reduced, and there is a limitation on that extension of 18 months from the order for relief.[31]

(4) Prior to confirmation, a creditor is not entitled to seek modification of the debtor's plan,[32] but the creditor's ability to file a competing plan,[33] except in certain circumstances, may accomplish the same result of forcing a modification upon a Chapter 11 debtor that the debtor did not propose.

(5) Unlike the Chapter 13 provisions that courts have found constitutional because plan payments are limited to 5 years,[34] there is no similar limitation on Chapter 11 plans.[35]

(6) Unlike prior Chapter 13 provisions that courts found constitutional because a creditor

---

[28] 11 U.S.C. § 303(a).

[29] Local Bankruptcy Rule 1017-1(a)(2) of the United States Bankruptcy Court for the Central District of California sets forth the procedure to be followed with respect to the motion. It specifically provides that no hearing is required, but there apparently is nothing preventing the Court from setting it for hearing and denying it.

[30] 11 U.S.C. § 1112(b).

[31] 11 U.S.C. § 1121(b) and (d).

[32] 11 U.S.C. § 1127(a).

[33] 11 U.S.C.§ 1121(c), (d), (e).

[34] See footnote 25, *supra*.

[35] 11 U.S.C. §§ 1129(a)(15), 1127(e)(2).



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

or a trustee could not request that payments be extended after confirmation,[36] a creditor or trustee may request that an individual Chapter 11 debtor's plan payments be extended beyond 5 years,[37] although applicable standards and limitations are not identified or even implied.[38]

In light of the obvious differences between the "keys" available to Chapter 13 debtors to avoid involuntary servitude and those available to Chapter 11 debtors, how have courts squared the post-BAPCPA requirements applicable to post-petition earnings in a Chapter 11 context with the requirements of the Thirteenth Amendment? The answer is that they really have not done so yet, except for the *Clemente* decision cited above. In part, that may be due to Chapter 11 being a less attractive alternative than prior to BAPCPA, even though it is more difficult to qualify for Chapter 7 given the means test under § 707(b).[39] However, the mere fact that individual Chapter 11 debtors do not enjoy most of the same rights to avoid involuntary servitude and peonage, which courts have identified as saving the Chapter 13 obligations imposed on post-petition earnings in a pre-BAPCPA context, suggests that the changes imposed under BAPCPA upon individual Chapter 11 debtors should be unconstitutional under the Thirteenth Amendment.

It is important to note that these same provisions also are unconstitutional under the equal protection clause[40] and the bankruptcy clause.[41]

---

[36] *Fluharty*, 23 B.R. at 429

[37] 11 U.S.C. § 1129(e)(2).

[38] At the time an individual's Chapter 11 plan is confirmed, a court is required to consider disposable income under 11 U.S.C. § 1129(a)(15)(B) during the a period or 5 or more years from the commencement of payments, but only if a creditor objects. Section 1127(f) states that §§ 1121-1129 apply to a pre-confirmation plan modification under § 1127(a), but it says nothing about post-confirmation plan modification under § 1127(e). Presumably, the debtor's projected disposable income at the time the post-confirmation modification is requested would be taken into account, but no limitation is imposed on the period of extended payments that may be requested. Courts attempting to square this lack of limitation with the Thirteenth Amendment could graft the requirements of § 1129(a)(15)(B) onto an extension or increase of the plan payments under § 1127(e) by concluding that an individual chapter 11 debtor only may be responsible to pay 5 years worth of projected disposable income, no matter how long payments continue, but the express wording of §§ 1127(e) and 1127(f) does not suggest that to be the legislative intent. [But see Exh. B hereto, n. 30, citing 6 Norton Bankr. L. & Prac. 3d § 112:32 (2009).]

[39] See, Norton Annual Survey of Bankruptcy Law PT I, Grassgreen, Debra, *Individual Chapter 11 Cases After BAPCPA: What Happened to the "Fresh Start,"* at 326-327 (2006).

