**HILL, FARRER & BURRILL LLP**
Daniel J. McCarthy (Bar No. 101081)
One California Plaza, 37th Floor
300 South Grand Avenue
Los Angeles, CA 90071-3147
Telephone: (213) 620-0460
Fax: (213) 624-4840

Attorneys for Involuntary Chapter 11 Debtor
GEORGES MARCIANO

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re | CASE NO. 2:09-bk-39630 VK |
| GEORGES MARCIANO, | Chapter 11 |
| Involuntary Debtor. | **NOTICE OF MOTION AND MOTION TO DISMISS OR STAY INVOLUNTARY CHAPTER 11 CASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DANIEL J. McCARTHY AND DEAN E. DENNIS** |
| | **DATE:** May 18, 2010<br>**TIME:** 10:00 a.m.<br>**CTRM:** 1675 |

**TO: THE HONORABLE VICTORIA KAUFMAN, UNITED STATES BANKRUPTCY JUDGE, AND ALL PARTIES-IN-INTEREST AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 18, 2010, at 10:00 a.m., in Courtroom 1675 of the above-entitled Court, located at 255 E. Temple Street, Los Angeles, California 90012, involuntary Chapter 11 debtor Georges Marciano ("Marciano") will bring on for hearing his "Motion to Dismiss or Stay Involuntary Chapter 11 Case" (the "Motion") pursuant to which he will request an order of the Court either dismissing this Chapter 11 case or staying all matters in this case until such time as the pending appeals by Mr. Marciano from the default judgments held

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    by the petitioning creditors and five other default judgment creditors are resolved.

2        This Motion is brought pursuant to 11 U.S.C. §§ 105 and 305 and this Court's inherent

3    authority.

4        Opposition, if any, to the Motion is required to be filed and served at least 14 days before

5    hearing on the Motion.  The failure to properly file and serve an opposition in compliance with

6    applicable rules may be deemed consent to the relief requested and a waiver of any right to

7    oppose the Motion.

8

9    DATED:    April 26, 2010                    HILL, FARRER & BURRILL LLP

10

11                                            By:  /s/  Daniel J. McCarthy

12                                                DANIEL J. McCARTHY
                                             Attorneys for Involuntary Chapter 11
13                                            Debtor GEORGES MARCIANO

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS OR STAY INVOLUNTARY CHAPTER 11 CASE ......................................... 1

I. INTRODUCTION ........................................................................................................ 1

    A    Procedural Background ..................................................................................... 1

        1.    The State Court Actions ...................................................................... 1

        2.    The Involuntary Chapter 11 Case ...................................................... 2

        3.    The Court's Scheduling Order And Related Matters .......................... 4

        4.    The Status Of The Appeals ................................................................ 6

    B.    Summary of Argument ..................................................................................... 7

II. THE COURT SHOULD DISMISS THIS INVOLUNTARY CHAPTER 11 CASE ......... 7

    A.    Consideration Of Relevant Factors Under 11 U.S.C. § 305 Favor Dismissal ........ 7

    B.    Because The Appeals Are Meritorious, There Is Good Reason To Allow
Them To Proceed First ..................................................................................... 14

        1.    Introductory Statement On Considering The Grounds For Appeal ......... 14

        2.    There Is Not An Irrebutable Presumption Or Any Per Se Rule Of
"No Bona Fide Dispute" Regarding Claims Based Upon Default
Judgments ......................................................................................... 15

        3.    The Cases Cited By Petitioning Creditors Are Not Controlling .............. 20

        4.    The Judgments In The *Fahs* And *Iskowitz* Actions Clearly Were
Default Judgments ............................................................................ 23

        5.    Judgments On Appeal In California Are Not Entitled To Any
Binding Effect ................................................................................... 26

        6.    The Petitioning Default Judgments Are Subject To Bona Fide
Dispute .............................................................................................. 26

III. ALTERNATIVELY, THE COURT SHOULD STAY THIS INVOLUNTARY
CHAPTER 11 CASE PENDING THE OUTCOME OF THE APPEALS IN
STATE COURT ......................................................................................................... 34

IV. CONCLUSION ......................................................................................................... 34

DECLARATION OF DANIEL J. MCCARTHY .................................................................. 35

DECLARATION OF DEAN E. DENNIS ........................................................................... 49

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page

### *Federal Cases*

*Au Bon Pain Corporation v. Artect, Inc.,*
653 F.2d 61 (2d Cir. 1981)..................................................................... 20

*Bartmann v. Maverick Tube Corp.,*
853 F.2d 1540, 1544 (10th Cir. 1988)................................................ 16, 19

*Cal-Micro, Inc. v. Cantrell (In re Cantrell),*
329 F.3d 1119, 1124 (9th Cir. 2003)..................................................... 25

*Clark Motor Co. v. Mfrs. & Traders Trust, Co.,*
2008 U.S. Dist. LEXIS 47797 (M.D. Pa. June 18, 2008) ....................... 14

*In re AMC Investors, LLC,*
406 B.R. 478, 481 (Bankr. D. Del. 2009) .......................................... 21, 22

*In re Briggs,*
2008 Bankr. LEXIS 4354, 2008 WL 190463 (Bankr. N.D. Tex. 2008) ............... 18

*In re Busick,*
831 F.2d 745, 750 (7th Cir. 1987)......................................................... 15

*In re Drexler,*
56 B.R. 960 (Bankr. S.D.N.Y. 1986) ........................................... 17, 18, 20

*In re Everett,*
178 B.R. 132 (Bankr. N.D. Ohio 1994) .................................................. 18

*In re Graber,*
319 B.R. 374, 378 n.7 (Bankr. E.D. Pa. 2004)............................ 16, 17, 18, 23

*In re Henry S. Miller Commercial, LLC,*
418 B.R. 912, 922-922 (Bankr. N.D.Tex. 2009)........................... 16, 18, 19, 23

*In re Lough,*
57 B.R. 993, 996-97 (E.D. Mich. 1986)............................................ 15, 17

*In re McDonald Trucking Co., Inc.,*
76 Bankr. 513, 516 (Bankr. W.D. Pa. 1987) ........................................... 18

*In re Pac. Rollforming, LLC,*
415 B.R. 750, 755 (Bankr. N.D. Cal. 2009).............................................. 9

*In re Peterson,*
2010 Bankr. LEXIS 396, 5-6 (Bankr. D. Wyo. Feb. 5, 2010) ...................... 16

*In re Prisuta,*
121 B.R. 474, 476 (Bankr. W.D. Pa. 1990) .................................. 16, 17, 18, 19, 23

*In re Schiliro,*
64 B.R. 422 (E.D. Pa. 1986) ................................................................. 18

*In re Smith,*
415 B.R. 222, 228 (Bankr. N.D. Tex. 2009) ........................................... 21

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

# TABLE OF AUTHORITIES

### (continued)

Page

*In re Starlite Houseboats, Inc.,*
2010 Bankr. LEXIS 855, \*30-32 (Bankr. D. Kan. Mar. 23, 2010)..........................8, 16, 19, 23

*In re Tamarack Resort, LLC,*
2010 Bankr. LEXIS 845, 7-9 (Bankr. D. Idaho Mar. 17, 2010) ..............................................15

*Liberty Tool v. Vortex Fishing Sys. (In Re Vortex Fishing Sys.),*
277 F.3d 1057, 1064 (9th Cir. 2002)...........................................................................15, 16

*Platinum Fin. Servs. Corp. v. Byrd (In re Byrd),*
357 F.3d 433, 438 (4th Cir. 2004).........................................................................16, 19, 22

*Profutures Special Equity Fund, L.P. v. Spade (In re Spade),*
269 B.R. 225 (D. Colo. 2001) ...................................................................................8, 10, 11, 12

*Public Serv. Enter. Group v. Phila. Elec. Co.,*
130 F.R.D. 543, 552 (D.N.J. 1990)................................................................................14

*Trans World Airlines, Inc. v. Hughes,*
449 F.2d 51 (2d Cir. 1971); *reversed on other grounds,*
409 U.S. 363, 93 S. Ct. 647, 34 L. Ed. 2d 577 (1973) ....................................................20

*Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.),*
370 B.R. 236, 247 (B.A.P. 9th Cir. 2007)....................................................................8, 13

*United States v. 216 Bottles,*
36 F.R.D. 695, 700 (E.D.N.Y. 1965) ..............................................................................14

<u>**State Cases**</u>

*Bihun v. AT&T Information Sys. Inc.,*
13 Cal.App.4th 976, 997 (1993)  ...............................................................................32, 33

*Burnett v. King,*
33 Cal.2d 805, 808 (1949)...........................................................................................30

*Cyrus v. Haveson,*
65 Cal.App.3d 306, 318 (1976)....................................................................................23

*Devlin v. Kearny Mesa AMC/Jeep/Renault,*
155 Cal. App. 3d 381, 385 (1984)................................................................................21

*Ellis v. Rademacher,*
125 Cal. 556, 557 (1899) ............................................................................................29

*Fasuyi v. Permatex, Inc.,*
167 Cal. App. 4th 681, 691 (2008) ..............................................................................29

*Fortman v. Hemco, Inc.,*
211 Cal.App.3d 241, 259 (1989 ...................................................................................31

*Friddle v. Epstein,*
16 Cal.App.4th 1649, 1660 (1993) ...............................................................................31

*Greenup v. Rodman,*
42 Cal. 3d 822, 827 (1986)...........................................................................................25

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 3 -

# TABLE OF AUTHORITIES

## (continued)

**Page**

Graham v. Yellow Cab Co.,
125 Cal.App.141, 146 (1932) .................................................................................. 31

Heidary v. Yadollahi,
99 Cal.App.4th 857, 868 (2002) ............................................................................. 29

Iwekaogwu v. City of Los Angeles,
75 Cal.App.4th 803, 821 (1999) ............................................................................. 32

Jackson v. Bank of America,
188 Cal.App.3d 375, 389 (1986) ............................................................................. 29

Johnson v. E-Z Ins. Brokerage, Inc.,
175 Cal. App. 4th 86, 89 (2009) ............................................................................. 26

Julius Schifaugh IV Consulting Services, Inc. v. Avaris Capital, Inc.,
164 Cal. App. 4th 1393, 1397 (2008) ..................................................................... 26

Long Beach Unified School Dist. v. California,
225 Cal.App.3d 155 (1990) ..................................................................................... 26

Mokler v. County of Orange,
157 Cal.App.4th 121, 147-48 (2007) ...................................................................... 33

Myers v. Washington,
211 Cal.App.2d 767, 770 (1963) ............................................................................. 29

Nguyen v. Los Angeles County Harbor/UCLA Medical Center,
40 Cal.App.4th 1433, 145 (1995 ............................................................................. 31

Ninety Five Ten v. Crain,
231 Cal.App.3d 36, 40 (1991) ................................................................................. 31

Ortega v. Pajaro Valley U. Sch. Dist.,
64 Cal.App.4th 1023 (1998) .................................................................................... 32

Pellissier v. Title Guarantee & Trust Co.,
208 Cal. 172, 184 (1929) ........................................................................................ 26

Resort Video, Inc. v. Laser Video, Inc.,
35 Cal.App.4th 1679, 1701 ..................................................................................... 31

Sandoval v. Superior Court,
140 Cal.App.3d 932, 936 (1983) ............................................................................. 26

Saari v. Jongordon Corp.,
5 Cal.App.4th 797, 808 (1992) ............................................................................... 33

Sommer v. Gabor,
40 Cal.App.4th 1455, 1471 (1996) ......................................................................... 32

Tavaglione v. Billings,
4 Cal.4th 1150, 1158-59 (1993) ............................................................................. 31

Watson v. Dept. of Rehabilitation,
212 Cal.App.3d 1271, 1293-94 (1989) ................................................................... 32

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1

2

## TABLE OF AUTHORITIES

3

**(continued)**

4

5

**Page**

### *Statutes and Rules*

11 U.S.C. §101(5)(A) ........................................................................................ 17

11 U.S.C. §303 ............................................................................ 3, 13, 19, 20, 25

11 U.S.C. §303(b) ............................................................................................. 17

11 U.S.C. §303(b)(1) ............................................................................ 16, 19, 27

11 U.S.C. §303(f) ............................................................................................... 9

11 U.S.C. §303(h)(1) ........................................................................................ 27

11 U.S.C. § 305 ............................................................................................ 8, 13

11 U.S.C. § 305(a)(1) ..................................................................................... 7, 8

11 U.S.C. § 305(a)(1) ............................................................... 13, 15, 33, 34

11 U.S.C. § 547 ................................................................................................ 34

11 U.S.C. § 548 ................................................................................................ 34

C.C.P. § 580(a) ................................................................................................ 30

C.C.P. § 585 ..................................................................................................... 23

C.C.P. § 585(b) ................................................................................................ 30

C.C.P. § 708.110(d) ......................................................................................... 11

F.R.B.P. 4001(a)(3) ........................................................................................... 6

### *Other*

7 Witkin, *Cal. Procedure*, Judgment, § 364 (5th ed.) ..................................... 26

Wright, Miller & Marcus, *Federal Practice & Procedure: Civ.3d*, § 2011 ................................. 14

Wright, Miller & Kane, *Federal Practice & Procedure, Civil 2d*, § 2688 ................................. 20

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

**MOTION TO DISMISS OR STAY INVOLUNTARY CHAPTER 11 CASE**

## I. INTRODUCTION.

### A. Procedural Background.

#### 1. The State Court Actions.

Alleged debtor Georges Marciano was a plaintiff and cross-complainant in two coordinated cases in the Los Angeles Superior Court (the "State Court") entitled *Georges Marciano v. Joseph Fahs, et al.*, bearing case no. BC375824 (the "*Fahs* action"), and entitled *Georges Marciano, et al. v. Gary Iskowitz, et al.*, bearing case no. BC384493, which was consolidated with case no. BC385790 entitled *Gary Iskowitz, et al. v. Georges Marciano, et al.* (collectively, the "*Iskowitz* action"). [McCarthy Decl., ¶¶1, 2.]

The petitioning creditors are Steven Chapnick, Joseph Fahs and Elizabeth Tagle. They were defendants and cross-complainants in the *Fahs* action. Camille Abat and Miriam Choi also were defendants and cross-complainants in the *Fahs* action. [McCarthy Decl., ¶3.]

Gary Iskowitz, Theresa Iskowitz and Carolyn Malkus were defendants and cross-complainants in the *Iskowitz* action. [McCarthy Decl., ¶4.]

Based upon discovery sanctions, the State Court issued orders striking Mr. Marciano's complaints in the *Fahs* and *Iskowitz* actions. [McCarthy Decl., ¶5.]

Based upon discovery sanctions, the State Court also entered orders striking Mr. Marciano's answers to the petitioning creditors' cross-complaints and the cross-complaints of Camille Abat and Miriam Choi in the *Fahs* action, after which Mr. Marciano's default was entered on their cross-complaints. [McCarthy Decl., ¶¶6, 9; Exhs. H, I, J.]

Based upon discovery sanctions, the State Court also entered orders striking Mr. Marciano's answer to the cross-complaint of Gary Iskowitz, Theresa Iskowitz and Carolyn Malkus in the *Iskowitz* action, after which Mr. Marciano's default also was entered on their cross-complaint. [McCarthy Decl., ¶7.]

After a default judgment prove-up trial in late July 2009 in the *Fahs* action at which Mr. Marciano was not permitted to present evidence or be heard except on attorney-client privilege

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  issues, default judgments were entered in favor of each of the petitioning creditors and two others

2  (Camille Abat and Miriam Choi) and against Mr. Marciano in the amount of $74.044 million

3  each. [McCarthy Decl., ¶10, 17; Exhs. 18 to 22.]

4      After a default judgment prove-up trial in the *Iskowitz* action in August 2009 at which Mr.

5  Marciano was not permitted to present evidence or be heard except on attorney-client privilege

6  issues, a default judgment was entered against Mr. Marciano and in favor of Gary Iskowitz for

7  $45 million, Theresa Iskowitz for $5 million, and Carolyn Malkus for $5 million. [McCarthy

8  Decl., ¶¶11, 18; Exh. 23.]

9      As a result of a motion for new trial by Mr. Marciano in the *Fahs* action, amended

10  judgments were entered in favor of petitioning creditors in the reduced amounts of $15.3 million

11  for Elizabeth Tagle, $25 million for Steven Chapnick and $55 million for Joseph Fahs, which

12  were the maximum amounts demanded by them in their respective statements of damages.