[40] The BAPCPA amendments applicable to individual Chapter 11 debtors potentially implicate the Fourteenth Amendment's requirement of equal protection, as incorporated through the Fifth Amendment, due to the disparity in treatment between individual Chapter 11 and Chapter 13 debtors and due to a statutory scheme that discriminates against consumer debtors by pushing them into Chapter 11 by being pushed out of Chapter 7 and 13. Given that "[t]here is no constitutional right to obtain a discharge of one's debts in bankruptcy," *United States v. Kras*, 409 U.S. 434, 446 (1973), equal treatment is not an absolute requirement. *Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.),* 346 F.3d 1, 8 (1st

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

The constitutionality of the BAPCPA provisions applicable to individual Chapter 11 debtors need not be determined only by contrasting the rights of Chapter 13 debtors. Direct support for the unconstitutionality of forcing an individual to remain in Chapter 11 (or in this case entering an order for relief), and thereby treating his or her personal services income as estate assets, can be found in the reasoning of the court in *In re Fitzsimmons*.[42] In that case, the Court faced the issue of whether a Chapter 11 debtor's post-petition income was property of the estate. It noted that the comparable provisions of 11 U.S.C. § 1306(a)(2), which makes a Chapter 13 debtor's income property of the estate, are constitutional because a debtor cannot be forced into Chapter 13.[43] The Court concluded:

> "The consistency of the foregoing provisions of the Bankruptcy Code demonstrate implementation of a policy designed to prevent involuntary submission to the bankruptcy estate of post-petition earnings from services of an individual. This is consonant with the spirit, if not the letter, of the Thirteenth Amendment to the United States Constitution prohibiting involuntary servitude."[44]

Thus, forcing an individual Chapter 11 debtor to remain in Chapter 11 (or entering an order for relief in an involuntary Chapter 11) would similarly appear to be unconstitutional, because an involuntary Chapter 11 petition may be filed and because the provisions of § 1112(a) and (b) do not confer an absolute right upon an individual Chapter 11 debtor to dismiss his or her

---

Cir. 2003). Various aspects of federal bankruptcy law have been held to be consistent with the requirement of equal protection because they rationally relate to legitimate governmental objectives. *Id.* [11 U.S.C. § 362(h), which only allows individuals to seek damages for violations of the automatic stay]; *Ferm v. United States Trustee (In re Crawford),* 194 F.3d 954, 961 (9th Cir. 1999) [requirement of disclosure of social security number]; *Stewart v. United States Trustee (In re Stewart),* 175 F.3d 796, 813 (10th Cir. 1999) [11 U.S.C. § 707(b), which singles out consumer debtors for dismissal for substantial abuse]; *Storer v. French (In re Storer),* 58 F.3d 1125, 1130 (6th Cir. 1995) [11 U.S.C. § 522(b)(1) permitting choice between federal and state exemptions]; *In re Cox*, 393 B.R. 681, 690 (Bankr. W.D. Mo. 2008) [distinctions made by § 1325(b) between above-median debtors with actual income lower than projected disposable income and other debtors]; *Hedquist v. Fokkena (In re Hedquist),* 342 B.R. 295, 299 (B.A.P. 8th Cir. 2006) [credit counseling only required of individuals under 11 U.S.C. § 109(h)]. The question, therefore, is whether the disparate treatment of individual Chapter 11 debtors is rationally related to a legitimate government interest?

[41] The Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4, "requires that bankruptcy laws apply uniformly among classes of debtors." *Wood v. United States (In re Wood),* 866 F.2d 1367, 1372 (11th Cir. 1989). See, *e.g., Schultz v. United States,* 529 F.3d 343, 352 (6th Cir. 2008), *cert denied*, 2008 U.S. LEXIS 8945 (Dec. 8, 2008) [bankruptcy clause's requirement of uniformity is not violated by 11 U.S.C. §§ 707(b)(7), 1325(b)(3), and 1325(b)(4), which distinguish between two classes of debtors, "those whose annualized current monthly income is above the family median income for the applicable state and those whose income is below."]