13  Amended judgments also were entered in that action in the reduced amounts of $55 million each

14  for Camille Abat and Miriam Choi. [McCarthy Decl., ¶17; Exhs. 18 to 22.]

15      Prior to the filing of the involuntary petition, two of the three petitioning creditors (Fahs

16  and Chapnick) and the five other judgment creditor were pursuing enforcement of their respective

17  default judgments through various mechanisms. [McCarthy Decl., ¶19; Exhs. 24 and 25.]

18      While Elizabeth Tagle was not as aggressive in judgment collection efforts, she offered to

19  settle in order to prevent her from joining the involuntary petition. Her offer was refused, and she

20  then joined with Chapnick and Fahs in filing the petition. [McCarthy Decl., ¶20.]

21      **2.    The Involuntary Chapter 11 Case.**

22      On October 27, 2009, the petitioning creditors filed an involuntary Chapter 11 petition

23  against Mr. Marciano. [McCarthy Decl., ¶22.]

24      In connection with this involuntary Chapter 11 case, Mr. Marciano brought a motion to

25  dismiss the involuntary petition on various grounds, including that (a) mail service of the

26  involuntary petition and the summons thereon upon him at his former residential address at 1000

27  North Crescent Drive, Beverly Hills, Californian 90201 (the "Crescent address") and at his

28  lawyer's address in the State Court action was ineffective because he had not resided at that

-2-

HILL, FARRER & BURRILL, LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    address since early August 2009 and had not even resided in the United States since at least early

2    September 2009; and (b) a claim for relief could not be stated against Mr. Marciano for entry of

3    an order for relief under 11 U.S.C. §303 because it would unconstitutional to subject Mr.

4    Marciano to such an order for various reasons, including the 13th Amendment proscription

5    against involuntary servitude and violation of the bankruptcy clause, the equal protection clause

6    and the due process clause in the United States Constitution. [McCarthy Decl., ¶28.]

7    　　　　At hearing on January 13, 2010, this Court, the Honorable Richard Neiter presiding,

8    denied Mr. Marciano's motion to dismiss, ruling in effect that (a) effective mail service had been

9    accomplished on Mr. Marciano on October 31, 2009, at the Crescent address because that address

10   was (at least as of the time of mail service) one usual place of abode of Mr. Marciano while he

11   was in Beverly Hills, although he had not been in Beverly Hills for almost three months as of that

12   time; and (b) the Court would defer ruling upon the Constitutional issues because it was

13   conceivable that a ruling could be avoided if, for example, an order for relief was never issued

14   against Mr. Marciano due to his opposition to the involuntary petition. [McCarthy Decl., ¶29.]

15   　　　　As of the date of this Motion, the Court has not yet entered a written order on the motion

16   to dismiss. Petitioning creditors' counsel apologized to the Court at the status conference on

17   April 8, 2010, about not having lodged the order, and he promised to do so the next day.  After

18   April 8, Mr. Marciano's counsel inquired about that order several times by emails to petitioning

19   creditors' counsel, but he received no response.  Finally, on April 26, 2010, he received by email

20   from petitioning creditors' counsel a copy of the proposed order that he said had been lodged that

21   day along with proof of that.  No explanation was provided for the additional long delay after the

22   status conference on April 8, 2010. [McCarthy Decl., ¶30.]

23   　　　　The primary factual and legal issues at issue in connection with the involuntary petition

24   and Mr. Marciano's opposition thereto are (a) whether the claims of the petitioning creditors,

25   which are based upon default judgments on appeal, are subject to bona fide dispute and, therefore,

26   whether the petitioning creditors qualify for purposes of 11 U.S.C. §303 to file an involuntary

27   petition against Mr. Marciano; (b) whether Mr. Marciano is not generally paying his debts as they

28   become due, which are not subject to bona fide dispute as to liability or amount; and (c) whether

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1   the involuntary Chapter 11 petition was filed in bad faith by the petitioning creditors. The nature

2   and extent of Mr. Marciano's assets are not an issue in connection with the involuntary petition

3   and Mr. Marciano's opposition thereto. [McCarthy Decl., ¶35.]

### 3.    The Court's Scheduling Order And Related Matters.

5        At the case status conference on April 8, 2010, the Court scheduled a hearing on

6   petitioning creditors' motion for summary judgment for June 3, 2010, and it ordered the motion to

7   be filed by April 26, 2010, any opposition to be filed by May 17, 2010, any reply to be filed by

8   May 24, 2010. [McCarthy Decl., ¶38.]

9        At the April 8, 2010 status conference, Mr. Marciano's counsel provided petitioning

10  creditors' counsel and the Court numerous dates on which he could conduct petitioning creditors'

11  depositions on almost any weekday between April 13 and 27, 2010. He asked petitioning

12  creditors' counsel to get back to him by the next day to schedule the depositions, given the short

13  time available, but petitioning creditors' counsel failed to do so. [McCarthy Decl., ¶39.]

14       After the hearing on April 8, 2010, counsel for petitioning creditors informed Mr.

15  Marciano's counsel that the petitioning creditors relied upon counsel's advice in deciding whether

16  to file the petition, and that Mr. Marciano was prohibited from inquiring into that advice.

17  [McCarthy Decl., ¶40.]

18       Mr. Marciano acted promptly (1) in personally serving discovery on petitioning creditors'

19  counsel through delivery at 4:25 p.m. on the afternoon of April 9, 2010, which was the day after

20  the April 8, 2010 status conference at 2:00 p.m. at which the Court set the June 3, 2010 hearing

21  date on the motion for summary judgment and the related briefing schedule, and (2) scheduling

22  the depositions and documents productions for April 19 (Tagle), April 22 (Fahs), and April 23

23  (Chapnick). Thus, Mr. Marciano proceeded diligently after the April 8 status conference.

24  [McCarthy Decl., ¶41.]

25       Mr. Marciano's counsel did not hear back from petitioning creditors' counsel until five

26  days later when petitioning creditors' counsel e-mailed a letter April 14, 2010, indicating

27  petitioning creditors' general objections to the discovery. Mr. Marciano's counsel responded

28  briefly later that day regarding the petitioning creditors' delay, and then responded in a detailed

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 4 -

1  letter the next day on Thursday, April 15, 2010. [McCarthy Decl., ¶42.]

2       Petitioning creditors' counsel agreed to provide a draft of the joint stipulation relating to

3  the motion for protective order by the evening of Sunday, April 18, 2010, but did not do so.

4  Instead, a draft with points and authorities was not provided until the morning of April 20, 2010.

5  Mr. Marciano's counsel revised the document and e-mailed it to petitioning creditors' counsel

6  late the very next day on April 21, 2010. It was anticipated that the joint stipulation regarding the

7  motion for protective order would be filed by Friday, April 23, 2010, once petitioning creditors'

8  counsel revised it and got it back to Mr. Marciano's counsel for final review and approval, but

9  five days later as of Monday, April 26, 2010--the date this Motion is being filed--petitioning

10  creditors' counsel still has not provided the revised joint stipulation to Mr. Marciano's counsel.

11  [McCarthy Decl., ¶43.]

12       In response to the April 20, 2010 email with the revised joint stipulation attached, Mr.

13  Marciano's counsel reiterated the suggestion he previously had made several times between April

14  14 and April 19, 2010, which was that the parties agree to a very short continuance of the motion

15  for summary judgment to provide the Court time to rule on the motion for protective order and

16  Mr. Marciano time to take the depositions under a reasonable expedited schedule, if the

17  depositions were allowed by the Court despite that motion. [McCarthy Decl., ¶44.]

18       On the afternoon of April 20, 2010, petitioning creditors' counsel agreed to a one week

19  continuance of the June 3, 2010 hearing, and he proposed a stipulation in that regard on the

20  afternoon of April 20, 2010, which Mr. Marciano's counsel promptly revised the returned along

21  with a revised order under which the hearing on the motion for summary judgment would be

22  postponed for only one week. [McCarthy Decl., ¶45.]

23       On April 21, 2010, the stipulation was filed under which the parties agreed to a one week

24  continuance of the hearing date on the motion for summary judgment and agreed to hold the

25  depositions and document productions of the petitioning creditors on May 11, 12 and 13, 2010,

26  unless precluded by the Court. [McCarthy Decl., ¶46.]

27       As will be shown in opposition to the petitioning creditors' anticipated motion for

28  protective order, Mr. Marciano has good cause to obtain the requested discovery from the

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1   petitioning creditors on the "bona fide dispute" and "bad faith" issues. The purpose of that

2   discovery is not to cause annoyance, embarrassment, oppression, undue burden or expense to the

3   petitioning creditors. [McCarthy Decl., ¶36.]

4               **4.      The Status Of The Appeals.**

5        All of the petitioning creditors' default judgments and the default judgments held by the

6   other five judgment creditors have been appealed by Mr. Marciano to the California Court of

7   Appeals. The appeals were filed prior to the commencement of this involuntary Chapter 11 case

8   on October 27, 2009, and those appeals presently are pending. [McCarthy Decl., ¶¶25, 26.]

9        At hearing on March 1, 2010, the Bankruptcy Court (the Honorable Richard Neiter

10  presiding) granted the motions of Mr. Marciano for relief from the automatic stay so that Mr.

11  Marciano could proceed with the pending appeals against the three petitioning creditors and five

12  other judgment creditors (Gary Iskowitz, Theresa Iskowitz, Carolyn Malkus, Camille Abat, and

13  Miriam Choi). All eight of those judgment creditors unsuccessfully opposed Mr. Marciano's

14  motions. [McCarthy Decl., ¶31.] The opposition of the petitioning creditors and the five other

15  judgment creditors to Mr. Marciano's motions for relief from automatic stay evidences their

16  intention to use the involuntary Chapter 11 petition to preclude the determination of the appeals,

17  or at least to delay it.

18       On March 19, 2010, the Bankruptcy Court entered written orders granting Mr. Marciano

19  relief from the automatic stay to proceed with the appeals in the *Fahs* and *Iskowitz* actions. One

20  of the orders for relief from automatic stay waived the 14 day period of F.R.B.P. 4001(a)(3), but

21  the other one did not. Both orders became final on Saturday, April 3, 2010, so the last day to file

22  an appeal from the orders was Monday, April 5, 2010. No appeal from the orders was filed.

23  [McCarthy Decl., ¶32.]

24       On April 5, 2010, Mr. Marciano's counsel wrote the Clerk of the Court of Appeal. The

25  letter described appeals before the Court; it advised the Clerk him that the orders for relief from

26  automatic stay were final; it asked that certain pending motions be addressed, including a motion

27  to coordinate the appeals; and it asked that a briefing schedule be set to commence upon

28  completion of the record in the *Fahs* appeal. A response has not yet been received from the Court

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    of Appeal. [Dennis Decl., ¶4, Exh. 27.]

2        The appendices for the appeals have been prepared by Mr. Marciano.  The indices for the

3    appendices also have been prepared.  On April 13, 2010, a copy of the indices was mailed by Mr.

4    Marciano's counsel to opposing counsel in the appeals to obtain their input on whether any other

5    documents should be added to the appendices. [Dennis Decl., ¶5, Exh. 28.]

6        The appeals would be further along, except for the filing of the involuntary Chapter 11

7    petition, which resulted in the court reporters halting the preparation of the reporters' transcript.

8    Transcripts already were ordered and prepared for all relevant hearings in the *Fahs* and *Iskowitz*

9    actions, except the last few in October 2009.  Now that the Court has granted relief from the

10   automatic stay, the record should be completed shortly and a briefing schedule set by the Court of

11   Appeal. [Dennis Decl., ¶6.]

12       Once briefing is completed, the appeals will be set for oral argument and a decision will

13   be rendered.  Counsel for Mr. Marciano expects that oral argument will occur by November-

14   December 2010, unless the parties attempt to delay the appeals through seeking extension of the

15   due date of briefs. [Dennis Decl., ¶6.]  Again, the appeals would be further along had the

16   petitioning creditors not delayed them through the filing of the involuntary petition.

17       **B.**    **Summary of Argument.**

18       Consideration of virtually every factor considered by Courts in making a determination

19   under 11 U.S.C. § 305(a)(1) favors dismissal of this case, as described below.  However, if the

20   petitioning creditors' supposed motivation for the involuntary filing is to be believed (*i.e.*,

21   preserving preferential transfer claims), that goal can be accomplished by staying this case until

22   the appeals from the excessive default judgments can be concluded.

23   **II.**    **THE COURT SHOULD DISMISS THIS INVOLUNTARY CHAPTER 11 CASE.**

24       **A.**    **Consideration Of Relevant Factors Under 11 U.S.C. § 305 Favor Dismissal.**

25       Abstention is authorized under 11 U.S.C. § 305(a), which states in relevant part:

26           "The court, after notice and a hearing, may dismiss a case under this title,
or may suspend all proceedings in a case under this title, at any time if—

27

28           "(1) the interests of creditors and the debtor would be better served by such
dismissal or suspension; . . . ."

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 7 -

1    Thus, § 305(a) is authority for dismissing or staying an involuntary Chapter 11 case.

2    The Court *In re Starlite Houseboats, Inc.,* 2010 Bankr. LEXIS 855, *30-32 (Bankr. D.

3    Kan. Mar. 23, 2010), recently explained the considerations bearing upon abstention under §305:

4    "The Colorado Bankruptcy Court in *Spade* thoroughly analyzed the
     divergent approaches of *RAI* and *Tarletz*. It rejected *RAI* for two reasons - because

5    it was based upon erroneous statutory construction which altered the § 305 to
     conform to the legislative history and the overwhelming support of the *Tarletz*

6    interpretation by other courts. 'Clearly, the historical and contemporary trend in §
     305 case law permits courts to consider a wide variety of factors relevant to the

7    facts of the particular case in determining whether to abstain under § 305.' The
     court then identified as relevant the motivation of the parties seeking bankruptcy

8    jurisdiction, whether another forum is available to protect the interests of both
     parties or such a proceeding is already pending, the economy and efficiency of

9    administration, and the prejudice to the parties. Using these factors, the court in its
     discretion granted the § 305(a) motion. The district court affirmed. Collier finds

10   that although the circumstances satisfying the three part test of *RAI* 'undoubtedly
     justify abstention, section 305(a) is not so limited and additional fact patterns may

11   justify abstention.' The following are identified by Collier as common fact
     patterns: When a case is filed to obtain leverage in out-of-court restructuring

12   negotiation; when there is an absence of bankruptcy purpose, such as discharge,
     debt adjustment, or need for a breathing spell from creditors; when state law

13   liquidation proceedings are pending; when the bankruptcy is essentially a two
     party dispute; and comity to pending foreign insolvency proceedings.

14
     "This Court agrees with the analysis of the *Spade* bankruptcy court and the

15   position of Colliers that abstention may be warranted in circumstances other than
     those strictly complying with the *RAI* three part test. In this Court's opinion, the

16   *RAI* standard for abstention is inconsistent with granting the court discretion to
     abstain when the interests of creditors and the debtor would be better served by

17   dismissal. If those three factors were the only circumstances when abstention
     could be ordered, Congress would have said so in the statute." [Emphasis added;

18   footnotes omitted]

19   The decision of the Court in *Profutures Special Equity Fund, L.P. v. Spade (In re Spade),*

20   269 B.R. 225 (D. Colo. 2001) ("*Spade*"), which was cited in *Starlite Houseboats*, also has been

21   favorably cited in the Ninth Circuit in *Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l*

22   *Trade, Inc.),* 370 B.R. 236, 247 (B.A.P. 9th Cir. 2007). In *Spade*, 269 B.R. 225 (D. Colo. 2001),

23   the Court affirmed the Bankruptcy Court's order dismissing the involuntary case under § 305. It

24   explained the reasons for the decision. The first factor was the petitioning creditors' motivation:

25   "The first factor the bankruptcy judge considered was the motivation of the parties
     seeking bankruptcy jurisdiction. The bankruptcy judge found that the involuntary

26   petition was not filed as a means to ensure a fair distribution of the Debtor's assets
     to all Creditors, but instead, was a self-serving litigation tactic to control the forum

27   and enlist a trustee to conduct and pay for discovery into the Debtor's affairs."
     [Emphasis added.]

28
     - 8 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    In *In re Pac. Rollforming, LLC*, 415 B.R. 750, 755 (Bankr. N.D. Cal. 2009), the Court

2    similarly dismissed an involuntary petition, noting: "the conclusion is inescapable that this

3    involuntary petition is basically a litigation tactic . . . ."