[42] 20 B.R. 237 (B.A.P. 9th Cir. 1982).

[43] *Id.*, at 240.

[44] *Id.*

case or convert it to one under Chapter 7.[45]

In the pre-BAPCPA context, the Supreme Court recognized that Congress' "primary concern" about compelling a Chapter 13 debtor to "toil for the benefit of creditors in violation of the Thirteenth Amendment's involuntary servitude prohibition" was not applicable to individual Chapter 11 debtors: "Because there is no comparable provision in Chapter 11 requiring a debtor to pay future wages to a creditor, Congress' concern about imposing involuntary servitude on a Chapter 13 debtor is not relevant to a Chapter 11 reorganization."[46] In a post-BAPCPA context, it would appear that the Supreme Court could not reach the same conclusion under the Thirteenth Amendment because the BAPCPA provisions applicable to individual Chapter 11 debtors require debtors to "toil for the benefit of creditors" by requiring them "to pay future wages" to creditors.

An argument can be made that, if an individual debtor voluntarily files Chapter 11, he or she in effect has waived the Thirteenth Amendment constitutional right against involuntary servitude, which may be affected by the BAPCPA amendments regarding post-petition earnings. As stated above, that argument does not apply in this case because it was filed as an involuntary Chapter 11 proceeding against Mr. Marciano. While superficially attractive, that argument suffers from at least three deficiencies, which coincidentally were the exact same deficiencies noted in the *Clemente* decision. First, a debtor should not be forced to choose between the protections available under bankruptcy law and his or her Thirteenth Amendment right against involuntary servitude. Interestingly, the post-petition earnings provisions applicable to Chapter 13 debtors have not been found constitutional solely on grounds that a voluntary Chapter 13 filing operates to waive constitutional rights. Forcing such a choice between bankruptcy protection and

[45] In *In re Molina Y Vedia*, 150 B.R. 393, 399 (Bankr. S.D. Tex. 1992), the Court analyzed whether an individual Chapter 11 debtor's income was property of the estate. It compared the provisions of Chapter 11 to the provisions of Chapter 12 and 13, and it noted that constitutional concerns were addressed by the debtor's absolute right to covert: "Similar Congressional concern for the Thirteenth Amendment is evidenced by the fact that debtors under Chapter 12 and Chapter 13 have an absolute right to convert or dismiss their cases. See 11 U.S.C. § 1307 and 11 U.S.C. § 1208." This would seem to suggest that individual chapter 11 debtors should have an absolute right to convert or dismiss, but that is not the case.

[46] *Toibb v. Ratloff*, 501 U.S. 157, 165-166 (1991). See also, *In re Cooley*, 87 B.R. 432, 438 (Bankr. S.D. Tex. 1988) ["Congress chose not to eliminate the earnings exception with respect to an individual who files a voluntary Chapter 11 petition, in my opinion, to protect against creditors impressing an individual debtor to work for the estate, as well as to protect an individual Chapter 11 debtor's right to a fresh start."]



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

peonage would be inconsistent with the "fresh start" goal of bankruptcy law.[47] That is a goal that has been specifically recognized by the Supreme Court in holding that a state law, which created a lien based upon an assignment of future wages, was so "destructive of the purpose and spirit of the Bankruptcy Act" that it was not nondischargeable under the federal bankruptcy law,[48] although the Court did not reach the issue of whether that law violated the Thirteenth Amendment. Ironically, the provisions of BAPCPA affecting individual Chapter 11 debtors render federal bankruptcy law internally inconsistent in discouraging filings that would promote the "fresh start" goal. Second, constitutional rights are not easily deemed waived.[49] However, "'[i]t is well established that one may not retain benefits of an act while attacking the constitutionality of the same act.'"[50] An individual voluntary Chapter 11 debtor, therefore, arguably may be estopped from arguing that the BAPCPA modifications applicable to individual Chapter 11 debtors violated his or her Thirteenth Amendment rights. Courts have applied the estoppel defense inconsistently as it concerns constitutional rights.[51] One court has held that the voluntary nature of a Chapter 13 case means that it does not violate the Thirteenth Amendment and that the waiver of the right to dismiss a Chapter 13 case would be unenforceable because it would affect the voluntary nature of the Chapter 13, which suggests that in a Chapter 11 or 13