4    The same could be said of the petitioning creditors in this case for at least four reasons.

5    First, at least one of the three petitioning creditors obtained orders for Mr. Marciano to appear for

6    his judgment debtor examination, but they were unable to serve him in order to conduct discovery

7    into his assets. [McCarthy Decl., ¶19, Exhs. 24, 25.] There is no speculation involved in stating

8    that petitioning creditors desire to use the bankruptcy process to investigate assets. Counsel for

9    the petitioning creditors has stated his desire to depose Mr. Marciano for that purpose, and

10   counsel for the other five judgment creditors actually requested and obtained a Rule 2004 order

11   for that purpose. [McCarthy Decl., ¶¶33, 34.] Moreover, in *Spade*, the creditors did not yet have

12   judgments to enforce, whereas in this case the petitioning creditors have judgments, and that

13   suggests that they want discovery into Mr. Marciano's assets for the additional reason that they

14   could then use than information to enforce their judgments in the event that the Chapter 11 case is

15   dismissed. That motivation is not consistent with ensuring "a fair distribution of the Debtor's

16   assets."

17   Second, the petitioning creditors and the other judgment creditors have admitted that they

18   want to seek information regarding Mr. Marciano's assets in order to ascertain whether grounds

19   exist to seek the appointment of an interim trustee under 11 U.S.C. § 303(f). [McCarthy Decl.,

20   ¶¶33, 34.] The transparent nature of that excuse is made obvious by the fact that they have

21   offered absolutely no evidence that of any improper transfer, concealment or encumbrance of

22   assets by Mr. Marciano. [*Id.*, ¶37.] In other words, they want to engage in a "fishing expedition"

23   regarding the assets of an involuntary debtor, when his assets are not even an issue in this

24   involuntary case. Instead, the issues are (1) whether the petitioning creditors' claims are in bona

25   fide dispute; (2) is Mr. Marciano not generally paying his debts as they become due; and (3) was

26   the involuntary petition filed in bad faith? The reason for that fishing expedition is to see whether

27   they can find any possible grounds to seek the appointment of an interim trustee, who would take

28   control of the appeals of their default judgment away from Mr. Marciano. In other words, the

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 9 -

1    involuntary Chapter 11 case is a litigation tactic to preserve the default judgments.

2      Third, the petitioning creditors' desire to use the involuntary Chapter 11 case to preserve

3    their default judgments also is not a motivation on which any speculation is needed. The

4    involuntary case operated to stay the appeals. The Court denied Mr. Marciano's motion to

5    dismiss on January 13, 2010, thereby determining that he was subject to the Court's jurisdiction

6    because he had been served by mail at an address where he had not resided for more than four

7    months by that time. [McCarthy Decl., ¶28, 29.] Mr. Marciano promptly filed motions for relief

8    from automatic stay on February 2, 2010, even though an order denying the motion had not yet

9    been lodged or entered. [*Id.*, ¶¶31, 32.] Incredibly, even though the Court of Appeals was the

10    only Court that had jurisdiction to determine the appeals, the petitioning creditors and the five

11    other judgment creditors actually opposed the motions for relief from automatic stay, arguing that

12    the appeals should remain stayed. [*Id.*, ¶31.] Judge Neiter saw through their motivation, and

13    granted relief from stay at hearing on March 1, 2010. [*Id.*] The orders were entered on March 19,

14    2010. [*Id.*, ¶32.]

15      Fourth, petitioning creditor Elizabeth Tagle's motivation to collect, as opposed to preserve

16    Mr. Marciano's estate for the benefit of all creditors, is evidenced by her attempt to settle before

17    the petition was filed. While Elizabeth Tagle was not as aggressive in judgment collection

18    efforts, she offered to settle in order to prevent her from joining the involuntary petition. Her

19    offer was refused, and she then joined with Chapnick and Fahs in filing the petition. [McCarthy

20    Decl., ¶20.]

21      The Court in *Spade,* 269 B.R. at 228-229, then noted that the availability of a State Court

22    forum to handle the creditors' disputes was a consideration that favored dismissal:

23       "The second factor the bankruptcy judge considered was <u>the availability of
24      another forum</u>. The Creditors allege that bankruptcy court provides procedural and
      substantive benefits unavailable in state court, primarily the appointment of a
25      trustee who can investigate the Debtor's financial affairs and seek recovery of
      assets. <u>The bankruptcy judge found that the preference payments the Creditors
26      sought to  recover through the trustee were marginal in relation to the
      administrative costs associated with such an action. The fraudulent transfer issue
27      has no special advantage because the bankruptcy court would apply the same state
      law as the pending state court action.</u> ProFutures is the driving force behind the
28      bankruptcy action and the case is really 'little more than a two-party collection
      dispute between ProFutures and Mr. Spade.' There is no need for the federal court

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 10 -

to resolve a matter which is grounded in state law issues currently pending in state court." [Emphasis added.]

The same can be said of this case. The petitioning creditors have identified no fraudulent transfers [McCarthy Decl., ¶37], and if there was a fraudulent transfer, it could be addressed in State Court under California fraudulent transfer law. All the judgment creditors could intervene in any fraudulent transfer action commenced by another judgment creditor. This Court's involvement is not needed. The petitioning creditors also cannot seriously contend that the purpose of this involuntary case is to avoid preferential transfers. Personal service of an order to appear for examination accomplishes a lien on the personal property assets of a judgment debtor. C.C.P. § 708.110(d). Judgment creditors Camille Abat and Miriam Choi contended that they had Mr. Marciano personally served with such an order on August 9, 2009, but Mr. Marciano contested service, which the process server claimed to have accomplished by throwing the order in the window of a vehicle that Mr. Marciano was suspected to occupy. Hearing on Mr. Marciano's motion to quash service was scheduled for November 17, 2009, but was stayed by the involuntary Chapter 11 filing. [McCarthy Decl., ¶23.] The petitioning creditors also have suggested that certain creditors succeeded in levying on bank and brokerage accounts in which Mr. Marciano allegedly held an interest. Very little money was collected through the levies, so there is not a substantial payment to avoid. The main levies are the subject of interpleader actions filed by UBS Financial Services, Inc., and Morgan Stanley Smith Barney, LLC, in the Los Angeles County Superior Court. They concern a total of approximately $2 million  However, many of the accounts at UBS were in the name of Mr. Marciano, as trustee of irrevocable trusts for his four children, so the accounts are not subject to levy. Copies of the irrevocable trusts were provided to Chapnick's counsel. In any event, the amount subject to levy was very minor compared to Mr. Marciano's net worth. Mr. Marciano filed a declaration from his CPA in that regard that showed his net worth to be approximately $175 million, although it was based upon assumptions about the liquidation value of real property assets owned by entities in which Mr. Marciano holds an interest. [Id., ¶24, Exh. 26.]

Further, while there are eight judgment creditors, their judgments exist under six

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    judgments in only two actions. The judgment creditors teamed up on Mr. Marciano in State

2    Court. In the *Fahs* action, they all put on their prove-up at the same trial before an advisory jury.

3    [McCarthy Decl., ¶10.] In the *Iskowitz* action, the same counsel represented Gary and Theresa

4    Iskowitz and Carolyn Malkus at the same prove-up trial in August 2009. [*Id.*, ¶11.] Now, before

5    this Court, three petitioning creditors are represented by one attorney (Mr. Brook) and the other

6    five judgment creditors are represented by another attorney (Mr. Davidson). They have

7    coordinated their efforts, including in opposing the motions for relief from stay. This Court

8    should not be misled by number of judgment creditors. There are two sides in this involuntary

9    Chapter 11 case: Mr. Marciano and the judgment creditor group. This involuntary case presents a

10    two-party dispute.

11    The Court in *Spade,* 269 B.R. at 229, then noted the important consideration of the

12    additional layer of costs inherent in a bankruptcy case:

13    "The third factor considered by the bankruptcy judge was the economy and
    efficiency of administering the case in bankruptcy court. The bankruptcy judge

14    found that allowing the case to remain would be inefficient and costly because the
    estate would be responsible for funding the trustee and any bankruptcy counsel

15    hired by the trustee, and, if the Debtor did convert to Chapter 11, he would be
    required to employ counsel and incur fees to be paid out to the trustee."

16    [Emphasis added.]

17    The same could be said of this case, except that the fees and costs would be charged by

18    counsel for the debtor and the creditors' committee in addressing the Chapter 11 case, if an order

19    for relief is entered.

20    Finally, the Court in *Spade,* 269 B.R. at 229, took into account other creditors:

21    "The fourth factor considered by the bankruptcy judge was prejudice to the
    parties due to keeping the case in bankruptcy court. The bankruptcy judge found

22    that other non-note holder creditors . . . would be prejudiced because they are
    currently receiving payments from the Debtor. An order for relief would probably

23    halt payments and force them into the bankruptcy case. The 'non-joining note
    holders' have not shown a desire to take legal action against the Debtor; however,

24    if the bankruptcy court exercised jurisdiction, they would have to participate in the
    proceedings and help subsidize the costs."

25    Mr. Marciano is not making payments to other creditors over time that the involuntary

26    case would interfere with because he already is current on his undisputed debt. Thus, while there

27    would be no prejudice to other creditors in not dismissing the case, the fact that there are not such

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 12 -

other creditors favors dismissal. The Chapter 11 case is not needed to "ensure a fair distribution

of the Debtor's assets to all Creditors," which is the consideration noted in *Spade*, as quoted

above.

In *Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.)*, 370 B.R. 236, 245

n.7 (B.A.P. 9th Cir. 2007), which favorably cited the *Spade* decision, the Court noted that

involuntary petitions are "relatively rare," in that calendar year 2005 statistics showed that there

were 1,325,400 voluntary petitions filed under chapters 7 and 11, while only 563 involuntary

petitions were filed. That Court similarly affirmed the dismissal of an involuntary case under §

305, explaining as follows:

> "In this case, the bankruptcy court's factual findings reflected its analysis
> of the totality of the circumstances, and supported its conclusion that those
> circumstances justified a § 305(a)(1) dismissal. Specifically, the bankruptcy court
> found that it had jurisdiction to order relief on the involuntary petition under § 303.
> However, it also found that this was essentially a two-party dispute; there was an
> out-of-court assignment for the benefit of creditors including a sale of Macke's
> assets; Wechsler did not participate in the assignment proceeding; there was an
> absence of a bankruptcy purpose or need to reorganize; there was pending
> litigation in another forum; and another forum would be more appropriate for the
> resolution of any lingering disputes between the parties. Significantly, the court
> also found that, in commencing the involuntary case, Wechsler was forum-
> shopping. Importantly, these factual findings and the bankruptcy court's decision
> to dismiss the involuntary case under § 305(a)(1) have not been challenged by the
> parties in either the appeal or cross-appeal." *Id.*, at 247-48 [emphasis added].

The same could be said of this case. First, as explained above, this case is essentially a

two-party dispute. Second, the creditors have State Court collection remedies, which they were

pursuing when this involuntary Chapter case was filed. Third, there is no business to reorganize.

Mr. Marciano is an individual. Fourth, there is litigation pending in another forum in terms of the

pending appeals from the default judgments, which should be allowed to run their course, and the

State Court actions in which there were the pending judgment collection efforts. Fifth, the

primary dispute between the petitioning creditors and Mr. Marciano consists of the appeals before

the Second Appellate District Court of Appeals. That forum is the only one that can resolve the

disputes between the parties, and that is preferable to a determination by this Court on whether

judgments on appeal are subject to bona fide dispute. Sixth, the petitioning creditors are forum

shopping in an apparent hope of convincing this Court to assist them in interfering with the

- 13 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    pending appeals from their excessive default judgments.

2    **B.     Because The Appeals Are Meritorious, There Is Good Reason To Allow Them**

3           **To Proceed First.**

4                1.    **Introductory Statement On Considering The Grounds For Appeal.**

5           The petitioning creditors' motion for summary judgment is scheduled to be heard on June

6    3, 2010, although the parties have stipulated to continue the hearing to June 10, 2010, to allow the

7    motion for protective order to be heard by May 10; to allow scheduled depositions and document

8    productions to occur on May 11, 12 and 13, unless stayed by the Court; and then to provide the

9    parties time to file their opposition and reply briefs in connection with the motion for summary

10   judgment. As such, Mr. Marciano's time to complete and present his opposition to the motion for

11   summary judgment has not yet arrived.

12          The petitioning creditors are attempting to use the motion for protective order as a vehicle

13   to litigation the merits of the case based upon the faulty premise that they will win on the motion

14   for summary judgment, so any discovery that might contradict that motion should not be allowed.

15   That, of course, is improper, as shown by Mr. Marciano in his points and authorities that he has

16   drafted for inclusion in the joint stipulation on the motion for protective order. "[A] party is

17   entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by

18   the opponent's theory." Wright, Miller & Marcus, *Federal Practice & Procedure: Civ.3d*, § 2011

19   [emphasis added]. "Clearly, 'objections to interrogatories may not be used . . . . as a vehicle for

20   having the court decide the issues presented on the merits of the case.' [Citations omitted]"

21   *Public Serv. Enter. Group v. Phila. Elec. Co.*, 130 F.R.D. 543, 552 (D.N.J. 1990).  Accord, *Clark*

22   *Motor Co. v. Mfrs. & Traders Trust, Co.*, 2008 U.S. Dist. LEXIS 47797 (M.D. Pa. June 18, 2008)

23   ["Objections to interrogatories may not be used as a vehicle for deciding the merits of a case."];

24   *United States v. 216 Bottles*, 36 F.R.D. 695, 700 (E.D.N.Y. 1965).

25          Indeed, the petitioning creditors' use of a discovery motion to attempt to preclude

26   discovery into matters directly raised by the involuntary petition and the answer thereto evidence

27   the petitioning creditors' improper motivation to hang on to their default judgments no matter

28   what the cost of doing so might be.

- 14 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    Thus, because the petitioning creditors improperly seek to litigate the merits of this case to

2    preclude discovery, Mr. Marciano has been forced (in the context of opposing the petitioning

3    creditors' motion for protective order) to make a mini-presentation of his opposition to the

4    unfiled, but anticipated motion for summary judgment by the petitioning creditors.

5    The actual merits of the appeals are not dispositive on the Court's decision to dismiss this

6    case under 11 U.S.C. § 305(a)(1), but Mr. Marciano wants the Court to understand that there are

7    many valid grounds for the appeals from the default judgments entered in the State Court actions,

8    so those appeals should be given an opportunity to be resolved first.

9         **2.**    **There Is <u>Not</u> An Irrebutable Presumption Or Any *Per Se* Rule Of "No**

10            **Bona Fide Dispute" Regarding Claims Based Upon Default Judgments**

11   The Court is not required to wear legal blinders regarding the grounds for appeal from the

12   petitioning creditors' default judgments and the nature of the judgments as default judgments, as

13   opposed to judgments after a trial on the merits or summary judgments. That legal question,

14   which presents an issue of first impression in the Ninth Circuit, is one that the Court will want to

15   carefully consider after giving the parties the opportunity to fully brief the issue. That

16   undoubtedly is the reason why the Court set a briefing schedule and a hearing on the petitioning

17   creditors' motion for summary judgment for June 3, 2010.

18   Mr. Marciano has raised the "bona fide dispute" issue in good faith. The issue of whether

19   a debt is in bona fide dispute requires an objective inquiry. "[T]he Ninth Circuit has adopted a

20   standard that requires the Court to 'determine whether there is an objective basis for either a

21   factual or legal dispute as to the validity of the debt. *Vortex*, 277 F.3d at 1064 (quoting *In re*

22   *Busick*, 831 F.2d 745, 750 (7th Cir. 1987))." *In re Tamarack Resort, LLC*, 2010 Bankr. LEXIS

23   845, 7-9 (Bankr. D. Idaho Mar. 17, 2010). Application of that objective standard means

24   considering the factual and legal bases for challenging <u>any</u> claim, not just claims that have not

25   been reduced to judgment. *See, In re Lough*, 57 B.R. 993, 996-97 (E.D. Mich. 1986) ["If there is

26   either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious

27   contention as to the application of law to undisputed facts, then the petition must be dismissed."],

28   which is quoted in that regard in *Liberty Tool v. Vortex Fishing Sys. (In Re Vortex Fishing Sys.),*

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    277 F.3d 1057, 1064 (9th Cir. 2002).