[47] *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) ["One of the primary purposes of the Bankruptcy Act is to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes."] This goal, however, is not a constitutional right. *In re Krohn*, 886 F.2d 123, 127 (6th Cir. Ohio 1989) ["There is no constitutional right to a bankruptcy discharge, and the 'fresh start' provided for by the Code is a creature of congressional policy. *United States v. Kras*, 409 U.S. 434, 446-47, 34 L. Ed. 2d 626, 93 S. Ct. 631 (1973). Congress, within the limits set by the Constitution, is free to deny access to bankruptcy as it sees fit. *Id.* at 447."]

[48] *Local Loan Co. v. Hunt*, 292 U.S. at 245.

[49] *Schell v. Witek*, 218 F.3d 1017, 1023-1024 (9th Cir. 2000) ["The general rule is that '"constitutional rights may ordinarily be waived [only] if it can be established by clear and convincing evidence that the waiver is voluntary, knowing, and intelligent."' [Citations omitted] . . . . [W]e must 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'"]

[50] *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 456 (1988), citing *Fahey v. Mallonee*, 332 U.S. 245 (1947).

[51] See, *e.g.*, *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457 (1988) [student benefiting from school bus service was not estopped from challenging constitutionality of requirement that student pay for that service]; *In re Morrissey*, 996 F. Supp. 530, 536 (E.D. Va. 1998), *aff'd* 168 F.3d 134, *cert. denied* 527 U.S. 1036 [attorney's agreement to abide by local rules did not estop him from asserting constitutionality of rule prohibiting extrajudicial statements to the press]; *Charter Communs., Inc. v. County of Santa Cruz*, 304 F.3d 927, 935 (9th Cir. 2002). *But see*, *Stewart v. Lagrand*, 526 U.S. 115, 119 (1999) [inmate waived claim that execution by lethal gas violated Eighth Amendment's prohibition against cruel and unusual punishment by choosing that method of execution].



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

context Thirteenth Amendment rights may not be waived.[52] Third, the supposed "choice" available to a person in need of bankruptcy protection is a hollow one indeed when that individual's debts exceed the limitations applicable to Chapter 13 debtors[53] and the individual's income prevents him or her from qualifying as a Chapter 7 debtor.[54] That "choice" could mean a debtor losing his or her home or being subject to aggressive collection efforts without the ability to discharge his or her debts, rather than subjecting himself or herself to the post-petition earnings provisions applicable to individual Chapter 11 debtors. That is truly a "Hobson's choice" in that the debtor's choice is between filing and not filing Chapter 11, *i.e.,* a "take it or leave it" choice, rather than a choice between two reasonable alternatives. That is hardly a choice at all, and in fact the Supreme Court has suggested that debtors should not be forced to make such a choice.[55]

The practical issues faced by a debtor in choosing Chapter 11 have, at least in part, been addressed by courts in straining to define what is "voluntary." In *In re Herberman*, the Court held that the earnings of a debtor-professional were property of the estate under § 541(a)(7), which concerns "[a]ny interest in property that the estate acquires after the commencement of the case."[56] The Court, however, faced the constitutional challenge under the Thirteenth Amendment by concluding that the debtor had voluntarily filed Chapter 11, with knowledge of how it would affect him; the debtor had the option to convert to Chapter 7, although the court acknowledged that the debtor's right to do so was not absolute; and the debtor could seek the appointment of a trustee and then refuse to work, notwithstanding the economic necessity to work.[57] The *Herberman* Court's analysis, however, is not satisfactory because it ignores the exact economic realities that bankruptcy is meant to address. Even if the debtor knows how Chapter 11 will

---

[52] *In re Gaudet*, 132 B.R. 670, 674 (D.R.I. 1991).