2        It is important to keep in mind that Mr. Marciano's <u>likelihood</u> of success on appeal is not

3    the relevant inquiry. Instead, the relevant inquiry is his <u>possibility</u> of success, as recently noted in

4    *In re Peterson*, 2010 Bankr. LEXIS 396, 5-6 (Bankr. D. Wyo. Feb. 5, 2010):

5        "Under § 303(b)(1), a petitioning creditor does not have standing if its debt is
        subject to a bona fide dispute. In the Tenth Circuit, a bona fide dispute is whether
6        there is an objective basis for either a factual or legal dispute as to the validity of
        the debt. <u>The bankruptcy court does not determine the probable outcome of the</u>
7        <u>dispute, but merely whether one exists.</u>" [Emphasis added]

8        Accord, *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1544 (10th Cir. 1988) ["The

9    court need not determine the probable outcome of the dispute, but merely whether one exists."];

10    *In re Prisuta*, 121 B.R. 474, 476 (Bankr. W.D. Pa. 1990) ["The outcome of a dispute need not be

11    resolved, only its presence or absence. Consequently, the court need only engage in a limited

12    analysis of the claims at issue. [Citation omitted] The court *must not*, when determining whether

13    there is a bona fide dispute, *resolve* any genuine issues of fact or law." (Emphasis in original)]

14        The petitioning creditors incorrectly contend that the <u>only</u> cases holding that judgments

15    are subject to bona fide dispute are one Fourth Circuit case (*Platinum Fin. Servs. Corp. v. Byrd*

16    *(In re Byrd)*, 357 F.3d 433, 438 (4th Cir. 2004)) and *In re Henry S. Miller Commercial, LLC*, 418

17    B.R. 912, 922-922 (Bankr. N.D.Tex. 2009). Though it concerns a very narrow issue, there are

18    other several other cases standing for that proposition. *See, e.g., In re Starlite Houseboats, Inc.*,

19    2010 Bankr. LEXIS 855, 2010 WL 1064418 (Bankr. D.Kan. March 23, 2010); *In re Graber*, 319

20    B.R. 374, 378 n.7 (Bankr. E.D. Pa. 2004); *In re Prisuta*, 121 B.R. 474 (Bankr. W.D. Pa. 1990).

21        *Platinum Fin. Servs. Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 438 (4th Cir. 2004), did not

22    concern a default judgment, but instead concerned a judgment that had been appealed. The *Byrd*

23    Court, at 437-38, rejected a *per se* rule that any unstayed judgment cannot be subject to bona fide

24    dispute, explaining as follows and citing Ninth Circuit authority:

25        "<u>We agree, however, with the unanimous view of our sister circuits that a bona</u>
        <u>fide dispute requires 'an objective basis for either a factual or a legal dispute as to</u>
26        <u>the validity of [the] debt.</u> [citations omitted]; *Liberty Tool, & Mfg. v. Vortex*
        *Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1064 (9th Cir.
27        2002); [citations omitted]. Thus a bona fide dispute exists only when there are
        substantial factual or legal questions that bear upon the debtor's liability. [Citation
28        omitted] The bankruptcy court need not resolve the merits of the bona fide dispute,

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1   but simply determine whether one exists. [Citation omitted]

2   \*       \*       \*       \*

3   "The bankruptcy court, however, believed that the state court judgments ended the
    inquiry. According to the bankruptcy court, a claim that has been reduced to an
4   unstayed judgment, even if an appeal is pending, can never be the subject of a
    bona fide dispute. The court was certainly not alone in its view, [citations omitted]
5   but it is a view that we find unpersuasive.

6   "While we recognize the general enforceability of unstayed judgments, see, e. g.,
    Drexler, 56 B.R. at 967-68, the text of the Bankruptcy Code establishes no such
7   hard-and-fast rule. Section 303(b) prohibits a creditor from filing an involuntary
    petition if the creditor's 'claim' is 'the subject of a bona fide dispute.' 11 U.S.C. §
8   303(b). Section 101(5) then defines a 'claim' in part as a 'right to payment,
    whether or not such right is reduced to judgment.' Id. § 101(5)(A) (emphasis
9   added). In other words, the Code does not make the existence of a bona fide
    dispute depend on whether a claim has been reduced to judgment. It permits some
10  creditors who have not reduced their claims to judgment to file involuntary
    petitions, just as it prevents other creditors who have reduced their claims to
11  judgment from filing.

12  "After all, the purpose of the 'bona fide dispute' provision is to prevent creditors
    from using involuntary bankruptcy 'to coerce a debtor to satisfy a judgment even
13  when substantial questions may remain concerning the liability of the debtor.' In
    re Prisuta, 121 B.R. 474, 476 (Bankr. W.D. Pa. 1990); see also In re Lough, 57
14  B.R. 993, 997 (Bankr. E.D. Mich. 1986). Yet substantial questions may remain
    about a debtor's liability, notwithstanding judgments in a creditor's favor.  In the
15  present case, Maryland trial courts ruled in Platinum's favor on particular factual
    or legal questions. These judgments go a long way toward establishing the absence
16  of a bona fide dispute. Indeed it will be the unusual case in which a bona fide
    dispute exists in the face of claims reduced to state court judgments. Such
17  judgments do not guarantee the lack of a bona fide dispute, however, especially
    absent rulings by Maryland appellate courts or in the face of contrary rulings by
18  other Maryland trial courts. As a result, a creditor like Platinum may not reduce a
    claim to judgment elsewhere and then automatically seek enforcement in
19  bankruptcy, at least where the judgment to be enforced is pending an appeal that
    presents substantial factual or legal questions." [Emphasis added.]

20  The decision in In re Graber, 319 B.R. 374, 378 n.7 (Bankr. E.D. Pa. 2004), also stands

21  for the proposition that default judgments may be subject to bona fide dispute, as follows:

22
23  "Norris notes that the overwhelming majority of courts have found that
    claims based on final judgments are not subject to a bona fide dispute and
    proceeds to support that statement with a litany of cases so holding. Notably
24  Norris involved judgment taken after the presentation of evidence as did In re
    Drexler, 56 B.R. 960 (Bankr. S.D.N.Y. 1986), the authority relied upon by
25  Schiliro, supra (a case involving a confessed judgment). Smith merely states that a
    state court judgment is not the subject of a bona fide dispute but gives no
26  indication as to how the judgment was secured. As the judgments in this case were
    secured by default and were the subject of motions to strike or open at the time of
27  the bankruptcy filing, these cases are inapposite. Notwithstanding that fact, the
    basic principle that an unstayed judgment cannot be the subject of a bona fide
28  dispute has been applied with a broad brush to judgments taken without an

- 17 -

1     evidentiary hearing. *See, e.g., In re Everett*, 178 B.R. 132 (Bankr. N.D. Ohio 1994)
2     (unappealed confessed judgment with pending motion to vacate); *Schirilo, supra*
(confessed judgment)." [Emphasis added]

3   The last case referred to in *Graber* was *In re Schiliro*, 64 B.R. 422 (E.D. Pa. 1986).

4     The Court in *In re Prisuta*, 121 B.R. 474, 475 (Bankr. W.D. Pa. 1990), was faced with a

5  confessed judgment, two default judgments and a claim that had not been reduced to judgment.  It

6  explained the general rule adopted in *Drexler*, but the explained the exception:

7        "While this Court does not find fault with the application of this general
      principle in *Drexler*, its application in the case at hand would be inappropriate. The
8       present case is distinguishable from *Drexler* in several critical respects. The
      judgments in *Drexler* were entered after several evidentiary hearings had been
9       held. At one of those hearings, Drexler admitted on the record that he was liable in
      the actions which resulted in *judgments* being entered against him. In the present
10      case, no hearings at all were held prior to the entry of the judgments against
      alleged debtors. Also, at no time did alleged debtors in this case admit liability in
11      the court which entered judgments against them. Additionally, the counterclaims
      asserted in *Drexler* were patently frivolous and had nothing whatever to do with
12      Drexler's alleged liability. The same cannot be said of the so-called 'counterclaim'
      asserted by alleged debtors in their response to the involuntary petition. It is not
13      patently frivolous and relates directly to alleged debtors' purported liability.

14        "Like virtually every legal principle, the *Drexler* holding is not without
      exception. It is possible, where circumstances so dictate, for there to be a bona fide
15      dispute even when the claim arises from an unstayed, unappealed judgment of
      record. Such a determination depends on the specific facts of a case. To hold
16      otherwise would, in certain instances, enable creditors to use the threat of
      involuntary bankruptcy as a weapon to coerce a debtor to satisfy a judgment even
17      when substantial questions may remain concerning the liability of the debtor. The
      Bankruptcy Code was enacted by Congress to serve as a shield for debtors, not as
18      a sword for creditors. *See In re McDonald Trucking Co., Inc.*, 76 Bankr. 513, 516
      (Bankr. W.D. Pa. 1987)." *Id.*, at 476 [emphasis added].

19
20     After extensively discussing cases on this issue, the Court in *In re Henry S. Miller*

 *Commercial, LLC*, 418 B.R. 912, 921-922 (Bankr. N.D. Tex. 2009), gave examples of
21
22  circumstances in which an exception exists to the general rule:

23        "In reconciling all the authority on this (including the court's own authority in *In
      re Briggs*, 2008 Bankr. LEXIS 4354, 2008 WL 190463 (Bankr. N.D. Tex. 2008)),
      this court holds as follows. Generally, an unstayed judgment should not be deemed
24      to be the subject of a 'bona fide dispute' as to liability or amount, even if it is on
      appeal. However, the existence of an unstayed judgment, in this court's view,
25      should not preclude the inquiry into whether a bona fide dispute exists as to the
      amount or validity of a claim. In other words, an unstayed judgment does not
26      create an irrebuttable presumption of no bona fide dispute, just a presumption. If
      there are objective circumstances that might give rise to a bona fide dispute as to
27      liability or amount (*e.g.*, perhaps a default judgment where facts were not actually
      litigated; perhaps a judgment inadvertently entered against a non-party; perhaps
28      where subsequent events cast doubt upon the judgment's enforceability, such as

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    due to a payment of the judgment debt or posting of a bond, or even some sort of
     appellate court holding in another case that changes the law and suggests it is
2    inevitable that the unstayed judgment will be reversed), then having an unstayed
     judgment may not pass muster under Section 303. . . .
3
          "To be clear: An appeal alone does not create a bona fide dispute. But a
4    highly specialized fact pattern can conceivably guide a court to make an exception
     to the general rule recognizing the finality/enforceability of an unstayed judgment.
5    See *In re Prisuta*, 121 B.R. 474 (Bankr. W.D. Pa. 1990) (where petitioning
     creditor's claims were based on a default judgment and a confession of judgment,
6    the court found that the pendency of an appeal of the judgment was significant and
     that the default judgment left open substantial questions regarding the debtor's
7    liability; thus judgment creditor's claim was the subject of a bona fide dispute).
     See also *In re Byrd*, 357 F.3d 433 (4th Cir. 2004)" [Emphasis added].
8
          In a very recent decision, the Court in *In re Starlite Houseboats, Inc.*, 2010 Bankr. LEXIS
9
855, 2010 WL 1064418 (Bankr. D.Kan. March 23, 2010), similarly held that Bankruptcy Courts
10
are not required to wear legal binders by creating an irrebuttable presumption when applying the
11
required objective test of whether a default judgment is in bona fide dispute.  In that case, one of
12
the petitioning creditor argued that its claim was not in bona fide dispute because it held a default
13
judgment against the debtor.  *Id.*, at *16.  The Court cited *Bartmann v. Maverick Tube Corp.*, 853
14
F.2d 1540, 1543-44 (10th Cir. 1988), for the legal principles that (1) an objective test must be
15
applied in determining whether a claim is in boa fide dispute, and (2) "[t]he court need not
16
determine the probable outcome of the dispute, but merely whether one exists."  *Id.*, at *17.  The
17
Court concluded that, notwithstanding the creditor's default judgment, there was a bona fide
18
dispute due to procedural issues regarding service:
19
          "Under this standard, the Court finds that there is a bona fide dispute as to whether
20   the judgment is enforceable against the Debtor. In the Federal Case service of the
     summons and complaint was attempted under Kansas law. As examined below, the
21   service was attempted by return receipt delivery authorized by K.S.A. 60-303(c)
     but did not comply with the applicable Kansas statute. The service could be found
22   effective only if H2O may rely upon other Kansas statutes which unintentionally
     may have been satisfied or K.S.A. 60-204, which provides that service is effective
23   if it 'substantially' complies with one of the statutory methods. The parties dispute
     whether the default judgment was entered after effective service, and this Court
24   finds that such dispute is bona fide. Therefore the Court finds that H2O lacks
     standing to be a petitioning creditor under § 303(b)(1) because there is a bona fide
25   dispute as to liability for the judgment." *Id.*, at *18.

26        Similarly, Mr. Marciano has good reason for appealing the default judgments entered

27   against him in violation of applicable procedural limitations, as described below.  There should

28   not be a *per se* rule that creates an inflexible irrebuttable presumption that all judgments,

- 19 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  including default judgments, cannot be subject to bona fide dispute.  That would be inconsistent

2  with the objective test to be applied to the "bona fide dispute" determination and it would be

3  inconsistent with the policy behind that determination 11 U.S.C. § 303, which is to prevent the

4  abuse of involuntary filings.

5              **3.    The Cases Cited By Petitioning Creditors Are Not Controlling.**

6              Significantly, when contrasting the above-cited cases regarding default judgments with the

7  cases cited in the petitioning creditors' status report that was filed on April 7, it is evident that the

8  cases cited by them do <u>not</u> concern default judgments, even though that is the relevant inquiry

9  because the petitioning creditors hold default judgments.  In *In re Drexler*, 56 B.R. 960 (Bankr.

10 S.D.N.Y. 1986), three petitioning creditors filed an involuntary petition based upon two

11 judgments.  One was a "monetary judgment" for $335,000 and the other was a "sanctions

12 judgment."  *Id.*, at 962.  The sanctions judgment was "not in any liquidated amount, strikes with

13 prejudice the answer and counterclaim of Drexler and the other defendants and directs judgment

14 on default on the balance of the complaint against Drexler and the other defendants and refers the

15 matter to a magistrate for an inquest on the amount of the judgment."  *Id.*  The money judgment

16 was not a default judgment: "The Money Judgment was entered after the District Court concluded

17 that plaintiffs were entitled to partial summary judgment." *Id.*  The debtor, however, argued

18 otherwise and "repeatedly asserted that the petitioners are proceeding in this case on the basis of

19 default judgments."  *Id.*, at 964.  The Court rejected the argument:

20              "In any event, Drexler mischaracterizes the facts. <u>The Money Judgment is
                **not a default judgment**. The Sanctions Judgment is **not a default judgment**
21              insofar as it grants sanctions and directs the striking of the answer and
                counterclaim.</u> The Sanctions Judgment goes on to grant judgment of liability by
22              default in petitioners' favor on the other portions of the District Court Action
                complaint because there was, as a result of the striking of the answer and
23              counterclaim, no legally cognizable opposition. <u>The default portion of the
                Sanctions Judgment is unliquidated. In the federal system, even when a judgment
24              by default is entered on liability, the defendants are free to appear and defend the
                issues respecting the calculation of the amount of damages.</u> See *Trans World
25              Airlines, Inc. v. Hughes*, 449 F.2d 51 (2d Cir. 1971); *reversed on other grounds*,
                409 U.S. 363, 93 S. Ct. 647, 34 L. Ed. 2d 577 (1973); and 10 Wright, Miller &
26              Kane, *Federal Practice and Procedure, Civil 2d*, § 2688. *Cf. Au Bon Pain
                Corporation v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981). No damage hearing had
27              been held before the involuntary petition was filed." [Emphasis added.]

28              Thus, it was material to the *Drexler* Court's analysis that the involuntary debtor still could

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1   appear to defend himself against a damages award pursuant to the sanctions judgment. In

2   contrast, the State Court in the *Fahs* and *Iskowitz* actions held that, under a California law, a

3   defaulted party is "out of court" and may not be heard at the default judgment prove-up trial. As

4   unfair as it may be, that conclusion is supported by applicable California law. In affirming the

5   trial court's decision to preclude a defaulted defendant from participating in a default judgment

6   hearing on punitive damages, for example, the Court in *Devlin v. Kearny Mesa*

7   *AMC/Jeep/Renault*, 155 Cal. App. 3d 381, 385 (1984), noted: "The entry of a default terminates a

8   defendant's rights to take any further affirmative steps in the litigation until either its default is set

9   aside or a default judgment is entered." Thus, the judgments awarded to the petitioning creditors

10  and the other five judgment creditors truly were "default judgments." While this Court is faced

11  with default judgments, the *Drexler* Court was not. Interestingly, shepardizing the *Drexler*

12  decision shows that two cases that distinguish it (*Graber* and *Prisuta*) and that two cases that

13  criticize it (*Byrd* and *Henry S. Miller*). Aside from the *Starlite Houseboats* case, those are the

14  four cases cited above by Mr. Marciano for the proposition that default judgments present an

15  exception to the rule that judgments may not be subject to bona fide dispute.