[53] 11 U.S.C. § 108(e).

[54] 11 U.S.C. § 707(b).

[55] *Local Loan Co. v. Hunt*, 292 U.S. 234, 245 (1934) ["From the viewpoint of the wage-earner there is little difference between not earning at all and earning wholly for a creditor. Pauperism may be the necessary result of either."] In the post-BAPCPA context, debtors are not required to earn "wholly" for the benefit of creditors given "disposable income" only is subject to use for plan payments, not all income. 11 U.S.C. § 1129(a)(15). That qualification, however, does not preclude the concern that debtors are faced with a choice of the goals of bankruptcy law in filing Chapter 11 and the Thirteenth Amendment in choosing not to file Chapter 11.

[56] *In re Herberman*, 122 B.R. 273 (Bankr. W.D. Tex. 1999).

[57] *Id.*, at 283-285. Accord, *In re Harp*, 166 B.R. 740, 753-754 (Bank. N.D. Ala. 1993).



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

affect him, he may not have any effective choice if faced with foreclosure, insurmountable debts, and/or the expense of crushing lawsuits. As suggested above, the right to convert or dismiss is not absolute, and that right has been an important consideration in courts finding the provisions applicable to Chapter 13 post-petition earnings to be constitutional. And the notion that a debtor can simply choose not to work is worse than impractical. It is directly contrary to the fresh start goal of bankruptcy law. It is no surprise that *Herberman* has been criticized.[58] One commentator has suggested that, if a Chapter 11 debtor quits working, he or she may be subject to contempt sanctions or even imprisonment for intentionally failing to fund a plan confirmed by a court order, which is to say that the "key" of refusing to work to avoid involuntary servitude suggested in *Herberman* is not reasonably available.[59] However, the availability of other remedies for violation of a plan, such as conversion or dismissal,[60] and denial of a discharge,[61] arguably may preclude contempt sanctions for such conduct.[62]

The issue of voluntariness was analyzed by the court in *Haas v. Wisconsin*,[63] in which a defendant was imprisoned for failing to comply with a judgment of forfeiture. The Court reasoned that the defendant could have avoided imprisonment:

> "Plaintiff's involuntary servitude claim is rejected because plaintiff's incarceration was not involuntary. Involuntary servitude exists where 'the victim had no available choice but to work or be subject to legal sanction.' *United States v. Kozminski*, 487 U.S. 931, 934, 101 L. Ed. 2d 788, 108 S. Ct. 2751 (1988). Plaintiff in the case before me had other choices: He could have paid the forfeitures or demonstrated to the municipal court that he was financially unable to pay. See Wis. Stat. § 800.095(4)(a), (b). Indeed, had plaintiff shown that he was unable to pay, Judge Michelson could not have lawfully ordered his incarceration. *Id.* Rather than choose either of these routes and avoid jail, plaintiff chose to ignore the court's orders and warnings. Plaintiff's eventual imprisonment was, therefore, not involuntary."[64]

In the context of an individual Chapter 11 debtor, the issue becomes whether the debtor

---

[58] *In re Molina Y Vedia*, 150 B.R. 393, 397-399 (Bankr. S.D. Tex. 1992); *In re Powell*, 187 B.R. 642, 647 (Bankr. D. Minn. 1995)

[59] Keach, Robert J., "*Dead Man Filing Redux: Is The New Individual Chapter 11 Unconstitutional?*," 13 AM. BANKR. INST. L. REV. 438, 500-502 (2005).

[60] 11 U.S.C. §§ 1112(b)(1) and 1112(b)(4)(N).

[61] 11 U.S.C. § 1141(d)(5).

[62] Chemerinsky, Erwin, *Constitutional Issues Posed in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 AM. BANK. L.J. 571, 590 (2005).

[63] 241 F. Supp. 2d 922 (E.D. Wis. 2003).