16       The petitioning creditors also cite *In re Smith*, 415 B.R. 222, 228 (Bankr. N.D. Tex.

17  2009), for the general rule that unstayed judgments are not subject to bona fide dispute, but that

18  case also is inapposite because it concerned a "summary judgment on the guaranty claim" against

19  the debtor. It was not a default judgment.

20       Finally, the petitioning creditors cite *In re AMC Investors, LLC,* 406 B.R. 478, 481

21  (Bankr. D. Del. 2009), for the same general rule. In that case, the alleged debtors conceded

22  liability and then lost after a "two-day bench trial on damages," resulting in an amended judgment

23  for $10.75 million, including "professional fees and expenses of approximately $ 2.75 million."

24  *Id.*, at 481. The alleged debtors only appealed the portion of the amended judgment concerning

25  professional fees. *Id.*, at 482. Thus, in addition to the fact that the judgment in question was not a

26  default judgment, the majority of the judgment was not even disputed because it was not on

27  appeal. Significantly, however, even the *AMC Investors* Court, which the petitioning creditors

28  place so much reliance upon, expressly <u>refused</u> to extend the general rule to default judgments:

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    "The Court holds that the existence of a judgment by a court (other than a default
     judgment) that has not been stayed is, in and of itself, sufficient to establish that
2    the claim underlying the judgment is not in bona fide dispute for purposes of
     determining whether a petitioning creditor is eligible to commence an involuntary
3    case. No further inquiry is required." *Id.*, at 487 [emphasis added].

4         In support of the general rule, some Bankruptcy Courts have noted that unstayed state

5    court judgments are enforceable under state law and that a trial court's ruling should not be

6    intruded upon, so a state court's unstayed judgment should be given full faith and credit under

7    federal law. That superficial analysis confuses the concept of enforceability with the concept of

8    whether a claim is subject to bona fide dispute. They clearly are not mutually exclusive, as

9    evidenced by the fact that judgments routinely are reversed. Whether a state court judgment has

10   been stayed or has not been stayed is immaterial. The fact that a judgment debtor may have funds

11   sufficient to post a bond and obtain a stay pending appeal, whereas another judgment debtor may

12   not have that financial ability, should not dictate whether the judgment in question held by a

13   petitioning creditor is subject to bona fide dispute.

14        Also in support of the general rule, some Bankruptcy Courts have noted that they should

15   not be put in the position of determining a judgment debtor's likelihood of success on appeal in

16   predicting whether a judgment will be reversed for purposes of deciding whether the judgment is

17   in bona fide dispute. That view ignores the proper inquiry because the determination of whether a

18   judgment is in bona fide dispute does not require such a determination. Again, it is not the

19   likelihood of success on appeal that creates the bona fide dispute. Instead, it is the possibility of

20   success on appeal, when examined in an objective manner, which is the proper inquiry.

21        Mr. Marciano recognizes the general rule that there cannot be a bona fide dispute as to

22   most claims reduced to judgments that have not been stayed. Indeed, in *Platinum Fin. Servs.*

23   *Corp. v. Byrd (In re Byrd),* 357 F.3d 433, 438 (4th Cir. 2004), the Court noted that state court

24   "judgments go a long way toward establishing the absence of a bona fide dispute," and "it will be

25   the unusual case in which a bona fide dispute exists in the face of claims reduced to state court

26   judgments." This case presents such an unusual case in that the Court is faced with massive

27   default judgments on which there are legitimate grounds to challenge them on appeal.

28   Significantly, none of the cases cited by the petitioning creditors arose in similar circumstances.

- 22 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  Instead, the circumstances before this Court are more akin to those before the Courts in *Henry S.*

2  *Miller, Graber, Prisuta,* and *Starlite Houseboats,* which are quoted above, in which those Courts

3  clearly explain why there should be an exception to the general rule for default judgments in

4  order to meet the objective test for determining whether a claim is in bona fide dispute and in

5  order to prevent abuses of involuntary petitions.

6           **4.      The Judgments In The *Fahs* And *Iskowitz* Actions Clearly Were**

7                   **Default Judgments.**

8           In the *Fahs* action, the default judgments in favor of the petitioning creditors, Camille

9  Abat and Miriam Choi and against Mr. Marciano were entered after a default prove-up trial in late

10  July 2009 before an advisory jury at which Mr. Marciano was not allowed to be heard.[1]

11  [McCarthy Decl., ¶10.]  Similarly, in the *Iskowitz* action, the default judgments in favor of Gary

12  Iskowitz, Theresa Iskowitz and Carolyn Malkus and against Mr. Marciano were entered after a

13  default prove-up trial in August 2009 before the State Court (without an advisory jury) at which

14  Mr. Marciano also was not allowed to be heard.  [*Id.,* ¶11.]

15          The fact that the default judgment prove-ups occurred after Mr. Marciano's answers to the

16  petitioning creditors' cross-complaints were stricken and his defaults were entered on the cross-

17  complaints by way of discovery sanction, as opposed occurring after a failure to file an answer

18  and a default being entered, does not mean that the judgments in the *Fahs* and *Iskowitz* actions are

19  not default judgments, as petitioning creditors suggest.  The default judgments were subject to

20  prove-up, but Mr. Marciano was excluded from participating and from presenting evidence at the

21  prove-up trials.  As the cases cited above explain, not all judgments should be accorded the same

22  deference for purposes of deciding whether they are subject to bona fide dispute, and default

23  judgments are the prime example of judgments that should not be given the same deference.

24          Petitioning creditors have argued that the default judgments against Mr. Marciano should

25  be viewed differently than default judgments resulting from a non-appearance because (1) a party

26  who (allegedly) refused to testify and had terminating sanctions entered against him should not be

27          [1]  In a default setting, there is no right to trial by jury.  While C.C.P. § 585 permits a court to
empanel an advisory jury, the jury's assessment is merely advisory and only the Court can assess damages

28  on a prove-up.  *Cyrus v. Haveson,* 65 Cal.App.3d 306, 318 (1976)

- 23 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    able to escape the consequences of his conduct;[2] (2) to hold otherwise would place Mr. Marciano

2    in a position superior to a judgment debtor who followed the rules and had a judgment entered

3    against him after a trial on the merits; (3) federal courts give full faith and credit to judgments

4    resulting from discovery sanctions; and (4) adopting Mr. Marciano's approach would unfairly

5    impose on the petitioning creditor (who seeks to benefit from the default judgment) the burden of

6    proving that the debtor's appeals lacked merit on two issues (*i.e.,* the sanctions and the underlying

7    merits) while the petitioning party would only have to prove a lack of merit of the appeals on only

8    one issue for all other judgments. None of these arguments withstand scrutiny because they draw

9    an unprincipled distinction between default judgments resulting from a failing to respond to a

10    complaint and default judgments resulting from discovery sanctions striking an answer to a

11    complaint.

12        The first argument is equally applicable to a defendant who fails to respond after having

13    been served. To get to the court of appeals, such a defendant would seek and be denied relief

14    from the default judgment, and then appeal from that denial. In other words, the non-appearing

15    defendant faces the exact same consequences of his refusal to follow court procedures and rules

16    in answering on time that a defendant like Mr. Marciano faces in purportedly failing to appear for

17    deposition in violation of a court order. That consequence is entry of default, entry of a default

18    judgment after a prove-up, and then a subsequent appeal to reverse the judgment. Neither

19    defendant is allowed to defend himself at the default judgment prove-up hearing. Both such

20    defendants have the consequence of a default judgment resulting from their respective failures,

21    which they could have avoided had they followed the rules.

22        The second argument is incorrect in asserting that Mr. Marciano is in a "superior"

23    position, if his argument is adopted. He has more than $260 million in excessive default

24    judgments against him that should never have been entered and that he was not permitted to

25    defend against at the default prove-up trials. In contrast, a judgment debtor who has a judgment

26    entered against him or her after a trial on the merits or a summary judgment would have had a full

27

28       [2] As described below, it was undisputed that Mr. Marciano could not appear due to illness and hospitalization, yet the State Court ignored that in striking his answers and entering his default.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    opportunity to defend himself. That is why there is good reason not to give default judgments

2    deference. In a very abstract sense, Mr. Marciano in a "superior" position because the default

3    judgments against him fall within the exception to the general rule that judgments are not subject

4    to bona fide dispute, but that well-settled exception exists for good reason, as explained above in

5    the many decisions quoted.

6         The third argument also is equally applicable to default judgments resulting from a non-

7    appearance, so petitioning creditors again have drawn an unprincipled distinction between such

8    default judgments and the default judgments against Mr. Marciano. Bankruptcy courts give full

9    faith and credit to a default judgment resulting from not answering for *res judicata* and collateral

10   estoppel purposes, if the defendant was served, *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329

11   F.3d 1119, 1124 (9th Cir. 2003), but under the exception to general rule, those same default

12   judgments do <u>not</u> give rise to an irrebuttable presumption that they are <u>not</u> in bona fide dispute

13   under § 303.

14        The fourth argument also is equally true of a default judgment resulting from a failure to

15   answer, which is on appeal. Under the exception to the general rule, the petitioning creditors

16   must meet the burden of showing that the claim based upon that default judgment is not in bona

17   fide dispute by addressing two issues, *i.e.*, that relief from the default judgment was properly

18   denied (as opposed to the sanctions should have been issued, as in this case) and that the

19   underlying claim is meritorious.

20        The petitioning creditors ignore California law, which does not distinguish between

21   default judgments resulting from discovery sanctions and default judgments resulting from the

22   failure to answer. There is a "long line of precedents viewing a failure to answer as including the

23   case in which an answer is filed but is later stricken by the court." *Greenup v. Rodman,* 42 Cal.

24   3d 822, 827 (1986). Indeed, after citing the California statutes applying to default judgments and

25   to discovery sanctions, that Court noted: "Yet unless and until the Legislature specifically

26   provides a separate procedure for defaults after discovery sanctions, these sections remain the

27   sole statutory procedures for default judgments." *Id*. Thus, the exact same statutory authority

28   exists for default judgments resulting from the failure to answer and default judgments resulting

1   from the striking of an answer as a discovery sanction. It is indisputable that a judgment resulting

2   from a discovery sanction is a "default judgment," as opposed to some other kind of judgment.

3   *See, e.g., Johnson v. E-Z Ins. Brokerage, Inc.,* 175 Cal. App. 4th 86, 89 (2009) ["Both appeals

4   arise out of a default judgment obtained . . . as a discovery sanction."]; *Julius Schifaugh IV*

5   *Consulting Services, Inc. v. Avaris Capital, Inc.,* 164 Cal. App. 4th 1393, 1397 (2008) [ "a default

6   judgment entered as a discovery sanction is subject to Code of Civil Procedure section 580."]

7           **5.**     **Judgments On Appeal In California Are Not Entitled To Any Binding**

8                        **Effect.**

9       There is another reason under California law why the petitioning creditors' default

10   judgments should not be given deference. Unlike a federal judgment and judgments in certain

11   other states, a judgment entered by a California state court is <u>not</u> entitled to *res judicata* or

12   collateral estoppel effect when the time to appeal has not yet run or when an appeal is pending on

13   the judgment, as is the case here. *See, Pellissier v. Title Guarantee & Trust Co.,* 208 Cal. 172,

14   184 (1929); *Long Beach Unified School Dist. v. California,* 225 Cal.App.3d 155 (1990); *Sandoval*

15   *v. Superior Court,* 140 Cal.App.3d 932, 936 (1983); 7 Witkin, *Cal. Procedure,* Judgment, § 364

16   (5th ed.) [stating that "while an appeal is pending or, though no appeal has yet been taken, the

17   time for appeal has not expired, the judgment is not conclusive" and citing to numerous cases

18   therein.] Given that (because of the pending appeals) a California Court would not deem the

19   default judgments as having a *res judicata* or collateral estoppel effect in other related litigation,

20   this Court also should not give the default judgments any binding effect for purposes of

21   determining whether they are in bona fide dispute.

22          **6.**     **The Petitioning Default Judgments Are Subject To Bona Fide Dispute.**

23       As will be shown in opposition to the petitioning creditors' motion for summary

24   judgment, there are numerous reasons why the petitioning creditors' judgments are subject to a

25   bona fide dispute. Mr. Marciano cannot reasonably be expected to assemble and provide his

26   complete opposition to the motion for summary judgment at this point, but he does want the

27   Court to understand that he has many valid reasons why the default judgments should be reversed

28   and, therefore, are subject to bona fide dispute.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    Under 11 U.S.C. § 303(b)(1) and § 303(h)(1), claims may be subject to bona fide dispute

2    as to liability and amount.  The default judgments are in bona fide dispute because Mr. Marciano

3    should not have liability to the petitioning creditors. By way of example: (1) the sanction order

4    striking Mr. Marciano's answers to the cross-complaints in the *Fahs* and *Iskowitz* actions and the

5    resulting defaults and default judgments on those cross-complaints were due to Mr. Marciano's

6    non-appearance for a court-ordered deposition in the face of undisputed evidence that Mr.

7    Marciano could not appear because he was extremely ill and hospitalized [McCarthy Decl., ¶8],

8    as explained below; (2) less drastic alternatives were available in lieu of that harsh penalty; (3)

9    the State Court judge exhibited serious bias, referring to Mr. Marciano an eel, delusional and was

10   paranoid, and refusing to permit him and his counsel to speak on more than one occasion [*id.*,

11   ¶13]; (4) during the prove-up trial before the advisory jury in late July 2009 at which Mr.

12   Marciano was not permitted to be heard except to assert the attorney-client privilege, the State

13   Court allowed argument and evidence on matter not even presented in the cross-complaints [*id.*,

14   ¶¶14-16.]; and (5) during the prove-up trial, the State Court also allowed in severely prejudicial

15   testimony that was known by the Court and by counsel presenting it to be false.  [*Id.*, ¶ 16.]

16   These are just a few examples of why the default judgments should not have been entered

17   in the first place and that they should be reversed, which means that there is a bona fide dispute as

18   to liability.  The first example and the last two examples set forth above are particularly

19   disturbing.

20   On the first example, it is clear that the State Court coldly ignored the evidence of Mr.

21   Marciano's illness and hospitalization.  By the State Court's Order of January 21, 2009 order in

22   the *Fahs* action.  Miriam Choi and Camille Abat, who are two of the members of the Iskowitz

23   group, were awarded terminating sanction. [Exh. 1.]  That order specifically mentions Mr.

24   Marciano's failure to appear at a depositions ordered for January 6 and 12, 2009, the latter of

25   which triggered the terminating sanctions under which the Court dismissed Mr. Marciano's

26   complaint. [*Id.*, at 8:4-14.]  His previous conduct had not led to that result.  That clearly was not

27   forgotten by the Court when it issued the sanction order on February 25, 2009, or the subsequent

28   order on August 26, 2009, which were attached as Exhibits A and B to the Iskowitz group's

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 27 -

1    opposition to the motions for relief from automatic stay. [Dkt. no. 32.] Mr. Marciano's counsel

2    submitted a declaration regarding Mr. Marciano's physical condition on January 14, 2009. [Exh.