[64] *Id.*, at 934.

can reasonably avoid potential peonage imposed by the BAPCPA amendments. As suggested above, those options may be limited to not filing Chapter 11 at all or filing Chapter 11 and not working, which are not realistic alternatives.

The Thirteenth Amendment was analyzed in the pre-BAPCPA context in which an individual debtor's earnings were not assets of the chapter 11 estate under § 541(a)(7) due to the so-called "earnings exemption," but the earnings of the debtor's sole proprietorship were included within the estate's assets under § 541(a)(6). In *In re Angobaldo*,[65] the Court discussed case law from the Ninth Circuit and other Circuits on this issue. In *dicta*, the Court rejected the argument that treatment of the sole proprietorship's income as estate property violated the Thirteenth Amendment, and that was because of the debtor's alternatives:

> "Debtor had many options available to him. He could have filed Chapter 7 and within the constraints of that Chapter, 'walked away' from his obligations. He may have been able to establish eligibility for Chapter 13 and received the many benefits available under that chapter while continuing to operate his business. Even under Chapter 11, he could have sold his business as a going concern or liquidated it, and may still elect to do so.
>
> "Instead, this Debtor made the decision to bring his business into bankruptcy under Chapter 11, and he chose to continue to operate it. No one forced this Debtor to run his business in such a way that it would require a significant amount of revenues generated post-petition to keep it operating. While this Debtor's choices may have been limited, other options were not foreclosed to him. The Debtor has not been compelled to labor for another against his will in the sense that there is involuntary servitude in violation of his Thirteenth Amendment rights."[66]

Although *dicta* based upon speculation, the Court's analysis has interesting implications in the post-BAPCPA environment. First, it seems doubtful that the debtor's operating sole proprietorship in that case now could qualify for Chapter 7 under the means test, thereby foreclosing the debtor's option to "walk away from his obligations." Second, if the individual Chapter 11 debtor is not a sole proprietorship, but is simply a wage-earner, that debtor does not have the option to sell the business as a going concern or liquidating it, thereby foreclosing that option as well. The Court's analysis, therefore, suggests that the lack of those options in the post-BAPCPA environment to the individual wage-earning Chapter 11 debtor would render the

---

[65] 160 B.R. 140 (Bankr. N.D. Cal. 1993).
[66] *Id.*, at 150.



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

applicable BAPCPA amendments unconstitutional. As quoted above, the Court also identified consent of the debtor in "the decision to bring his business into bankruptcy under Chapter 11" as an important consideration. The consent of a debtor in the pre-BAPCPA era with the options available, however, is conceptually different from the post-BAPCPA context in which those options have been limited. Consent cannot be viewed in an abstract sense, but as even the *Angobaldo* Court noted, must be viewed in terms of the rights and burdens that accompany the decision to file Chapter 11.[67]

Case law drawn from non-bankruptcy circumstances is very instructive. That case law also is discussed in the attached article. Rather than also repeating that supporting analysis, Mr. Marciano refers the Court to pages 171-180 of that article. [Exh. B.]

It would violate Mr. Marciano's Thirteenth Amendment rights and his constitutional rights under the Equal Protection Clause and the Bankruptcy Clause to enter an order for relief against him in this involuntary Chapter 11 case. As such, a legally cognizable claim cannot be stated for entry of that order for relief, thereby subjecting the involuntary petition to dismissal with prejudice given that the defect cannot be cured by amendment.

## III. CONCLUSION.

Based upon the foregoing, Mr. Marciano respectfully requests that the Court dismiss the involuntary petition. Alternatively, if the petition is not dismissed, Mr. Marciano respectfully requests that the Court quash service of the summons and involuntary petition.

DATED: November 20, 2009

HILL, FARRER & BURRILL LLP

By: /s/ Daniel J. McCarthy
DANIEL J. McCARTHY
Attorneys for Involuntary Chapter 11 Debtor GEORGES MARCIANO

---

67 *Id.* ["Next, Debtor had many options available to him. He could have filed Chapter 7 and within the constraints of that Chapter, 'walked away' from his obligations. He may have been able to establish eligibility for Chapter 13 and received the many benefits available under that chapter while continuing to operate his business. Even under Chapter 11, he could have sold his business as a going concern or liquidated it, and may still elect to do so."]