3    2 hereto.] Because the declaration neglected to attach a copy of the referenced doctor's note

4    regarding Mr. Marciano's condition, a notice of errata was filed that attached the note the next

5    day. [Exh. 3 hereto.] The State Court nevertheless entered the January 21, 2009 order dismissing

6    Mr. Marciano's action. The cross-complainants then sought further sanctions in terms of an order

7    striking Mr. Marciano's answer to their cross-complaints. On February 17, 2009, Mr. Marciano

8    filed a further opposition with another declaration from his counsel regarding his physical

9    condition and a note from Mr. Marciano's doctor. [Exh. 4 hereto.] Mr. Marciano's counsel also

10   submitted a separate declaration the dame day. [Exh. 5 hereto.] His doctor (David S. Silver,

11   M.D.) also submitted a declaration on February 17, 2009, that verified Mr. Marciano's condition

12   as of January 6, 2009, and for the following week. [Exh. 6 hereto.] Dr. Silver explained in a

13   declaration dated January 5, 2009, that Mr. Marciano was suffering from severe bronchitis for

14   which he had been prescribed antibiotics. He stated: "Mr. Marciano is not capable of attending

15   his deposition on January 6, 2009 as I believe it would likely cause a worsening of his respiratory

16   condition in his present, weakened state." [*Id.*] At the January 8, 2009 hearing, his counsel

17   explained that he personally witnessed Mr. Marciano's collapse; that paramedics were

18   summoned; and that he was administered an IV and medications. [Exh. 11, at 12:2-24.] On

19   February 17, 2009, his other physician (Stephen R. Corday, M.D.) also submitted a declaration

20   regarding Mr. Marciano's physical incapacity from January 12 to 14, 2009, when he was actually

21   hospitalized. [Exh. 7 hereto.] He explained: "Mr. Marciano did not appear for his deposition as a

22   result of a medical emergency which required that he be hospitalized from January 12, 2009

23   through January 14, 2009." [*Id.*] In the face of this uncontradicted evidence, after hearing on

24   March 2, 2009, the Superior Court struck Mr. Marciano's answer to the cross-complaints because

25   he failed to attend the Court-ordered depositions when he was ill on January 6 and 12, 2009. By

26   way of example, the three sanction orders in favor of Petitioning Creditors Chapnick, Fahs and

27   Tagle show that. [Exhs. 8, 9, and 10 hereto.] The striking of Mr. Marciano's answers to the

28   cross-complaints is what ultimately led to the default judgments on those cross-complaints that

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    exceed $260 million.

2        On the <u>fourth</u> example, the State Court violated its duty to preclude evidence bearing upon

3    matters not presented by the cross-complaints. "It is, of course, the case that there is no opposing

4    party in a default judgment situation. Thus, cases properly recognize that in such situation 'it is

5    the duty of the court to act as gatekeeper, ensuring that only the appropriate claims get through.'"

6    *Fasuyi v. Permatex, Inc.*, 167 Cal. App. 4th 681, 691 (2008). "The court cannot allow a plaintiff

7    to prove different claims or different damages at a default hearing than those pled in the

8    complaint." *Heidary v. Yadollahi*, 99 Cal.App.4th 857, 868 (2002). The State Court ignored this

9    duty. Among other things, it allowed cross-complainants' counsel to improperly argue, call

10    witnesses and present evidence and argument on matters outside the pleadings, including Mr.

11    Marciano's websites, weblogs (blogs), litigation against the State Court judge, supposed "lack of

12    respect" for authority, and mental health and stability. [McCarthy Decl., ¶14.] None of that was

13    alleged in the cross-complaints, nor could it have been given that almost all of the conduct in

14    question post-dated the filing of the cross-complaints. Although none of the cross-complaints

15    alleged that Mr. Marciano is dangerous or had threatened them, a "security consultant" conducted

16    a "threat assessment" and concluded that Mr. Marciano was "dangerous" and might strike like "a

17    disgruntled employee who goes into the workplace and shoots somebody," and then testified

18    regarding millions of dollars in anticipated security costs for round-the-clock bodyguards for each

19    of the cross-complainants and their families, home security systems, and private security service,

20    among other things, even though the jury was instructed that damages had to be "reasonably

21    certain." [*Id.*, ¶15, Exh. 17, at 14:1-9.] Consideration of such matters outside of the cross-

22    complaints warrants reversal of the default judgments. *Myers v. Washington*, 211 Cal.App.2d

23    767, 770 (1963) [reversing default judgment because it was based on theory different from

24    complaint]; *Ellis v. Rademacher*, 125 Cal. 556, 557 (1899) [reversing default judgment where the

25    rulings at the default prove-up were based on evidence of events which had occurred after the

26    complaint had been filed]. The defendant "[has] the right to assume that the judgment which

27    would follow a default on [his] part would embrace only the issues presented by the complaint

28    and the relief therein prayed." *Jackson v. Bank of America*, 188 Cal.App.3d 375, 389 (1986).

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    Similarly, on the <u>fifth</u> example, obviously prejudicial and false evidence and argument

2    should not have been permitted. For example, the jury was repeatedly told that Mr. Marciano

3    "chose not to be [t]here," "chose not to come," "chose not to argue," "chose not to say anything to

4    you," and "didn't have the nerve to show up," notwithstanding that Mr. Marciano was precluded

5    from defending himself before the advisory jury. Further, although there was no evidence of Mr.

6    Marciano's current financial condition (as opposed to evidence of part transactions), cross-

7    complainants argued that Mr. Marciano should be held accountable because "[i]t doesn't matter

8    how many billions he has." [McCarthy Decl., ¶16.]

9    There also is a bona fide dispute as to the <u>amount</u> of the judgments on petitioners' cross-

10    complaints in which they sued for defamation, which the petitioning creditors claimed damaged

11    their reputation, caused them emotional distress and shame, caused a loss of income, and

12    subjected them to future expenses. Petitioning creditor Elizabeth Tagle was Mr. Marciano's

13    former bookkeeper. Petitioning creditor Joseph Fahs was an information technology consultant,

14    who worked on Mr. Marciano's computers. Petitioning creditor Steven Chapnick worked as Mr.

15    Marciano's assistant and his assistant property manager. Assuming for the sake of argument that

16    Mr. Marciano has any liability to them, it is apparent that the amounts awarded were grossly

17    excessive. Due to the false and inflammatory nature of the testimony at the default prove-up

18    hearing in late July 2009, the advisory jury in the *Fahs* action awarded damages of $74.044

19    million to each of the petitioning creditors (Tagle, Chapnick and Fahs) and to two other cross-

20    complainants (Camille Abat and Miriam Choi). Then, acting in excess of its jurisdiction, the

21    State Court entered judgments in the awarded amounts despite the fact that each one of the five

22    default judgments exceeded the inflated amounts demanded by the cross-complainants in their

23    respective statements of damages. [McCarthy Decl., ¶10.][3] Only when Mr. Marciano brought

24    motions for new trial in the *Fahs* action on each default judgment did the Court finally enter

[3] C.C.P. § 580(a) ["'"The relief granted to the plaintiff . . . cannot exceed that demanded in the complaint, [or]in the statement required by Section 425.11 . . . ."]; C.C.P. § 585(b) [on default, "[t]he court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief, not exceeding the amount stated in . . . the statement required by Section 425.11 . . . as appears by the evidence to be just."]; *Greenup v. Rodman*, 42 Cal.3d 822, 826, 829 (1986); *Burnett v. King*, 33 Cal.2d 805, 808 (1949) ["a default judgment by the court that exceeds the demand or gives relief where no demand is made therefore is void as in excess of the court's jurisdiction."]

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1   amended judgments reducing the awards to the maximum amounts demanded as follows: ($15.3

2   million for Tagle; $25 million for Chapnick; and $55 million for Fahs, Choi and Abat), but even

3   those judgments were grossly excessive for many reasons.

4          First, an award is excessive where, as here, it "is so grossly disproportionate to the injury

5   that the award may have been presumed to have been the result of passion or prejudice."

6   *Fortman v. Hemco, Inc.*, 211 Cal.App.3d 241, 259 (1989).

7          Second, damages relating to the petitioning creditors' alleged future needs for medical

8   attention and security were necessarily speculative and excessive. *Resort Video, Inc. v. Laser*

9   *Video, Inc.*, 35 Cal.App.4th 1679, 1701 [jury's consideration of speculative evidence supported

10   finding that jury award was excessive.]

11          Third, the awards for alleged future damages were not reduced to present value. *Nguyen*

12   *v. Los Angeles County Harbor/UCLA Medical Center*, 40 Cal.App.4th 1433, 145 (1995

13   [reduction to present value is "routinely applied . . . to determine personal injury awards

14   involving loss of future earnings, payment of future medical expenses and other future

15   damages."]; *Ninety Five Ten v. Crain*, 231 Cal.App.3d 36, 40 (1991) ["As the judgment rendered

16   would precede the date performance had been expected, the dollar amount of the judgment had to

17   be reduced to present value."]

18          Fourth, the petitioning creditors were duplicatively awarded $17.5 million for [s]hame,

19   mortification, and hurt feelings" plus $5 million for "[p]ast mental suffering and physical pain,"

20   but by definition "mental suffering includes "shame, mortification and hurt feelings." *Tavaglione*

21   *v. Billings*, 4 Cal.4th 1150, 1158-59 (1993) ["Regardless of the nature or number of legal theories

22   advanced by the plaintiff, he is not entitled to more than a single recovery for each distinct item of

23   compensable damage supported by the evidence. . . . Double or duplicative recovery for the same

24   items of damage amounts to overcompensation and is therefore prohibited."]; *Friddle v. Epstein*,

25   16 Cal.App.4th 1649, 1660 (1993) ["If the plaintiff has suffered injuries akin to those for

26   emotional distress, '*i.e.*, anxiety, embarrassment, humiliation, shame, depression, feelings of

27   powerlessness, anguish, etc.,' there are 'actual' damages."]; *Graham v. Yellow Cab Co.*, 125

28   Cal.App.141, 146 (1932) [mental worry, distress, grief, and mortification are component elements

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    of mental suffering].

2          Fifth, the awards of non-economic damages were excessive when compared to similar

3    cases.  In making that determination, courts often compare the awards to those in similar cases.

4    *Bihun v. AT&T Information Sys. Inc.*, 13 Cal.App.4th 976, 997 (1993); *Iwekaogwu v. City of Los*

5    *Angeles*, 75 Cal.App.4th 803, 821 (1999).  The awards to the petitioning creditors were many,

6    many multiples—as much as hundreds of times—higher than awards in those cases where

7    plaintiffs suffered much greater non-economic harm than any of the petitioning creditors claimed.

8    *Iwekaogwu* involved a lengthy campaign of racial discrimination, a hostile work environment,

9    and retaliation, and the plaintiff was awarded **$450,000** in emotional distress damages based on

10   evidence from which the jury could have found that he "was suffering from emotional distress

11   that significantly altered his ability to enjoy life and to engage in ordinary activities, that

12   interfered with his family life, and that included fear of physical harm from co-workers." *Id.*,  at

13   821.  See also, *Ortega v. Pajaro Valley U. Sch. Dist.*, 64 Cal.App.4th 1023 (1998) [12 year old

14   plaintiff who was molested by a teacher was accused of fabricating her accusation, exposed by

15   the school district's investigation to crank (usually explicit) phone calls from unidentified boys,

16   and sued for defamation by the teacher, was awarded **$1.5 million** in non-economic damages,

17   where she "spent most of her high school years in her bedroom with eating disorders"; she

18   refused "to communicate with her parents or anyone else"; "her once-close relationship with her

19   father was destroyed"; "[f]or years, her tale followed her wherever she went: she was the girl who

20   had leveled the 'false charges' against a beloved, dedicated teacher;" and "[a]s a result, she

21   changed schools often."]; *Sommer v. Gabor*, 40 Cal.App.4th 1455, 1471 (1996) [actress Elke

22   Sommer awarded **$800,000** and **$1.2 million** against two defendants who had defamed her, which

23   included *both* reputational damages and compensation for "shame, mortification, and hurt

24   feelings."]; *Watson v. Dept. of Rehabilitation*, 212 Cal.App.3d 1271, 1293-94 (1989) [award of

25   **$1.1 million** in emotional distress damages based upon years of racial discrimination and

26   retaliation that caused nightmares, loss of appetite, loss of interest in ordinary activities, and a

27   severe psychiatric disorder which required "medication, constant care, perhaps including

28   hospitalization and shock treatment" and plaintiff was disabled from working.]; *Bihun v. AT&T*

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

*Information Sys. Inc.*, 13 Cal.App.4th at 985-86, 995, 997 [six month campaign of sexual

harassment, unwanted physical contact, and retaliatory demotions following plaintiff's rejection

of unwanted advances, which caused "headaches, dizziness, vomiting, diarrhea, weight loss, sleep

disturbances, teeth grinding, a facial twitch, crying spells, and depression," and expert testimony

that the plaintiff had suffered permanent psychological injury, resulting in an award of **$662,000**

in emotional distress damages.]; *Saari v. Jongordon* Corp., 5 Cal.App.4th 797, 808 (1992)

[plaintiff received **$175,000** for the negligent handling of the cremated remains of his companion,

which resulted in the plaintiff quitting a promising job, obtaining only sporadic employment, and

becoming "depressed and withdrawn, unable to concentrate on work, almost suicidal."]

In contrast, each of the petitioning creditors originally was awarded **$55 million** (of the

total of $74.044 million) consisting of $17.5 for "general damages for injury to reputation," $17.5

million for "shame, mortification and hurt feelings," $5 million for "[p]ast mental suffering and

physical pain," and $15 million for "[f]uture mental suffering and physical pain."[4] [McCarthy

Decl., ¶10; Exhs. 18-22.] The balance consisted of the identical amount of $14.044 million per

cross-complainant for future economic loss and $5 million for punitive damages. [*Id.*] In such

circumstances, the reduction of excessive damages resulting from "passion or prejudice" is

warranted. *Mokler v. County of Orange*, 157 Cal.App.4th 121, 147-48 (2007) [affirming trial

court's reduction of $1.68 million in past and future non-economic damages to **$125,000** for

retaliatory discharge, based in past on lack of any evidence as to loss of reputation, public scorn,

or difficulty finding employment.]

If the judgments were reduced to a reasonable amount, Mr. Marciano would be capable of

paying them or posting a bond to stay enforcement pending appeal. Thus, the fact that there is a

bona fide dispute as to the amount of the claims based upon the excessive default judgments also

disqualifies the petitioning creditors.

In summary, while the considerations under 11 U.S.C. § 305(a)(1) support dismissal of the

involuntary Chapter 11 case, the fact that there are meritorious grounds for the appeals also

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

---

[4] The petitioning creditors' judgments were reduced to $55 million for Fahs, $25 million for Chapnick and $15.3 million for Tagle, but the State Court simply reduced the total without indicating what components of the judgments were reduced.

1    supports dismissing this involuntary case while the appeals proceed in order to resolve the real

2    disputes between the petitioning creditors and Mr. Marciano.

3    **III.    ALTERNATIVELY, THE COURT SHOULD STAY THIS INVOLUNTARY**

4    **CHAPTER 11 CASE PENDING THE OUTCOME OF THE APPEALS IN STATE**

5    **COURT.**

6    Section 305(a)(1) alternatively permits the Court to stay this involuntary Chapter 11 case

7    instead of dismissing it.  If the Court actually believes petitioning creditors' alleged reason for the

8    involuntary Chapter 11 filing, *i.e.*, to preserve potential preferential transfers, that goal can be

9    completely and totally accomplished by staying this involuntary Chapter 11 case until the appeals

10    are over.   The Court need not rule on the involuntary petition in the meantime.  If the judgments

11    are reversed, as Mr. Marciano expects they will be, that will weigh heavily on the "bona fide

12    dispute" issue and upon dismissal of the case. If, on the other hand, the default judgments are

13    affirmed on appeal in an amount that Mr. Marciano is unable to pay, that also would weigh

14    heavily on the same issue.  After resolution of the appeals, the Court can determine whether to

15    enter an order for relief.  The supposed preferential transfer claims, and even any unidentified

16    fraudulent transfer claims, will have been preserved in the meantime by the October 27, 2009

17    involuntary petition date, which governs the applicable reach-back periods under 11 U.S.C. §547

18    and 548.

19    **IV.    CONCLUSION.**

20    Based upon the foregoing, Mr. Marciano respectfully requests that the Court abstain in

21    this Chapter 11 case under 11 U.S.C. § 305(a)(1) by dismissing this Chapter 11 case or,

22    alternatively by staying it until resolution of the appeals from the petitioning creditors' default

23    judgments.