DECLARATION

**DECLARATION OF DANIEL J. McCARTHY**

I, Daniel J. McCarthy, declare:

1. I am an attorney law. I am duly qualified to practice before all courts of the State of California and all federal courts in the State of California, as well as certain other courts. I was admitted to the State Bar of California in 1981, and I have been a member in good standing since then. I am a partner at the law firm of Hill, Farrer & Burrill, LLP. I am co-counsel for judgment creditor Georges Marciano in case nos. BC375824 and BC384493 pending before the Los Angeles Superior Court. The information set forth in this declaration is based upon my personal knowledge, which in some cases is based upon my review of ex parte applications, motions, and orders filed in the two referenced cases and in appeals filled from orders in those cases.

2. Multiple judgments were awarded against Georges Marciano in case nos. BC375824 and BC384493 in the Los Angeles County Superior Court in late July and August 2009. Along with two other judgment creditors, petitioning creditors Steven Chapnick, Joseph Fahs and Elizabeth Tagle each had a judgment entered in their favor and against Mr. Marciano for (1) future economic loss, past mental suffering and physical pain, future mental suffering and physical pain relating to alleged severe emotional distress, where the awarded damages total $34.044 million; (2) general damages for injury to reputation and shame, mortification or hurt feelings relating to alleged defamation, where the awarded damages total $35 million (a total of $69.004 million in compensatory damages); and (3) punitive damages of $5 million, for a total $74.044 million. In contrast, in their respective statements of damages filed in case no. BC375824, Mr. Chapnick claimed $750,000 in economic damages and $20 million in non-economic damages; Mr. Fahs claimed $750,000 in economic damages and $50 million in non-economic damages; and Elizabeth Tagle claimed $250,000.00 in economic damages and $10.05 million in non-economic damages. The damages awarded the other two defendants also exceeded their claimed damages.

3. Attached hereto as **Exhibit A** is a true and correct copy of the original judgment entered in favor of Steven Chapnick by the Los Angeles Superior Court in case no. BC375824. It is substantially similar to the four other judgments entered in that case against Mr. Marciano in



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

late July 2009. Mr. Chapnick attached a copy of this judgment to motions filed by him in case no. BC375824 in connection with efforts to collect on the judgment awarded to him.

4. Mr. Marciano challenged the judgments in case nos. BC375824 and BC384493 through motions for new trial. On the morning of Friday, October 2, 2009, I attended the hearing in case no. BC375824 on Mr. Marciano's motions for new trial with respect the five judgments entered in that action. That hearing concluded shortly before 12:00 noon. At that hearing, Judge Elizabeth White agreed with Mr. Marciano, and she reduced all five of the judgment amounts to the amounts demanded in the cross-complainants' respective statements of damages. Judge White said she would enter a minute order that day stating the reduced amounts. According to her verbal ruling, the judgments were reduced as follows: The judgments in the amount of $74.044 million each in favor of Joseph Fahs, Camille Abat and Miriam Choi were reduced to the sum of $55 million each that they each requested in their respective statements of damages; the judgment in the amount of $74.044 million in favor of Steven Chapnick was reduced to the sum of $25 million requested in his statement of damages; and the judgment in the amount of $74.044 million in favor of Elizabeth Tagle was reduced to the sum of $15.3 million requested in her statement of damages. Amended judgments were subsequently entered by the Court interlineating the original judgments to reflect the corrected amounts.

5. The five original judgments in case no. BC375824 each were for $74.044 million, for a total of $370.22 million. Because Mr. Marciano did not have the ability to post bonds from an admitted insurer under C.C.P. § 917.1 in the amount of 1-1/2 times the judgments (*i.e.*, $555 million) in order to obtain a stay pending appeal, he sought a stay from the State Court by ex parte application. The State Court denied that application at hearing on August 3, 2009. Mr. Marciano filed a petition for a writ with the Court of Appeal by which he asked that the Court of Appeal order the stay of collection pending appeal, but it also denied the writ.