24    DATED:   April 26, 2010                    HILL, FARRER & BURRILL LLP

25

26                                                        By:  /s/  Daniel J. McCarthy
                                                              DANIEL J. McCARTHY
27                                                          Attorneys for Involuntary Chapter 11 Debtor
                                                              GEORGES MARCIANO

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
305 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

## DECLARATION OF DANIEL J. McCARTHY

I, Daniel J. McCarthy, declare:

1.     I am an attorney law. I am duly qualified to practice before all courts of the State of California and all federal courts in the State of California, as well as certain other courts. I was admitted to the State Bar of California in 1981, and I have been a member in good standing since then. I am a partner at the law firm of Hill, Farrer & Burrill, LLP. Since late August or early September 2009, I have been co-counsel for judgment debtor Georges Marciano in the cases in the Los Angeles Superior Court (the "State Court") entitled *Georges Marciano v. Joseph Fahs, et al.*, bearing case no. BC375824 (the "Fahs action"), and entitled *Georges Marciano, et al. v. Gary Iskowitz, et al.*, bearing case no. BC384493, which was consolidated with case no. BC385790 entitled *Gary Iskowitz, et al. v. Georges Marciano, et al.* (collectively, the "*Iskowitz* action"). My firm also is counsel for Mr. Marciano in the appeals from the orders and default judgments in those actions. The appeals in the *Fahs* action are pending before Division Two of the Second Appellate District of the California Court of Appeals, and those appeals are assigned nos. B218087, B215463, B216598 and B220011. The appeals in the *Iskowitz* action are pending before Division Three of the Second Appellate District of the California Court of Appeals, and those appeals are assigned nos. B216029 and B219558. I also of counsel of record for Mr. Marciano as the alleged debtor in his involuntary Chapter 11 case. The information set forth in this declaration is based upon my personal knowledge, which in some cases is based upon my review of ex parte applications, motions, and orders filed in the two referenced cases and in appeals filled from orders in those cases.

2.     Mr. Marciano was a plaintiff and cross-complainant in the *Fahs* action and the *Iskowitz* action.

3.     The petitioning creditors are Steven Chapnick, Joseph Fahs and Elizabeth Tagle. They were defendants and cross-complainants in the *Fahs* action. Camille Abat and Miriam Choi also were the defendants and cross-complainants in the *Fahs* action.

4.     Gary Iskowitz, Theresa Iskowitz and Carolyn Malkus were defendants and cross-complainants in the *Iskowitz* action.

- 35 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

5.     Based upon discovery sanctions, the State Court issued orders striking Mr. Marciano's complaints in the *Fahs* and *Iskowitz* actions.

6.     Based upon discovery sanctions, the State Court also entered orders striking Mr. Marciano's answers to the petitioning creditors' cross-complaints and the cross-complaints of Camille Abat and Miriam Choi in the *Fahs* action, after which Mr. Marciano's default was entered on their cross-complaints.

7.     Based upon discovery sanctions, the State Court also entered orders striking Mr. Marciano's answer to the cross-complaint of Gary Iskowitz, Theresa Iskowitz and Carolyn Malkus in the *Iskowitz* action, after which Mr. Marciano's default also was entered on their cross-complaint.

8.     On February 19, 2010, I downloaded the following exhibits from the website of the Los Angeles Superior Court on which imaged pleadings and orders are available in cases pending in the central judicial district of that Court. Those documents are Exhibits A to J to the reply brief that I caused to be filed with this Court on February 22, 2010, and they show that the State Court entered Mr. Marciano's default in the face of uncontradicted evidence that he did not appear at a court-ordered deposition due to illness and hospitalization. [Dkt. no. 39.] Copies also are attached hereto as Exhibits A to J as follows:

a.     **Exhibit 1**:  Order Granting Defendants Steven Chapnick, Joseph Fahs, Miriam Choi, Camille Abat, Elizabeth Tagle and Deborah McLeod's Motion for Terminating Sanctions, filed January 12, 2009.

b.     **Exhibit 2**:  Declaration of Douglas N. Silverstein re Hospitalization of Plaintiff and Cross Defendant Georges Marciano, filed January 14, 2009.

c.     **Exhibit 3**:  Notice of Errata re Declaration of Douglas N. Silverstein re Hospitalization of Plaintiff and Cross Defendant Georges Marciano, filed January 15, 2009.

d.     **Exhibit 4**:  Cross Defendants' Consolidated Opposition to Cross Complainants Chapnick's and Choi and Abat's Motion for Sanctions; Declaration of Douglas N. Silverstein, Esq., filed January 21, 2009.

e.     **Exhibit 5**:  Declaration of Douglas N. Silverstein, Esq. Submitted in

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    Opposition to Cross-Complainants' Motions for Terminating and/or Monetary Sanctions, filed

2    February 13, 2009.

3            f.    **Exhibit 6**: Declaration of David S. Silver, M.D. in Opposition to Cross-

4    Complainants' Motion for Terminating Sanctions and/or Monetary Sanctions, filed February 17,

5    2009.

6            g.    **Exhibit 7**: Declaration of Stephen R. Corday, M.D. in Opposition to

7    Cross-Complainants' Motions for Terminating Sanctions and/or Monetary Sanctions, filed

8    February 17, 2009.

9            h.    **Exhibit 8**: Order Granting Motion for Terminating Sanctions, filed March

10    30, 2009.

11            i.    **Exhibit 9**: Order Granting Fahs' Motion for Terminating and Evidentiary

12    Sanctions, filed March 23, 2009.

13            j.    **Exhibit 10**: Order on Cross-Complainant Elizabeth Tagle's Notice of

14    Motion and Motion to Strike Answer of Cross-Defendants Georges Marciano and Beverly

15    Wilshire Properties, Inc.; and to Enter Default Against Cross-Defendants, filed March 30, 2009.

16        9.    On behalf of involuntary debtor Georges Marciano, I requested that the Court take

17    judicial notice of the pleadings and orders attached to that reply brief pursuant to the Federal

18    Rules of Evidence, Rule 201, and I reiterate that request herein..

19        10.    After a default judgment prove-up trial before an advisory jury in late July 2009 in

20    the *Fahs* action at which Mr. Marciano was not permitted to present evidence or be heard except

21    on attorney-client privilege issues, default judgments were entered in favor of each of the

22    petitioning creditors and two others (Camille Abat and Miriam Choi) and against Mr. Marciano in

23    the amount of $74.044 million each. As shown by **Exhibits 18 to 22** hereto, which are copies of

24    the amended judgment, each one of those cross-complainants had a judgment entered in their

25    favor and against Mr. Marciano in the *Fahs* action for (1) future economic loss, past mental

26    suffering and physical pain, future mental suffering and physical pain relating to alleged severe

27    emotional distress, where the awarded damages total $34.044 million; (2) general damages for

28    injury to reputation and shame, mortification or hurt feelings relating to alleged defamation,

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1   where the awarded damages total $35 million (a total of $69.004 million in compensatory

2   damages); and (3) punitive damages of $5 million, for a total $74.044 million.  More specifically,

3   each of the petitioning creditors, as well as Miriam Choe and Camille Abat, originally were

4   awarded **$55 million** (of the total of $74.044 million) consisting of $17.5 for "general damages

5   for injury to reputation," $17.5 million for "shame, mortification and hurt feelings," $5 million

6   for "[p]ast mental suffering and physical pain," and $15 million for "[f]uture mental suffering and

7   physical pain.  In contrast, in their respective statements of damages filed in case no. BC375824,

8   those cross-defendants had requested much less than was awarded.  I intend to submit all of those

9   statements of damages with the opposition to the motion for summary judgment.

10          11.     After a default judgment prove-up trial in the *Iskowitz* action in August 2009 at

11  which Mr. Marciano was not permitted to present evidence or be heard except on attorney-client

12  privilege issues, a default judgment was entered against Mr. Marciano and in favor of Gary

13  Iskowitz for $45 million, Theresa Iskowitz for $5 million, and Carolyn Malkus for $5 million.  In

14  the *Iskowitz* action, the same counsel represented Gary and Theresa Iskowitz and Carolyn Malkus

15  at the same prove-up trial in August 2009.

16          12.     Attached hereto are excerpts from transcripts of proceedings before the State Court

17  in the Fahs action, as follows:

18          a.     **Exhibit 11**:  January 8, 2009

19          b.     **Exhibit 12**:  March 2, 2009

20          c.     **Exhibit 13**:  July 20, 2009

21          d.     **Exhibit 14**:  July 21, 2009

22          e.     **Exhibit 15**:  July 22, 2009

23          f.     **Exhibit 16**:  July 23, 2009

24          g.     **Exhibit 17**:  July 24, 2009

25          13.     I know from reviewing the transcripts of the Fahs and Iskowitz actions that Judge

26  White referred to Mr. Marciano an eel, paranoid and delusional, and refused to permit him or his

27  counsel to speak on more than one occasion.  See Exh. 11, at 14:5-7; Exh. 12, at 31:9-12; Exh.

28  15, at 62:6-8; 64:18-28; 70:24-71:1; Exh. 17, at 49:17-25.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

14.     The State Court allowed cross-complainants' counsel to improperly argue, call witnesses and present evidence and argument on matters outside the pleadings, including Mr. Marciano's websites, weblogs (blogs), litigation against the State Court judge, supposed "lack of respect" for authority, and mental health and stability. None of that was alleged in the cross-complaints, nor could it have been given that almost all of the conduct in question post-dated the filing of the cross-complaints. See Exhs. 14, at 122:5-28; Exh. 15, at 134:28-137:8; 164:3-165:4; Exh. 16, at 85:26-27; Exh. 17, at 25:19-26:5; 50:20-22.

15.     Although none of the cross-complaints alleged that Mr. Marciano is dangerous or had threatened them, a "security consultant" conducted a "threat assessment" and concluded that Mr. Marciano was "dangerous" and might strike like "a disgruntled employee who goes into the workplace and shoots somebody," and then testified regarding millions of dollars in anticipated security costs for round-the-clock bodyguards for each of the cross-complainants and their families, home security systems, and private security service, among other things. See Exh. 14, at 26:26-30:9; 38:19- 41:15; Exh. 16, at 70:1-74:28; 77:18-78:25; 84:18-101:13; Exh. 17, at 65:8-15.

16.     The advisory jury in the Fahs case was repeatedly told that Mr. Marciano "chose not to be [t]here," "chose not to come," "chose not to argue," "chose not to say anything to you," and "didn't have the nerve to show up," notwithstanding that Mr. Marciano was precluded from defending himself before the advisory jury and his counsel was precluded from speaking except to invoke the attorney-client privilege. See Exh. 12, at 49:22-23; 80:5-8; Exh. 14, at 41:19-21; Exh. 15, at 62:6-8; 64:18-28; 70:24-71:1. Further, although there was no evidence of Mr. Marciano's current financial condition (as opposed to evidence of part transactions), cross-complainants argued that Mr. Marciano should be held accountable because "[i]t doesn't matter how many billions he has." See Exh. 17, at 41:14-15.

17.     Mr. Marciano challenged the judgments in the *Fahs* and *Iskowitz* actions through motions for new trial. On the morning of Friday, October 2, 2009, I attended the hearing in the Fahs action on Mr. Marciano's motions for new trial with respect the five judgments entered in that action. That hearing concluded shortly before 12:00 noon. At that hearing, Judge Elizabeth

- 39 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1   White agreed with Mr. Marciano, and she reduced all five of the judgment amounts to the

2   amounts demanded in the cross-complainants' respective statements of damages. Judge White

3   said she would enter a minute order that day stating the reduced amounts. According to her

4   verbal ruling, the judgments were reduced as follows:  The judgments in the amount of $74.044

5   million each in favor of Joseph Fahs, Camille Abat and Miriam Choi were reduced to the sum of

6   $55 million each that they each requested in their respective statements of damages; the judgment

7   in the amount of $74.044 million in favor of Steven Chapnick was reduced to the sum of $25

8   million requested in his statement of damages; and the judgment in the amount of $74.044

9   million in favor of Elizabeth Tagle was reduced to the sum of $15.3 million requested in her

10  statement of damages. Amended judgments were subsequently entered by the Court

11  interlineating the original judgments to reflect the corrected amounts. A true and correct copy of

12  those amended judgments were attached hereto as Exhibits A to E  to the motions for relief from

13  automatic stay that I caused to be filed on February 2, 2010. [Docket nos. 30 and 31.] They

14  show the terms of the original judgments, which were interlineated by the amended judgments. A

15  true and correct copy of the amended judgments also is attached hereto as **Exhibits 18 to 22**.

16      18.    The judgment in the Iskowitz action in favor of Gary Iskowitz, Theresa Iskowitz

17  and Carolyn Malkus was not reduced as a result of the new trial motion heard in that action on

18  October 15, 2009, because the judgment in that action did not exceed the amounts demanded by

19  them. A true and correct copy of the judgment in that action is attached hereto as Exhibit F to the

20  motions for relief from automatic stay that I caused to be filed on February 2, 2010. [Docket nos.

21  30 and 31.] A true and correct copy of the judgment in that action also is attached hereto as

22  **Exhibit 23**.

23      19.    Prior to the filing of the involuntary petition, two of the three petitioning creditors

24  (Fahs and Chapnick) and the five other judgment creditor were pursuing enforcement of their

25  respective default judgments through various mechanisms. I defended Mr. Marciano against those

26  collection efforts.  I can safely say that counsel for Chapnick and Fahs were the most aggressive.

27  They both employed separate counsel specializing in collection matters. They caused writs of

28  execution to be levied on more institutions than any other creditor. Mr. Chapnick obtained orders

- 40 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    for third parties to appear for depositions. They obtained charging and assignment orders. And

2    Mr. Chapnick twice sought judgment debtor exams of Mr. Marciano, but he was forced to take

3    them off calendar when they were unable to serve him. Attached hereto as **Exhibits 24 and 25**

4    are true and correct copies of the orders to appear obtained by counsel for Chapnick.

5         20.    While Elizabeth Tagle was not as aggressive in judgment collection efforts, I was

6    informed in October 2009 that her counsel contacted former co-counsel for Mr. Marciano (Eric

7    George of the law firm of Browne Woods George LLP) and offered to settle her judgment so that

8    Mr. Marciano could prevent her from joining the involuntary petition. Her offer was refused, and

9    she then joined with Chapnick and Fahs in filing the petition.

10        21.    Only Camille Abat and Miriam Choi contended that they had effectuated personal

11   service of a order requiring Mr. Marciano to appear for a judgment debtor examination, but Mr.

12   Marciano had pending at the time of the filing of the involuntary petition a motion to quash the

13   alleged service of the order to appear for judgment debtor examination and subpoena based on his

14   contention that he had not been effectively served with those documents. Hearing on that motion

15   was scheduled for November 17, 2009. That motion was taken off calendar due to the filing of

16   the involuntary petition and the effect of the automatic stay.

17        22.    On October 27, 2009, the petitioning creditors filed an involuntary Chapter 11

18   petition against Mr. Marciano.

19        23.    Judgment creditors Camille Abat and Miriam Choi contended that they had Mr.

20   Marciano personally served with an order to appear on August 9, 2009, but Mr. Marciano

21   contested service, which the process server claimed to have accomplished by throwing the order

22   in the window of a vehicle that Mr. Marciano was suspected to occupy. Hearing on Mr.

23   Marciano's motion to quash service was scheduled for November 17, 2009, but was stayed by the

24   involuntary Chapter 11 filing.