6. The efforts of the judgment creditors to collect from Mr. Marciano were aggressive and extensive. I defended Mr. Marciano against those collection efforts, many of which were overreaching in various respects. The judgment creditors in the two actions obtained orders for Mr. Marciano to appear for his judgment debtor exam. They obtained orders for



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

numerous third persons to appear for exams, and they subpoenaed documents from those persons. One judgment creditor served post-judgment interrogatories and requests for documents. They levied writs of execution against numerous financial institutions, including Bank of America, City National Bank, UBS Financial Services, Inc., Wells Fargo Bank, Morgan Stanley Smith Barney, Merrill Lynch, Union Bank, and others, thereby freezing accounts not only in the name of Mr. Marciano but also in the name of irrevocable trusts. They recorded abstracts of judgment. They obtained charging orders against Mr. Marciano's interests in certain limited liability companies, assignment orders against entities owing any monies to Mr. Marciano, and ex parte turnover orders requiring Mr. Marciano to deliver various assets to the sheriff. One creditor even went so far as to obtain an ex parte private place seizure order without prior notice to Mr. Marciano, which allowed the sheriff to break into Mr. Marciano's house to take possession of identified assets, although the order was never executed.

7. Attached hereto as **Exhibit B** is a true and correct copy of an article that I wrote and submitted for publication in January 2009. It was published in the Spring edition of the California Bankruptcy Journal, which was distributed in approximately April or May 2009.

8. Attached hereto as **Exhibit C** is a true and correct copy of *In re Clemente*, 409 B.R. 288 (Bankr. D.N.J. 2009).

9. Attached hereto as **Exhibit D** is a true and correct copy of the proof of service filed with this Court on November 2, 2009, showing alleged service of the summons and involuntary petition on October 31, 2009.

The foregoing is within my personal knowledge. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on November 20, 2009.

/s/ Daniel J. McCarthy
DANIEL J. McCARTHY



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

DECLARATION

**DECLARATION OF GEORGES MARCIANO**

I, Georges Marciano, declare:

1. The address at 1000 N. Crescent Drive, Beverly Hills, CA 90210, is the residential address at which I lived in California until early August 2009. At that time, I left California and have not returned since then. Thus, the address at 1000 N. Crescent Drive has not been my residence, "dwelling house" or "usual place of abode" since early August 2009. Further, since early September 2009, I have been outside of the United States continuously, and I have not re-entered the United States since then.

2. The address at 2121 Avenue of the Stars, 24th Floor, Los Angeles, CA 90067, is the address of the law firm of Browne, Woods & George, which is and has been my counsel in the litigation in the Los Angeles County Superior Court entitled *Georges Marciano v. Joseph Fahs, et al.*, and *Georges Marciano v. Gary Iskowitz, et al.* At the time certain pleadings were fraudulently filed in Court in those actions without my knowledge, I was not aware and had not seen that those pleadings stated that I was acting "*in pro per*" and that my personal address was 2121 Avenue of the Stars, 24th Floor, Los Angeles, CA 90067. I subsequently learned that this had been done when my employees obtained copies of filed pleadings from the Court months after they were filed. I was stunned when I saw my name acting "*in pro per*" with that address listed below it on those pleadings, which I believe is illegal. I never authorized that address to be listed as my address. I have never done business at that address, and I do not receive mail at that address. I have never had an office at that address, nor have I ever regularly conducted any of my own business activities or any profession at that address.

3. I have not seen or received a copy of any involuntary Chapter 11 petition filed against me in the United States Bankruptcy Court, Central District of California, or any summons related to that petition.

The foregoing is within my personal knowledge. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and that this



HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

declaration was executed on November 19, 2009.

Georges Marciano

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147