25        24.    The petitioning creditors also have suggested that certain creditors succeeded in

26   levying on bank and brokerage accounts in which Mr. Marciano allegedly held an interest. Very

27   little money was collected through the levies, so there is not a substantial payment to avoid. The

28   main levies are the subject of interpleader actions filed by UBS Financial Services, Inc., and

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 41 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    Morgan Stanley Smith Barney, LLC, in the Los Angeles County Superior Court. They concern a

2    total of approximately $2 million. However, many of the accounts at UBS were in the name of

3    Mr. Marciano, as trustee of irrevocable trusts for his four children, so the accounts are not subject

4    to levy. I provided to Chapnick's collection counsel (Jerome Blum) copies of the irrevocable

5    trusts. In any event, the amount subject to levy was minor compared to Mr. Marciano's net worth

6    that the judgment creditors alleged in State Court in support of collection efforts. In the *Fahs*

7    action, Mr. Marciano filed a declaration from his CPA (Michael Milam) in that regard that

8    showed his net worth to be approximately $175 million, although it was based upon assumptions

9    about the liquidation value of real property assets owned by entities in which Mr. Marciano holds

10   an interest. The declaration was attached to Mr. Marciano's Ex Parte Application for Temporary

11   Stay of Enforcement of Judgments Pursuant to CCP §918, which was filed on August 3, 2009. A

12   true and correct copy of the first page of that pleading and the declaration is attached hereto as

13   **Exhibit 26.**

14          25.    Appeals are pending in the Second and Third Divisions of the Second District of

15   the California Court of Appeals from the judgments of the Los Angeles Superior Court in the

16   *Fahs* and *Iskowitz* actions, from related sanction orders, and from other orders. The appeals in the

17   *Fahs* action primarily concern five default judgments awarded in favor of petitioning creditors

18   Steven Chapnick, Joseph Fahs and Elizabeth Tagle, as well as from default judgments awarded to

19   Camille Abat and Miriam Choi. The appeals in the *Fahs* action also concern (1) the terminating

20   sanction orders striking Mr. Marciano's complaint in the *Fahs* action and striking his answer to

21   the cross-complaints of Chapnick, Fahs, Tagle, Choi and Abat in the *Fahs* action, which

22   ultimately resulted in the default judgments on the cross-complaints after a prove-up trial before

23   an advisory jury; (2) the awards of fees and costs incurred by Chapnick, Fahs, Tagle, Choi and/or

24   Abat in connection with discovery motions; (3) summary judgment in favor of defendant Art

25   Pack, Inc., on Mr. Marciano's claims against it; and (4) the denial of Mr. Marciano's motions for

26   new trial. The appeals in the *Fahs* action are pending before Division Two of the Second

27   Appellate District of the California Court of Appeals.

28          26.    The appeals in the *Iskowitz* action primarily concern a single judgment in favor of

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  Gary Iskowitz, Theresa Iskowitz and Carolyn Malkus on their complaint against Mr. Marciano in

2  case no. BC385790, which was consolidated with the previous case filed by Mr. Marciano against

3  them. As in the Fahs action, the appeals in the *Iskowitz* action also concern (1) terminating

4  sanction orders striking Mr. Marciano's complaint in the Iskowitz action and striking his answer

5  to the complaint of Gary Iskowitz, Theresa Iskowitz and Carolyn Malkus in the *Iskowitz* action,

6  which ultimately resulted in the default judgments on their complaint after a prove-up trial; (2)

7  the awards of fees and costs incurred by Gary Iskowitz, Theresa Iskowitz and Carolyn Malkus in

8  connection with discovery motions; and (3) the denial of Mr. Marciano's motions for new trial in

9  the *Iskowitz* action. The appeals in the *Iskowitz* action are pending before Division Three of the

10  Second Appellate District of the California Court of Appeals.

11      27.    The *Fahs* and *Iskowitz* actions were coordinated with each other before the trial

12  court. Hearings in both cases often occurred on the same day. The trial court relied upon conduct

13  and developments in one case to issue sanction orders in the other case. The appeals in these

14  actions present many of the same issues.

15      28.    In connection with this involuntary Chapter 11 case, on behalf of Mr. Marciano, I

16  brought a motion to dismiss the involuntary petition on various grounds, including that (a) mail

17  service of the involuntary petition and the summons thereon upon him at his former residential

18  address at 1000 North Crescent Drive, Beverly Hills, Californian 90201 (the "Crescent address")

19  and at his lawyer's address in the State Court action was ineffective because he had not resided at

20  that address since early August 2009 and had not even resided in the United States since at least

21  early September 2009; and (b) a claim for relief could not be stated against Mr. Marciano for

22  entry of an order for relief under 11 U.S.C. §303 because it would unconstitutional to subject Mr.

23  Marciano to such an order for various reasons, including the 13th Amendment proscription

24  against involuntary servitude and violation of the bankruptcy clause, the equal protection clause

25  and the due process clause in the United States Constitution.

26      29.    At hearing on January 13, 2010, which I attended, this Court, the Honorable

27  Richard Neiter presiding, denied Mr. Marciano's motion to dismiss, ruling in effect that (a)

28  effective mail service had been accomplished on Mr. Marciano on October 31, 2009, at the

- 43 -

1   Crescent address because that address was (at least as of the time of mail service) one usual place

2   of abode of Mr. Marciano while he was in Beverly Hills, although he had not been in Beverly

3   Hills for almost three months as of that time; and (b) the Court would defer ruling upon the

4   Constitutional issues because it was conceivable that a ruling could be avoided if, for example, an

5   order for relief was never issued against Mr. Marciano due to his opposition to the involuntary

6   petition.

7         30.    The Court has not yet entered a written order on the motion to dismiss. Petitioning

8   creditors' counsel apologized to the Court at the status conference on April 8, 2010, about not

9   having lodged the order, and he promised to do so the next day. After April 8, I inquired about

10  that order several times by emails to petitioning creditors' counsel, but I received no response.

11  Finally, on April 26, 2010, I received by email from petitioning creditors' counsel a copy of the

12  proposed order that he said had been lodged that day along with proof of that. No explanation

13  was provided for the additional long delay after the status conference on April 8, 2010.

14        31.    On behalf of Mr. Marciano, after the January 13, 2010 hearing at which the Court

15  determined that he was subject to the Court's jurisdiction, I prepared and caused to be filed on

16  February 2, 2010, motions for relief from the automatic stay so that Mr. Marciano could proceed

17  with the appeals in the *Fahs* and *Iskowitz* actions. Written oppositions were filed by counsel for

18  the petitioning creditors and by counsel for the other five judgment creditors in those actions. At

19  hearing on March 1, 2010, which I attended, the Bankruptcy Court (the Honorable Richard Neiter

20  presiding) granted the motions of Mr. Marciano for relief from the automatic stay so that Mr.

21  Marciano could proceed with the pending appeals against the three petitioning creditors and five

22  other judgment creditors (Gary Iskowitz, Theresa Iskowitz, Carolyn Malkus, Camille Abat, and

23  Miriam Choi). All eight of those judgment creditors unsuccessfully opposed Mr. Marciano's

24  motions.

25        32.    On March 19, 2010, the Bankruptcy Court entered written orders granting Mr.

26  Marciano relief from the automatic stay to proceed with the appeals in the *Fahs* and *Iskowitz*

27  actions from the default judgments held by the three petitioning creditors and the other five

28  judgment creditors. One of the orders for relief from automatic stay waived the 14 day period of

- 44 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    F.R.B.P. 4001(a)(3), but the other one did not. Both orders became final on Saturday, April 3,

2    2010, so the last day to file an appeal was Monday, April 5, 2010. No appeal from the orders was

3    filed.

4        33.    At the Rule 26(f) conference in this involuntary Chapter 11 case on March 9,

5    2010, counsel for the petitioning creditors indicated to me a desire to take Mr. Marciano's

6    deposition regarding his assets to determine whether there might be grounds for seeking relief

7    under 11 U.S.C. § 303(f). He also stated that in the status report that he filed for petitioning

8    creditors on April 7, 2010. [Dkt. no. 53.]

9        34.    The other five judgment creditors filed a motion for Bankruptcy Rule 2004 exam

10    of Mr. Marciano on March 10, 2010, for the purposes of taking Mr. Marciano's deposition

11    regarding his assets to determine whether there might be grounds for seeking relief under 11

12    U.S.C. § 303(f). This purpose of the requested examination was confirmed to me by Peter

13    Davidson, who is counsel for the other five judgment creditors, at a "meet and confer" on March

14    18, 2010, over Mr. Marciano's intended motion for protective order. By agreement of Mr.

15    Marciano and the five other judgment creditors, that examination and proceeding with the motion

16    for protective order have been postponed until after the hearing on the petitioning creditors'

17    motion for summary judgment.

18        35.    In my opinion, the primary factual and legal issues at issue in connection with the

19    involuntary petition and Mr. Marciano's opposition thereto are (a) whether the claims of the

20    petitioning creditors, which are based upon default judgments on appeal, are subject to bona fide

21    dispute and, therefore, whether the petitioning creditors qualify for purposes of 11 U.S.C. §303 to

22    file an involuntary petition against Mr. Marciano; (b) whether Mr. Marciano is not generally

23    paying his debts as they become due, which are not subject to bona fide dispute as to liability or

24    amount; and (c) whether the involuntary Chapter 11 petition was filed in bad faith by the

25    petitioning creditors. The nature and extent of Mr. Marciano's assets are not an issue in

26    connection with the involuntary petition and Mr. Marciano's opposition thereto.

27        36.    In my opinion, Mr. Marciano has good cause to obtain the requested discovery

28    from the petitioning creditors on the "bona fide dispute" and "bad faith" issues. I assure the

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    Court that the purpose of that discovery is not for the purpose of causing annoyance,

2    embarrassment, oppression, or undue burden or expense to the petitioning creditors.

3        37.    The creditors have provided no evidence to suggest that there is any reason to be

4    concerned that Mr. Marciano has improperly transferred, encumbered or concealed his assets,

5    which would warrant a full-scale investigation into his assets through the Rule 2004 examination

6    process at this time, before an order for relief is entered.

7        38.    At the case status conference on April 8, 2010, which I attended, the Court

8    scheduled a hearing on petitioning creditors' motion for summary judgment for June 3, 2010, and

9    it ordered the motion to be filed by April 26, 2010, any opposition to be filed by May 17, 2010,

10    any reply to be filed by May 24, 2010.

11        39.    At the April 8, 2010 status conference, I provided petitioning creditors' counsel

12    (Mr. Brook) and the Court numerous dates on which I could conduct petitioning creditors'

13    depositions on almost any weekday between April 13 and 27, 2010. I asked petitioning creditors'

14    counsel to get back to him by the next day to schedule the depositions, given the short time

15    available, but petitioning creditors' counsel failed to do so.

16        40.    After the hearing on April 8, 2010, counsel for petitioning creditors informed Mr.

17    Marciano's counsel that the petitioning creditors relied upon counsel's advice in deciding whether

18    to file the petition, and that Mr. Marciano was prohibited from inquiring into that advice.

19        41.    On behalf of Mr. Marciano, acted promptly (1) in personally serving discovery on

20    Petitioning Creditors' counsel through delivery at 4:25 p.m. on the afternoon of April 9, 2010,

21    which was the day after the April 8, 2010 status conference at 2:00 p.m. at which the Court set the

22    June 3, 2010 hearing date on the motion for summary judgment and the related briefing schedule,

23    and (2) scheduling the depositions and documents productions for April 19 (Tagle), April 22

24    (Fahs), and April 23 (Chapnick). I understand that petitioning creditors' counsel contends that

25    the discovery was received late in the day on April 9. I have an e-mail confirmation from my

26    attorney service confirming delivery at 4:25 p.m.

27        42.    I did not hear back from petitioning creditors' counsel until five days later when

28    petitioning creditors' counsel e-mailed a letter April 14, 2010, indicating petitioning creditors'

- 46 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    general objections to the discovery. I responded briefly later that day regarding the petitioning

2    creditors' delay, and then responded in a detailed letter the next day on Thursday, April 15, 2010.

3    In communications between petitioning creditors' counsel and me on April 14 and 15, we agreed

4    to reschedule the depositions on the following mutually convenient dates: April 23 (Chapnick),

5    April 26 (Fahs), and April 27 (Tagle), so they could have occurred prior to April 28, 2010, were it

6    not for the motion for protective order.

7         43.     Petitioning creditors' counsel agreed to provide a draft of the joint stipulation

8    relating to the motion for protective order by the evening of Sunday, April 18, 2010, but did not

9    do so. Instead, a draft with points and authorities was not provided until the morning of April 20,

10    2010, when it was e-mailed to me by petitioning creditors' counsel. A bare bones draft was

11    provided without points and authorities on the evening of April 18, 2010, with an e-mail

12    informing me that I would receive the petitioning points and authorities and introductory

13    statement in a few hours, but that did not occur. As such, I e-mailed petitioning creditors'

14    counsel on the morning of April 19, 2010, informing him that I would need a draft with the point

15    and authorities so I would know what to respond to. I revised the document that I received on

16    April 20, 2010, and I e-mailed it to petitioning creditors' counsel late on April 21, 2010. It was

17    anticipated that the joint stipulation regarding the motion for protective order would be filed by

18    Friday, April 23, 2010, once petitioning creditors' counsel revised it and got it back to me for

19    final review and approval, but as of Monday, April 26, 2010, petitioning creditors' counsel still

20    has not provided the revised joint stipulation to me.

21         44.     In response to the April 20, 2010 e-mail, on April 20, 2010, I reiterated the

22    suggestion I previously had made several times between April 14 and April 19, 2010, which was

23    that the parties agree to a very short continuance of the motion for summary judgment to provide

24    the Court time to rule on the motion for protective order and Marciano time to take the

25    depositions under a reasonable expedited schedule, if the depositions were allowed by the Court

26    despite that motion.

27         45.     On the afternoon of April 20, 2010, petitioning creditors' counsel agreed to a one

28    week continuance of the June 3, 2010 hearing, and he proposed a stipulation in that regard on the

-47-

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA  37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  afternoon of April 20, 2010, which I promptly revised the returned along with a revised order

2  under which the hearing on the motion for summary judgment would be postponed for only one

3  week.

4      46.    On April 21, 2010, the stipulation was filed under which the parties agreed to a

5  one week continuance of the hearing date on the motion for summary judgment and agreed to

6  hold the depositions and document productions of the petitioning creditors on May 11, 12 and 13,

7  2010, unless precluded by the Court.

8      The foregoing is within my personal knowledge.  I declare under penalty of perjury of the

9  laws of the United States of America that the foregoing is true and correct and that this

10  declaration was executed on April 26, 2010.

11

12      /s/  Daniel J. McCarthy
        DANIEL J. McCARTHY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

## **DECLARATION OF DEAN E. DENNIS**

I, Dean E. Dennis, declare:

1.    I am an attorney law. I am duly qualified to practice before all courts of the State of California and all federal courts in the State of California, as well as certain other courts. I am a partner at the law firm of Hill, Farrer & Burrill, LLP. I have engaged in the practice of law at Hill, Farrer & Burrill, LLP, since 1983. I specialize in appellate practice. I have handled more than 50 appeals, most before the Second Appellate District of the California Court of Appeals, where the above-mentioned appeals are pending.

2.    I am primarily responsible for representing Georges Marciano in the appeals from the orders and default judgments entered in the actions in the Los Angeles Superior Court (the "State Court") entitled *Georges Marciano v. Joseph Fahs, et al.*, bearing case no. BC375824 (the "Fahs action"), and entitled *Georges Marciano, et al. v. Gary Iskowitz, et al.*, bearing case no. BC384493, which was consolidated with case no. BC385790 entitled *Gary Iskowitz, et al. v. Georges Marciano, et al.* (collectively, the "*Iskowitz* action"). The appeals in the *Fahs* action are pending before Division Two of the Second Appellate District of the California Court of Appeals, and those appeals are assigned nos. B218087, B215463, B216598 and B220011. The appeals in the *Iskowitz* action are pending before Division Three of the Second Appellate District of the California Court of Appeals, and those appeals are assigned nos. B216029 and B219558.

3.    I have prepared the appendices for filing in the appeals in the Fahs and Iskowitz actions.

4.    On April 5, 2010, I sent the Clerk of the Court of Appeals a letter of that date, a true and correct copy of which is attached hereto as **Exhibit 27**. The letter provides the Court a status report and asks that the Court act on certain pending motions, as well as consolidate the pending appeals.

5.    On April 13, 2010, I sent a letter to opposing counsel in the above-mentioned appeals with which I enclosed a copy of the indices to the appendices that I have prepared for the above-mentioned appeals. A true and correct copy of that letter is attached hereto as **Exhibit 28**. As explained in that letter, the purpose of that letter was to determine whether opposing counsel

- 49 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    believed that there were items that should be included in the appendices, which were not listed.

2        6.        Appeals in the Second Appellate District are schedule for oral argument after the

3    last brief is filed.  In the appeals, the briefing schedule will be set once the record is complete.

4    The completion of the record was held up because the court reporters stopped preparing

5    transcripts when notices of the automatic stay were filed in the *Fahs* and *Iskowitz* actions based

6    upon the filing of the involuntary Chapter 11 petition against Mr. Marciano, which I understand

7    occurred in late October 2009.  It is my best estimate that the matters on appeal will proceed as

8    follows:  The transcripts should be completed within the next 30-60 days, after which briefing

9    will commence.  Briefing should be completed 90-120 days thereafter, unless parties delay it

10   through requesting extensions to file briefs.  Assuming briefing is completed by September-

11   October, 2010, oral argument could occur by November-December, 2010, and a decision should

12   be rendered within 30 to 60 days thereafter.

13        The foregoing is within my personal knowledge.  I declare under penalty of perjury of the

14   laws of the United States of America that the foregoing is true and correct and that this

15   declaration was executed on April 22, 2010.

17   DEAN E. DENNIS

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147